# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA LLC | § | Civil Action No. 2007-CV-279 |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GOOGLE INC. AND YAHOO!, INC. | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## PLAINTIFF FUNCTION MEDIA LLC'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT YAHOO!, INC.

Plaintiff Function Media LLC respectfully moves this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule CV-7 for an order compelling Defendant Yahoo!, Inc. ("Yahoo") to produce documents, source code, and witnesses concerning [1] a type of non-online interface <u>used by certain technologically-sophisticated users of the accused Yahoo products</u>; [2] methods of interaction and implementation for <u>large advertisers and/or publishers who use the accused products</u>; and [3] a new—and likely infringing—<u>replacement technology</u> that Yahoo is rolling out <u>notwithstanding its knowledge of the patents-in-suit</u>. The interface referenced in [1] above is called an advanced programming interface ("API"); the users referenced in [2] above are called "direct" publishers and advertisers (or simply "large" publishers and advertisers); and the new advertising technology referenced in [3] above is called "APT." Because Yahoo has refused to comply with its discovery obligations in these three areas, Function Media has no choice but to seek the relief requested herein.

Yahoo has separately filed a motion for a protective order seeking protection from discovery into these issues. *See* Dkt No. 79 (Yahoo's Motion for a Protective Order, filed April 1, 2009). Function Media's response to that motion is set forth in Part B, below.

Dockets.Justia.com

**Background and Basis for Motion**

The patents-in-suit generally concern a software-based system that is used to create and publish online advertisements. The patented software-based system accomplishes its task by, among other things, bringing together sellers who want to create advertisements and website owners who want to display advertisements. In a nutshell, the software uses targeting and content information that has been input by advertisers (through an interface) and rules concerning the display of advertisements that have been input by publishers (through another interface) to create and publish customized advertisements. The accused Yahoo products, including the new APT technology, do exactly the same thing.

Back in March 2008, Function Media asked Yahoo to produce the following:

> 1. For any of the Accused Products, <u>all documents concerning the implementation of the Accused Products</u> by Google and Yahoo, including code (including executable or compatible code), product specifications, flowcharts, models, drawings, promotional literature, advertising, engineering design, engineering analysis and testing.
>
> 45. <u>Documents sufficient to demonstrate or understand all user interfaces for the Accused Products *for every category of user*</u>, from their respective inceptions through the present.

Ex. 1 (March 7, 2008, Letter from Joe Grinstein) (emphases added). "Accused Products" was defined to include "<u>any products, systems, or services made, used, sold, offered for sale, or licensed by Yahoo utilizing Yahoo's Search Marketing and Yahoo Publisher Network technologies,</u> **or** <u>any other technology made, used, sold, offered for sale, or licensed by Yahoo that allows a user to create, publish, or display advertisements on media owned or controlled by entities other than that user</u>." *Id.* (emphases added).

API, direct advertisers and publishers, and APT are plainly covered by these document requests. An API is a software interface "through which customers' own software can communicate" with Yahoo Search Marketing and Yahoo Publisher Network. *See* Dkt. No. 79, at

2. Direct publishers and advertisers are large advertisers/publishers who use and interact with the accused products in ways other than via an online interface (*e.g.,* via telephonically-available direct support teams at Yahoo and/or via internal Yahoo software). *See id.* APT is a new online advertising system that connects advertisers with Yahoo's publishing partners. *See* Ex. 2 (screenshot from Yahoo's website, *available at* http://apt.yahoo.com/advertiser.php).

Rather than produce all responsive documents and source code, Yahoo has largely chosen to ignore Function Media's discovery requests as they relate to API, direct advertisers/publishers, and APT. In fact, it appears that Yahoo has not produced a single meaningful page concerning APT—despite the fact that APT unquestionably involves "technology … that allows a user to create, publish, or display advertisements." Ex. 1. Nor has Yahoo produced all responsive documents and source code concerning how direct advertisers/publishers (as opposed to smaller, online advertisers/publishers) interact with and use the accused products. The same holds true for API. Although Yahoo has produced some documents concerning API and direct advertisers/publishers, these documents appear to have been produced by happenstance in the course of responding to discovery requests concerning online users of the accused products. In any case, Yahoo has admittedly withheld responsive documents concerning API and direct advertisers/publishers, *see generally* Dkt. No. 79—despite the fact that API is a user interface that is used by non-online users of the accused products and despite the fact that direct advertisers/publishers are large users of the very products that are accused of infringement in this lawsuit.

Yahoo is also improperly limiting the scope of deposition discovery. Recently, during a combined 30(b)(6) / personal-capacity deposition, counsel for Yahoo instructed the deponent not to answer questions about API, direct advertisers/publishers, and APT. Counsel did so

notwithstanding the fact that the witness had personal knowledge of these topics and notwithstanding Function Media's warnings that such instructions are improper in the Eastern District:

**Counsel for Yahoo**: He's here, designated, prepared, ready to go on YSM; YPN -- everything you put in your infringement allegations. And that's it.

**Counsel for FM**: He just testified, Mr. Lumish, that APT for Yahoo was not issued until the second quarter of 2008, which is after our infringement contentions were served, as you know. He's here in his personal capacity, as well as his corporate capacity for Yahoo. I believe I'm entitled to explore this product with him. I'm asking: Are you instructing him not to answer?

**Counsel for Yahoo**: I will, sufficiently to give you time to suspend the deposition. We can even suspend the deposition and bring a motion, or you can ask about other things, and we'll understand that I have instructed him; he can't answer questions about technical details of that product, because we'll bring a protective order, because we think it is out of bounds. …

**Counsel for FM**: And I would just say for the record, again, as I'm sure you know, that these sorts of objections I don't believe are proper in the Eastern District, and there are opinions out there where witnesses are not supposed to be instructed not to answer, except on privilege grounds.

**Counsel for Yahoo**: That's true, that I can't instruct him not to answer except on privilege grounds. Except I can suspend the deposition to bring a motion for protective order. There is a ton of law on that. …

**Counsel for FM**: I don't understand why you won't let me explore APT. He's here; he knows all about it; he's the product manager for it. We've got a protective order in place in this case. He's just testified that it deals with serving advertisements to end users [via] websites. I don't understand why you are not letting him testify about it.

**Counsel for Yahoo**: He's not prepared to testify about it; it is not in the case. And I'm not going to let you go on a fishing expedition about other technologies.

**Counsel for FM**: When you say he's not prepared to testify about it, he's the product manager for it.

**Counsel for Yahoo**: That's true. That's what his testimony is, I believe, anyway.

**Counsel for FM**: So when you say he's not prepared, you mean you haven't met with him to talk about it?

**Counsel for Yahoo**: That's correct. And I don't know what your questions are. The ultimate issue is it is not a product in the suit, and I think at that point it just becomes a fishing expedition. …

**Counsel for FM**: Let me just understand the scope of your instruction, as you have just conveyed it. You do not want me, or you will not allow me, to

                       get into technical details related to anything other than the on-line Yahoo Search Marketing interface and the on-line Yahoo Publisher Network interface?

**Counsel for Yahoo**: "Anything" is overly broad . . . . What I'm saying is to the extent you want now to go on what I believe to be a fishing expedition about other interfaces, to try and expand the scope of your claims – I think that's inappropriate. And other interfaces that you have referred to -- at least as of yesterday -- were APT; the telephone interface [used by direct publishers and/or advertisers]; API's the advertisers might have -- and I think there might have been a fourth one, but those are the ones that jump to my mind. And I think that exploration is inappropriate given the context of the case.

Ex. 3 (transcript of Matthew Plummer deposition), at 26-30, 339.

## ARGUMENT

### A.    <u>Function Media is Entitled to the Discovery Requested Herein</u>.

As this Court is well aware, the prevailing discovery rules and standards in the Eastern District of Texas do not permit the type of stonewalling that Yahoo is employing.

Documents and source code concerning API, direct advertisers/publishers, and APT relate squarely to the software and technologies that are at issue in this litigation. API is an interface used by a certain class of users of the accused products. Direct advertisers and publishers are, too, a class of users of the very products that are accused in this lawsuit. APT is a new Internet advertising system, *see* Dkt. No. 79 & Ex. 2, which was implemented following the initiation of this lawsuit—a lawsuit that accuses Yahoo's Internet advertising systems of infringement. Discovery in these areas, then, concerns [1] not only <u>the very accused products</u> but also [2] whether additional, related technologies and products are infringing, and [3] whether Yahoo has willfully infringed the patents-in-suit and/or attempted to design a work-around. The requested discovery is undeniably relevant and reasonably calculated to lead to the discovery of admissible evidence.

5

To the extent that Yahoo is thwarting document and source code discovery on the ground that Function Media did not expressly mention API, direct advertisers/publishers, or APT in its infringement contentions, such an objection is improper because Function Media either was unaware that Yahoo was employing these technologies, interfaces and/or implementations at the time Function Media's infringement contentions were due or was unable to satisfy its Rule 11 obligation on the basis of publicly-available information. Moreover, APT was not even in existence when Function Media was preparing its infringement contentions and <u>still has not been rolled out to advertisers</u>. *See* Ex. 2 ("In the near future, we'll be actively working to connect advertisers and agencies across Yahoo! properties and those of our publishing partners.").

Regardless, discovery regarding API, direct advertisers/publishers, and APT is "reasonably similar" to the accused products and is therefore discoverable on this separate basis. Judge Ward has held that relevant discovery in a patent-infringement suit "includes discovery relating to the technical operation of the accused products, <u>as well as the identity of and technical operation of any products reasonably similar to any accused product</u>." *See, e.g., Microunity Sys. Eng'g, Inc. v. Advanced Micro Devices, Inc.*, 2-06-cv-486, Dkt. No. 38 at ¶ 3 (E.D. Tex. May 23, 2007) (emphasis added). Judge Folsom, too, has applied this rule. *See Epicrealm Licensing LLC v. Autoflex Leasing, Inc. et al.*, 2-05-CV-163-DF-CMC, 2007 WL 2580969 (E.D. Tex. August 27, 2007). In *Epicrealm*, Judge Folsom considered "whether the scope of discovery should be strictly limited to the products and services specifically identified in the patent holder's PICs." *Id.* at *2. Drawing guidance from Judge Ward's order in *Microunity*, Judge Folsom held that there was "no bright line rule that discovery can only be obtained if related to an accused product identified in a party's PICs." *Id.* at *3 (citing Local Rules for the Dallas Division of the Northern District of Texas, § 2-5, Miscellaneous Order No. 62 (Apr. 2, 2007) ("the scope of discovery is

not limited to the preliminary infringement contentions or preliminary invalidity contentions but is governed by the Federal Rules of Civil Procedure")). Like Judge Ward, Judge Folsom expressly held that "the scope of discovery may include products and services … <u>reasonably similar</u> to those accused in the PICs." *Epicrealm*, 2007 WL 2580969 at *3 (emphasis added). Such a rule "best comports with the 'notice pleading and broad discovery regime created by the Federal Rules'" and the "'right to develop new information in discovery.'" *Id.* (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)). For the reasons explained above, there can be no doubt that API, direct advertisers/publishers, and APT satisfy this "reasonably similar" test.

With respect to depositions, it is entirely inappropriate for Yahoo's counsel to instruct a witness—deposed in his personal capacity—not to answer questions that are within the personal knowledge of the witness. "Unless permitted by Fed. R. Civ. P. 30(d)[], a party may not instruct a deponent not to answer a question. Objections to questions during the oral deposition are limited to 'Objection, leading' and 'Objection, form.'" Local Rule CV-30. As this Court has repeatedly noted, "[a]ttorneys are prohibited from instructing the deponent not to answer a question or how to answer a question, except to assert a recognized privilege." *Carroll v. Jaques*, 926 F. Supp. 1282, 1288 (E.D. Tex. 1996) (citation omitted).

Yahoo's counsel instructed the deponent not to answer numerous questions so as to enable Yahoo sufficient time to "bring a motion for protective order." Ex. 3. But the questions that Yahoo's counsel instructed the deponent not to answer—questions about recent technologies relating to infringement and willfulness, and questions about non-online interfaces and implementations used by certain classes of users of the accused products—are not the type of questions that justify a protective order under the Federal Rules. The Federal Rules permit a

protective order <u>only where</u> the deposition is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3). That, plainly, was not the case here.

The questions might have been difficult for Yahoo to stomach from an infringement or damages perspective, but they certainly were not unreasonably annoying, embarrassing, or oppressive. They were not personal in nature, and they were not out of line. Moreover, the witness indisputably had first-hand knowledge of the disputed topics. And, had he been allowed to answer, the confidentiality of his answers would have been protected under this Court's existing Protective Order. The deponent was sitting right there in the chair, and he should have been allowed to answer—even if (as Yahoo's counsel contends) Function Media was on a fishing expedition (which it was not).

### B. <u>Yahoo Is Not Entitled to a Protective Order.</u>

On April 1, 2009, Yahoo moved this Court for a protective order to prevent document and deposition discovery into APT, API, and direct advertisers/publishers. *See generally* Dkt. No. 79. As already noted, though, Yahoo cannot show what is required for a protective order.

Yahoo makes three specific arguments in support of its motion: [1] "Function Media previously agreed not to seek to add new products to this case and should be held to that agreement," [2] "discovery concerning non-accused technologies should be precluded because it is not reasonably calculated to result in admissible evidence about the accused products," (**citing a rule that has since been rejected by the very Court that established it**) and [3] "discovery concerning the highly confidential details of Yahoo's non-accused technology is unduly burdensome." *Id.* at 4, 8-9.

All of these arguments are without merit and will be addressed below, but Function Media wishes to highlight at the outset what Yahoo has glossed over in its motion: the legal standard for a protective order. The Federal Rules provide that a protective order is appropriate only [1] where a deposition is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party," or, [2] in the case of documents, where a moving party shows good cause that a protective order is necessary "to protect [that] party … from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 30(d)(3); Fed. R. Civ. P. 26(c)(1); *but see* Dkt. No. 79 at 10 (arguing, erroneously, that Function Media bears the burden in the context of Yahoo's motion for a protective order). None of Yahoo's arguments provides the requisite "good cause" because none establishes the requisite "annoyance, embarrassment, oppression, or undue burden or expense."

1. <u>Function Media never agreed to waive its right to accuse, or seek discovery regarding, APT, API, or direct advertisers/publishers, and Yahoo will not be prejudiced by complying with its discovery obligations.</u>

Yahoo's first (mistaken) argument is that Function Media somehow agreed in an October 2008 telephone call and subsequent filing to waive forever its right to pursue discovery and/or amend its infringement contentions. Function Media did no such thing and, indeed, would have had no incentive to give APT, API, direct advertisers/publishers, or anything else, a free pass on either discovery or infringement. Ex. 4 (declaration of Jeremy J. Brandon), at ¶ 6. Function Media did not pursue APT in October 2008 because [1] Yahoo had just announced APT and had not rolled out the new system in any meaningful sense—and, apparently, still has not, *see* Ex. 2; and [2] there was not enough publicly-available information to enable a Rule 11 determination regarding infringement. *See id.* Neither API nor direct advertisers/publishers was in counsel's mind at the time of the phone call, and there was no discussion whatsoever about these topics

9

(either expressly or implicitly). *Id.* Moreover, Function Media was not then aware that Yahoo had refused and/or would refuse to produce requested documents or provide deposition testimony regarding these three issues—issues [1] concerning a subset of the very products accused in this lawsuit (in the case of API and direct advertisers/publishers); [2] that, even assuming non-infringement, relate to Yahoo's inability to design a work-around for all but the largest advertisers and publishers (and hence the importance of Function Media's invention); [3] that relate, at the very least, to willfulness (in the case of APT); and [4] that, in any event, are "reasonably similar" to the technologies described in Function Media's preliminary infringement contentions. *See* pp. 1-8 above.

Yahoo also suggests that any discovery into these areas would "seriously prejudice[]" Yahoo's claim-construction positions. Dkt. No. 79 at 3. But that is no reason to withhold relevant document discovery or prevent a deponent from answering a permissible question. Moreover, and perhaps more importantly, the asserted claims mean what they mean irrespective of any discovery or new Yahoo product. Yahoo's claim-construction positions should be based on claim-construction evidence, and it is telling that Yahoo now admits that they are not.

2. <u>Documents and deposition testimony regarding APT, API, and direct advertisers/publishers are plainly relevant to the products that were expressly accused in Function Media's PICs and, in any event, are "reasonably similar" to the accused products and so are discoverable on that basis</u>.

Function Media simply does not understand Yahoo's argument that "none of the technologies at issues in this motion … illuminate anything relevant about the actual accused software" or the argument that "there is no legitimate connection to the real issues in the case [and so are not] reasonably calculated to lead to the discovery of admissible evidence." Dkt. No. 79, at 3, 9. As already explained, the discovery sought in this motion is plainly relevant to issues

10

such as damages, willfulness, and infringement. Yahoo cannot be heard to argue that API for non-online users of the accused products and/or "telephone interfaces" for direct advertisers/publishers users of the accused products are, in fact, unrelated to the accused products. Nor can Yahoo reasonably argue that its brand-new implementation of the accused products (APT) is irrelevant to willfulness or, in the event of non-infringement, to damages and work-around issues. In any case, Function Media should not have to take Yahoo's word for it.

The underpinning of Yahoo's argument appears to be that Function Media should be barred from this discovery on the ground that it did not expressly accuse API, direct advertisers/publishers, or APT in its infringement contentions. But, again, this is a curious position—in part because APT was not even rolled out until September 2008, some six months after Function Media's infringement contentions were due. *See* Dkt. No. 79, at 4. Indeed, according to Yahoo's website, APT <u>still has not been rolled out to Yahoo advertisers</u>. *See* Ex. 2 ("In the near future, we'll be actively working to connect advertisers and agencies across Yahoo! properties and those of our publishing partners."). With respect to API and direct advertisers/publishers, Function Media was not aware (at the time infringement contentions were due) of either the existence of separate interfaces for large advertisers/publishers or of separate implementation methods for large advertisers/publishers.

Moreover, as discussed above, the discovery at issue in this motion is "reasonably similar" and so is discoverable on that basis as well. *See, e.g., Microunity*, 2-06-cv-486, Dkt. No. 38 at ¶ 3. The Judge Folsom case cited by Yahoo in support of its no-discovery position— *Caritas Tech, Inc. v. Comcast Corp.*, Civil Action No. 2:05-cv-339-DF-CMC, 2006 U.S. Dist. LEXIS 94879 (E.D. Tex. Feb. 10 2006)—is not to the contrary. *See* Dkt. No. 79 at 3, 8. **Indeed, the *Caritas* rule (established by Magistrate Judge Craven) <u>was expressly rejected by Judge</u>**

**Folsom in *Epicrealm*—**a point that Yahoo does not mention in its brief. *See Epicrealm*, 2007 WL 2580969 at *3 ("Contrary to *Caritas*, the Court finds no bright line rule that discovery can only be obtained if related to an accused product identified in a party's PICs."). In any event, *Caritas* is distinguishable on its facts. There, the plaintiffs were attempting to obtain discovery relating a non-accused product for which they had not shown the requisite nexus. *Id.* at *12-15. Here, however, Function Media has more than adequately explained the nexus. The other case that Yahoo cites, *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990), is cited solely for the proposition that "a litigant may not engage in merely speculative inquiries in the guise of relevant discovery." *See* Dkt. No. 79, at 2. As already explained, Function Media is doing no such thing.

> 3. <u>Yahoo has not shown—and cannot show—that it would be "unduly burdensome" to produce "discovery concerning the highly confidential details" of APT, API, and direct advertisers/publishers, in part because this Court has already entered a Protective Order protecting Yahoo's confidentiality concerns</u>.

Yahoo cannot establish that it would be unduly burdensome to provide the requested discovery. *See* Dkt. No. 79, at 9-10. First, Yahoo's "unduly burdensome" argument expressly depends on Yahoo's argument—disproven above—that the requested discovery sought is irrelevant and unlikely to lead to the discovery of admissible evidence. Second, Yahoo's emphasis on the "highly confidential details of its proprietary technology" and the purported exposure to "risks of broader disclosure or misuse" are absolute non-issues in light of the negotiated Protective Order that this Court has already entered. *See* Ex. 5 (Agreed Protective Order, entered at Dkt. No. 51), at 4-5 (preventing any disclosure of "attorneys' eyes only" material beyond a narrow categories of individuals). Yahoo will suffer no "trade-secret" harm from producing the requested discovery. Third, Yahoo's articulation of the "substantial" burden

it would suffer "from disclosing confidential materials"—namely, that "Internet advertising is at the core of Yahoo's business and the details of its various approaches to such advertising are highly proprietary and carefully protected" and that "Yahoo is also a company of much public interest which compounds the risk"—is, of course, no burden at all. *See* Dkt. No. 79, at 9-10. In any event, the Court's Protective Order already provides protection. Finally, Yahoo points to the prospect that the inventors of the patents-in-suit might someday amend their patent claims and so should not have access to Yahoo's proprietary information. *Id.* at 10. Here again, however, the Court's Protective Order already prohibits dissemination of confidential information to anyone who might be involved in claim drafting. *See* Ex. 5, at 11-13 (imposing a patent-procurement bar). If there is any reason why discovery related to APT, API, and direct advertisers/publishers should or would be treated any differently than the confidential discovery that is already off-limits to the inventors, Yahoo has not supplied it.

## CONCLUSION

Yahoo cannot establish that the discovery sought is unduly burdensome, irrelevant to the accused products, or otherwise improper under the Rules. And Yahoo has not even tried to establish that the withheld discovery falls outside Judge Ward's "reasonably similar" rule. That Yahoo may be worried about infringement or willfulness is no reason to withhold discovery. Indeed, the opposite is true. If there is no infringement or willfulness, Yahoo should simply answer the questions and produce the exonerating information.

For the foregoing reasons, Function Media respectfully requests that the Court grant this Motion and (1) order Yahoo to produce all documents and source code withheld concerning API, direct advertisers/publishers, and APT; (2) order Yahoo to re-produce Mr. Plummer for deposition so that Function Media can inquire into topics that Mr. Plummer was improperly

13

instructed not to answer; and, more generally, (3) order Yahoo to refrain from instructing deponents not to answer questions on grounds other than privilege.

A proposed order is attached.

Dated: April 13, 2009

Respectfully submitted,

/s/ Max L. Tribble, Jr.
_____
Max L. Tribble, Jr.
State Bar No. 20213950
Email: mtribble@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, Texas, 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Lead Attorney for Plaintiff

OF COUNSEL:
Joseph S. Grinstein
State Bar No. 24002188
Email: jgrinstein@susmangodfrey.com

Jeremy J. Brandon
State Bar No. 24040563
Email: jbrandon@susmangodfrey.com

SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing will be served via ECF on all counsel of record, this 13th day of April, 2009.

/s/ Jeremy J. Brandon
_____
Jeremy J. Brandon

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Function Media LLC has satisfied the "meet and confer" requirements of Local Rule CV-7(h). In compliance with Local Rule CV-7(h), lead counsel for Function Media, Max Tribble, met and conferred in good faith with counsel for Yahoo!, Inc., Doug Lumish, via a conference call on March 23, 2009, in an attempt to resolve the issues raised herein. The parties could not reach a resolution because Yahoo does not believe that Function Media is entitled to the discovery requested herein, as evidenced by Yahoo's motion for a protective order and in repeated discussions between Mr. Lumish and Function Media's counsel occurring both on and off the record during Mr. Plummer's deposition on March 19-20, 2009, and again on April 6, 2009. The discussions have ended in an impasse, leaving an open issue for the Court to resolve. Function Media is therefore filing this motion, which is opposed by Yahoo.

/s/ Max L. Tribble
_____
Max L. Tribble