# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA, L.L.C. | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2007-CV-279 |
| | § | |
| vs. | § | |
| | § | |
| GOOGLE INC. AND YAHOO, INC. | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## FUNCTION MEDIA'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING GOOGLE'S INEQUITABLE CONDUCT ALLEGATIONS

The Federal Circuit has long criticized the practice by defendants of automatically asserting inequitable conduct claims against every inventor in every patent case. As it explained in 1995:

> [U]njustified accusations of inequitable conduct are offensive and unprofessional. They have been called a "plague" on the patent system. Unjustified accusations may deprive patentees of their earned property rights and impugn fellow professionals. They should be condemned.

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) (citation omitted). Since *Molins*, the "plague" of inequitable conduct allegations has only grown worse. So, to halt the further growth of such claims, the Federal Circuit on August 4 issued an opinion announcing strict new pleading rules that defendants must meet if they wish to pursue allegations of inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 2009 WL 2366535 (Fed. Cir. Aug. 4, 2009) (attached hereto as Exhibit A).

Google, like nearly every other patent defendant in this Court, has pressed inequitable conduct defenses and counterclaims against plaintiff Function Media. Those allegations, however, do not pass muster under the *Exergen* standards. Function Media invited Google to

1

move to amend its pleadings in light of *Exergen*, but Google has declined.    Accordingly,

Function Media requests that this Court apply *Exergen* and enter judgment on the pleadings

against Google on its inequitable conduct allegations.

## I.    Statement of Facts

In its Answer and Counterclaims (filed September 24, 2007), Google asserts inequitable

conduct allegations against two of the three Function Media patents-in-suit.[1]    As to the '025

patent, Google contends:

Tenth Affirmative Defense
(Unenforceability of U.S. Pat. No. 7,240,025)

44.    The claims of U.S. Pat. No. 7,240,025 ("the '025 patent") are
unenforceable as a result of inequitable conduct by the applicants, their attorney(s), their
agent(s), representative(s), predecessors in interest to the '025 patent, and/or the person(s)
involved in the preparation and/or prosecution of that patent.  Google alleges that the
inequitable conduct comprised intentional misrepresentations and/or omissions including
without limitation, the following:

a)  During the prosecution of the application that led to the '587 patent, the
USPTO cited U.S. Pat. No. 6,401,075 to Mason et al. (the "Mason patent").  The Mason
patent disclosed technology that was highly material to the patents-in-suit, but the Mason
patent filing date was just weeks later than the priority date for the '587 patent.

b)  On information and belief, during the prosecution of the application that led to
the '025 patent, named inventors Lucinda Stone and Michael Dean, by and through their
attorney Henry Croskell ("Attorney Croskell"), engaged an attorney in California,
Kenneth S. Roberts ("Attorney Roberts"), to investigate the prior art status of the Mason
patent.  In this regard, Attorney Roberts submitted a declaration in the application that
became the '025 patent suggesting that the Mason patent could not have been based on an
invention prior to October 1999.

c)  Attorneys Croskell and Roberts were involved in the prosecution of the '025
patent and thus owed a duty of candor and good faith under 37 C.F.R. § 1.56 to disclose
information to the USPTO that may be material to the patentability of the '025 patent.

d)  On information and belief, the declaration by Attorney Roberts and
accompanying statements by Attorney Croskell withheld highly material information
pertaining to the Mason patent technology and related prior art.

e)  On information and belief, Attorney Roberts was informed by Arthur Behrman
and/or additional named inventors on the Mason patent that Global Networks Inc. was
formed on or about April 1999 for the purpose of developing an online network for the
dissemination of electronic advertisements, which suggests a date of invention six months

---

[1] Google does not appear to have alleged inequitable conduct as to the '045 patent.

earlier than the October 1999 date suggested in the Attorney Roberts declaration, and moreover that had this information been shared with the USPTO then Attorney Croskell's assertion that the date of invention for the '025 patent was prior to October 1999 would have been insufficient to overcome an April 1999 date for the Mason patent technology.

f) Furthermore, on information and belief, Attorney Roberts was informed by Mr. Behrman of the October 1999 announcement concerning the development of the Global Networks Inc. system with a third-party international advertising agency. On information and belief, the subject October 1999 announcement was known to Attorney Roberts and was in fact an October 12, 1999 Business Wire announcement that not only disclosed aspects of the Global Networks Inc. system, but also the prior art DoubleClick DART system. The subject October 1999 announcement and information concerning the DoubleClick DART system was not disclosed to the USPTO. This information, and particularly the DoubleClick DART system, was also highly material to the patentability of the subject patent and the state of the art at the time.

g) On information and belief, this information was withheld from the USPTO by those owing a duty of candor and good faith under 37 C.F.R. § 1.56 with the intent to deceive the USPTO as to the true nature and scope of the prior art, including the Global Networks Inc. system and DoubleClick DART technology and thus cause the USPTO to improperly grant the '025 patent.

Ex. B, at 7-9. Shorn to their essence, Google thus asserts two basic theories of inequitable conduct as to the '025 patent: 1) that Kenneth Roberts withheld certain information allegedly suggesting that the Mason patent has an earlier date of invention than Mr. Roberts had represented to the PTO (the "Mason theory"); and 2) that Mr. Roberts withheld from the PTO the existence of the alleged DoubleClick prior art (the "DoubleClick theory").

As to the '059 patent, Google asserts:

Eleventh Affirmative Defense
(Unenforceability of U.S. Pat. No. 7,249,059)

45. The claims of U.S. Pat. No. 7,249,059 ("the '059 patent") are unenforceable as a result of inequitable conduct by the applicants, their attorney(s), their agent(s), representative(s), predecessors in interest to the '025 patent, and/or the person(s) involved in the preparation and/or prosecution of that patent. Google alleges that the inequitable conduct comprised intentional misrepresentations and/or omissions including without limitation, the following:

a) Google reasserts and incorporates by reference its statements from paragraph 44 above and further alleges that the acts and inequitable conduct arising from the prosecution of the '025 patent renders the '059 patent unenforceable too.

b) The '059 patent is a continuation-in-part ("CIP") of an earlier filed application; new matter was added to the '059 patent when it was filed on July 11, 2002.

3

c) Among the new matter added to the '059 patent as of its filing date of July 11, 2002, is substantial new matter describing "third party professionals."

d) In a response to an Office action from the USPTO filed on April 5, 2006, Attorney Croskell repeatedly referenced the "third party professional" new matter added as of the July 11, 2002 filing date as supporting the pending claims and distinguishing those claims over the prior art of record.

e) In this same response to the USPTO, Attorney Croskell further referred to the USPTO to the Mason patent and the declaration of Attorney Roberts cited during the prosecution of the '025 patent. Attorney Croskell then misleadingly suggested, despite having just identified the "third party professional" new matter added on July 11, 2002 as supporting the patentability of the claims, that the claims of the '059 patent were similarly entitled to "a date of invention for the claimed subject matter that is prior to October 1999."

f) These highly material and misleading statements by Attorney Croskell regarding the Mason patent and the purported dates of invention by Lucinda Stone and Michael Dean improperly led the USPTO to ignore the teachings and date of the invention described in the Mason patent and declaration of Attorney Roberts by convincing the USPTO that the '059 patent was entitled to a date of invention three years earlier than was possible in view of the new matter added to the CIP in its filing on July 11, 2002.

g) On information and belief, these statements by those owing a duty of candor and good faith under 37 C.F.R. § 1.56 were made with the intent to deceive the USPTO as to the true nature and scope of the prior art and dates of invention of the subject matter claimed in the '059 patent and cause the USPTO to improperly grant the '059 patent.

Ex. B, at 9-10. These allegations are not entirely clear, but for the '059 patent Google appears to be pursuing two inequitable conduct theories: 1) the same Mason theory as to the '025 patent; and 2) an allegation that Henry Croskell falsely suggested to the PTO that the '059 patent had an earlier date of invention (the "059 Date of Invention theory").

Function Media did not file a Motion to Dismiss under Rule 12(b)(6) in response to the inequitable conduct allegations in Google's Answer and Counterclaims. On August 4, 2009, however, the Federal Circuit issued the *Exergen* opinion. Two days later, on August 6, 2009, Function Media wrote to Google and invited Google to amend its claims to bring them into compliance with *Exergen*. Ex. C. Google responded on August 13, 2009, stating that Function Media had waived any Rule 9(b) complaints about Google's allegations, that it would not amend its pleadings further, but that it would supplement its inequitable-conduct interrogatory

4

responses. Ex. D. Function Media responded by again requesting that Google voluntarily amend, but Google declined.

## II.     This Court Should Grant Judgment on the Pleadings

### A.     In *Exergen*, the Federal Circuit Tightened Pleadings Standards for Inequitable Conduct Claims

In *Exergen*, the Federal Circuit announced that the strictest of Rule 9(b) pleading standards apply to inequitable conduct allegations:

> Based on the foregoing, and following the lead of the Seventh Circuit in fraud cases, we hold that in pleading inequitable conduct in patent cases, <u>Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission</u> committed before the PTO.

*Exergen*, 2009 WL 2366535, at *11 (emphasis added).    Going further, the Court then emphasized that Rule 9(b) also requires very detailed allegations of intent:

> Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at *13.

The *Exergen* Court then proceeded to apply these pleadings rules to the facts before it. In so doing, the Federal Circuit explained:

1. To satisfy Rule 9(b), inequitable conduct allegations must name the specific person involved in prosecution of a patent "who both knew of the material information and deliberately withheld or misrepresented it." *Id.*

2. To satisfy Rule 9(b), inequitable conduct allegations must "identify which claims, and which limitations in those claims, the withheld references are

relevant to, and where in those references the material information is found . . . ." *Id.*

3. Where allegedly withheld information is claimed to be material and not cumulative, inequitable conduct allegations must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Id.* at *14.

4. As to intent, it is insufficient to allege mere awareness of an allegedly withheld reference. Rather, "[a] reference may be many pages long, and its various teachings may be relevant to different applications for different reasons. Thus, <u>one cannot assume that an individual</u>, who generally knew that a reference existed, also <u>knew of the specific material information contained in that reference</u>." *Id.* at *14 (emphasis added).

5. Allegations of deceptive intent on "information and belief" are permissible, "but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id.* at *15. Thus, allegations must plausibly suggest a "'deliberate decision to withhold a known material reference' or to make a knowingly false misrepresentation – a necessary predicate for inferring deceptive intent." *Id.* (quoting *Molins*, 48 F.3d at 1181).

Absent compliance with these strict rules, warned the *Exergen* Court, inequitable conduct would devolve into "'a magic incantation to be asserted against every patentee.'" *Id.* (quoting *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)).

6

**B.** **Google's Inequitable Conduct Allegations Fail to Satisfy the *Exergen* Standard**

Each of the three theories of inequitable conduct contained in Google's Answer and Counterclaims fails the *Exergen* pleading standards.

**1.** The Mason Theory

The premise of Google's Mason theory is that the "Mason patent disclosed technology that was highly material to the patents-in-suit." Ex. B, at 8. Google fails to plead, however, "which claims, and which limitations in those claims, [Mason is] relevant to, and where in [Mason] the material information is found." *Exergen*, at *13.

Google further alleges that Mr. Roberts submitted an affidavit to the PTO that falsely stated that the Mason invention date was not prior to October 1999. Ex. B., at 8. According to Google, Mr. Roberts was informed by an Arthur Behrman that Global Networks (presumably, Mr. Mason's employer) was formed in April 1999 "for the purpose of developing an online network for the dissemination of electronic advertisements." *Id.*[2] Yet Google fails to allege fully the "who, what, when, where, and how" of Mr. Roberts' supposed knowledge of Global Networks' foundation. Google does not plead when and how Mr. Behrman told Mr. Roberts this information, nor does Google allege what Mr. Behrman told to Mr. Roberts that would have led Mr. Roberts to understand that the date of conception of the Mason patent was the same as the date of foundation of Global Networks. These allegations thus fail *Exergen* as well.

Likewise, Google has not sufficiently alleged deceptive intent as to the Mason theory. Google never alleges that any of the attorneys involved in the prosecution of the '025 patent

---

[2] Google's allegations also reference supposed information possessed by Roberts about an "October 1999 announcement concerning the development of the Global Networks Inc. system." Ex. B, at 9. Google appears to suggest that this announcement disclosed aspects of the Mason invention, but Google never identifies what aspects were so disclosed or how the October 1999 announcement establishes an earlier date of invention for the Mason patent as a whole.

knew of the "specific material information contained in" Mason that would have been material to prosecution of the '025. *Exergen*, at *14. Likewise, Google fails to plead any facts from which this Court could reasonably infer that Mr. Roberts deliberately withheld information about the founding of Global Networks with the specific intent of deceiving the PTO. *Id.* at *13. Merely because Mr. Roberts allegedly possessed information regarding the date of founding of a company associated with the Mason patent does not reasonably suggest that Mr. Roberts withheld that information from the PTO in order to deceive it as to the Mason invention date.

### 2. The DoubleClick Theory

As with the Mason reference, Google fails to plead "which claims, and which limitations in those claims, [DoubleClick is] relevant to, and where in [DoubleClick] the material information is found." *Exergen*, at *13. Nor does Google allege that any Function Media prosecuting attorney knew of "specific material information contained in" the DoubleClick reference that would have been material to prosecution of the '025. *Exergen*, at *14. To the extent Google has even alleged deceptive intent with respect to the DoubleClick reference, those allegations are premised solely upon Mr. Roberts' supposed knowledge of both DoubleClick and the '025 application. But allegations that thin are insufficient to create a reasonable inference that Mr. Roberts or any other person involved in the prosecution of the '025 patent specifically withheld DoubleClick with an intent to deceive the PTO. *Id.* at *15.

### 3. The 059 Date of Invention Theory

Google's Date of Invention theory for the '059 appears to be that, despite disclosing to the PTO that new matter was added to the '059 application (making it a Continuation-in-Part application) in 2002, Mr. Croskell convinced the PTO to apply a 1999 date of invention for purposes of distinguishing the Mason reference. Ex. B, at 10. It is not even clear how this

theory suggests inequitable conduct in the first instance – the examiner knew that the '059 application was a CIP, and so was fully capable of determining whether a cited reference was relevant to the new or original matter in the application.

In any event, Google's allegations of inequitable conduct as to the '059 patent are insufficient for the same reasons that its Mason Theory allegations are insufficient. Moreover, Google has failed to allege adequately facts sufficient: (1) to establish that Mr. Croskell knew of the specific material information in Mason, or (2) to create a reasonable inference that Mr. Croskell's statements about priority dates were made with the specific intent to deceive the PTO. *Exergen*, at *13-15.[3]

### C. Function Media May Challenge Google's Failure to Comply with *Exergen* Through a Motion for Judgment on the Pleadings

Google has suggested that Function Media waived any Rule 9(b) complaints about Google's inequitable conduct allegations by failing to raise them in a Rule 12(b)(6) motion in response to Google's Answer and Counterclaims. Under Rule 12(c), however, a party may challenge its opponents' pleaded allegations via a Motion for Judgment on the Pleadings. F.R.C.P. 12(c). Rule 12(c) motions are proper "after the pleadings are closed" – in other words, after the 12(b)(6) stage. *Id.* And parties may raise Rule 9(b) issues via a Motion for Judgment on the Pleadings. *See Harris v. Emerson*, 1979 WL 1261 (S.D.N.Y. Dec. 3, 1979) ("Since the Court concludes that a rule 9(b) challenge is a valid ground for a rule 12(b)(6) type motion for judgment on the pleadings, defendant cannot be said to have waived its right to raise such a challenge by answering the complaints involved herein."); *see also Fresh Meadow Food*

---

[3] Google has also answered an interrogatory response regarding inequitable conduct, using language somewhat different than that contained in its Answer and Counterclaims. A party cannot properly plead a claim under Rule 9(b) however, via an interrogatory response. In any event, even if Google's interrogatory response were somehow incorporated into Google's pleading, that interrogatory response does not satisfy the *Exergen* standard.

*Services, LLC v. RB 175 Corp.*, 282 Fed.Appx. 94 (2d Cir. 2008) (resolving Rule 9(b) challenge in a Motion for Judgment on the Pleadings); *Innovative Medical Systems, Inc. v. Augustine Medical*, 195 Fed.Appx. 532 (8th Cir. 2006) (same); *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003) (same); *Air China Ltd. v. Nelson Li*, 2009 WL 857611 (S.D.N.Y. Mar. 31, 2009) (same); *Tarbet v. Miller*, 2006 WL 1982747 (D. Utah July 13, 2006) (same); *United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F.Supp.2d 443 (S.D.N.Y. 2001) (same); *In re Orr*, 2009 WL 1025397 (Bkrtcy. E.D.Tenn. Apr. 15, 2009) (same).[4]

Despite this caselaw, Google wishes to argue that Function Media's failure to assert its Rule 9(b) defenses immediately upon answering Google's original pleading constitutes waiver. It almost goes without saying, but Google's waiver argument requires Function Media to say it anyway: Function Media could not possibly have asserted its rights under *Exergen* before August 4, 2009, when the *Exergen* decision issued. Just two days after publication of *Exergen*, Function Media demanded that Google move to amend its complaint to comply, and Function Media filed this Motion less than two weeks later (after waiting for and receiving a response from Google on the invitation to move to amend). This is hardly the kind of dilatory conduct that would justify this Court's departure from the routine practice of permitting Rule 9(b) challenges via Motions for Judgment on the Pleadings.

## D.    This Court Should Deny Google Leave to Amend

Function Media provided Google with the opportunity to move to amend its complaint, and Google declined. What's more, Google has already taken the depositions of Mr. Roberts,

---

[4] A simple Westlaw search of "judgment on the pleadings" and "9(b)" reveals a mountain of caselaw in which Courts have considered Rule 9(b) challenges to a plaintiff's complaint via a defendant's Motion for Judgment on the Pleadings, filed after the defendant answered. For the sake of brevity, only a sampling of those cases is cited herein.

Mr. Croskell, and the inventors. If those depositions had provided any additional basis for claiming inequitable conduct, Google easily could have amended to make its allegations more fulsome. Google's failure to amend therefore proves that Google has nothing more beyond what it said in its original Answer to justify its allegations of inequitable conduct – at least nothing more that Google wishes to assert while mindful of Rule 11.

Discovery in this case is nearly over, and trial will occur in less than three months. Given that Google has been given an opportunity to amend, yet nevertheless forced Function Media to file this Motion, this Court should enter judgment on the pleadings against Google and deny Google leave to amend.

## III. Conclusion

Google's inequitable conduct allegations fail to comply with *Exergen*. This Court should therefore grant Function Media judgment on the pleadings as to Google's inequitable conduct affirmative defenses and counterclaims.

Respectfully submitted,

/s/ Joseph S. Grinstein
Max L. Tribble, Jr.
State Bar No. 20213950
Email: mtribble@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, Texas, 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Lead Attorney for Plaintiff

OF COUNSEL:
Joseph S. Grinstein, State Bar No. 24002188
Aimée Robert, State Bar No. 24046729
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100

Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
Email: jgrinstein@susmangodfrey.com
Email: arobert@susmangodfrey.com

Justin A. Nelson, State Bar No. 24034766
**SUSMAN GODFREY L.L.P.**
1201Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
jnselson@susmangodfrey.com


Jeremy Brandon, State Bar No. 24040563
SUSMAN GODFREY L.L.P.
Suite 5100
901 Main Street
Dallas, Texas 75202-3775
Telephone: (214) 754-1900
Fax: (214) 754-1933
Email:jbrandon@susmangodfrey.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing documents have been served on all counsel of record via email this 17th day of August, 2009.

/s/ Joseph S. Grinstein
Joseph S. Grinstein