IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA, L.L.C. | § § | |
| Plaintiffs, | § § | Civil Action No. 2007-CV-279 |
| vs. | § § | |
| GOOGLE, INC. AND YAHOO, INC. | § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## SECOND EXPEDITED MOTION TO COMPEL

This Motion concerns a discrete issue – whether Google should produce the valuation reports and pricing information for its acquisitions. As described in the corresponding Motion to Expedite, Google and Function Media have agreed on an expedited briefing procedure with a 5-page limit so that this Court can hear the issue the same day as the *Markman* hearing. This Motion – and the corresponding expedited briefing schedule – is necessary because Google has reneged on its promise to produce this information.

I.  **Facts and History**

Starting in April, Function Media began asked Google for its acquisition and purchase price information. A review of the evidence produced revealed that Google often acquires a company in lieu of taking a license to the technology. *See, e.g.,* Exh. 1, Declaration of Walter Bratic ¶ 3 (hereinafter "Bratic Dec."). Function Media sought from Google basic and confirmatory details such as pricing information and the final valuation report for all transactions, along with more detailed related to a subset of those acquisitions concerning ads-related technology. This Motion does not concern the so-called "ads-related" acquisitions, as

Google recently has agreed to search for and produce relevant documents such as presentations, emails, and correspondence related to these transactions.

On June 10, 2009, Function Media specifically underscored what it was looking for with respect to Google's acquisitions: "As we discussed, we would like to obtain basic and confirmatory details regarding all the acquisitions Google has entered into. For some of these, a confirmation of price, amount, technology, and whether any patents were purchased should be sufficient in chart form. We'd also like, however, any FASB-141 report or document that similar document that discusses any valuation of the IP or patents at the deal's conclusion." Exh. 2 (email from Justin Nelson, June 10, 2009).

After numerous meets and confers and literally months of negotiations, on August 5, 2009, the parties agreed that Google would produce a list of the price information about all its transactions (including the form of payment for the transactions). *See* Exh. 3 (letter from Amy Candido, counsel for Google, at 2). Function Media agreed not to seek the valuation reports because Google claimed that such a search would be overly burdensome. Google promised to produce that information by "the end of this week [August 7] or early next week [August 10 or 11]." *Id.* That next week, however, Google informed Function Media that it in fact likely would not be producing these documents, and that even creating a list of transactions would be too much. Function Media responded that it only gave up its request for the valuation reports because of Google's claim of burden, and that it was now seemed easier simply to produce what Function Media had originally requested – valuation reports and basic price information. *See* Exh. 4 (email from Justin Nelson, 8-18-09). On August 18, 2009, Google informed Function Media of its final position that it would not produce any information about any non-"ads-related" acquisitions. *See* Exh. 5 (email from Amy Candido). Function Media filed this Motion on an agreed expedited schedule the next day.

## II. The Information is Relevant and the Request Is Narrow

As this Court is well aware, the *"Georgia-Pacific"* factors are an accepted methodology for determining the amount of damages in a patent case. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 116 (S.D.N.Y. 1970). These factors include the relevant guidelines and policies of both the patentee and the infringer and a "hypothetical negotiation" between the patentee and the infringer at the time of first infringement. As Function Media's damages expert Walter Bratic has pointed out in an accompanying declaration, it appears that in many cases, Google has acquired a company rather than take a traditional license. *See* Bratic Dec. ¶ 3. For this reason, according to Mr. Bratic, Google's purchase price and valuation analysis are relevant to the *Georgia-Pacific* analysis. *Id.*

It also is insufficient to limit this information solely to a subset of acquisitions related only to "ads-related" acquisitions. As Mr. Bratic explains, "ads-related revenue comprises the vast proportion of Google's revenue" – up to 99% according to its SEC filings. *See* Bratic Dec. ¶ 5. Mr. Bratic also states that "what Google pays for non-ads related technology – which comprises a small subset of its current revenue base – is an important measure for determining what Google would pay for ads-related technology such as that related to the patents-in-suit." *Id.* Indeed, because of the vital role played by advertising in generating revenue for Google, it is impossible to separate completely "ads-related" from non-"ads-related" transactions. Mr. Bratic concludes: "As part of my analysis of reasonable royalty damages in this matter, it is relevant to consider the value Google placed on various technologies it obtained through acquisitions. A complete set of the purchase price and valuation information from Google's acquisitions is therefore of great relevance in attempting to ascertain the value Google ascribes to various transactions" Bratic Dec. ¶¶ 3-4. *See also id.* ¶ 6 ([T]he information requested will help me formulate my expert opinion.").

Mr. Bratic's expert opinion that this information is relevant is confirmed by the case law. "The amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent is relevant to the establishment of a reasonable royalty." *Fresenius Medical Care Holding, Inc v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004) (citing *Integra Lifesciences I, Ltd. v. Merck*, 331 F.3d 860, 871 (Fed.Cir.2003)). As the *Fresenius* court concluded, "Thus, the evaluation and acquisition of Althin as well as the evaluation of its various assets is discoverable." 224 F.R.D. at 653.

Google is likely to argue that the transactions at issue here are not strictly confined to ads and therefore have no relevance. The problem with this argument is Google's own business model. Because advertising revenue comprises such a significant share of Google's revenue, it is impossible to separate completely advertising from the rest of Google's portfolio. Indeed, Google itself recognizes the virtuous cycle of attracting users in order to attract advertising revenues. *See, e.g.,* 2008 Google Annual Report, page 8, Founders' Letter (attached as Exh. 6) ("We always that we could have an advertising system that would add value not only to our bottom line but also to the quality of our search result pages."); *id.* at 17 (Page 1 of Google 10-K entitled "Item 1: Business - Overview") ("Google is a global technology leader focused on improving the ways people connect with information . . . . We generate revenue primarily by delivering relevant, cost-effective online advertising."). Moreover, as Mr. Bratic has explained, what Google has paid for emerging technologies that comprise literally a sliver of Google's revenue are important in assessing what Google <u>would pay</u> in a hypothetical negotiation at the time of first infringement for this technology. *See* Bratic Dec. ¶ 5. This information also would rebut any Google argument that it would not have paid a particular amount of money to a small company.

Finally, Function Media has attempted to recognize some difference between the strictly "ads-related" acquisitions and the rest of Google's acquisitions. It has not sought internal communications, emails, presentations, and the like for this broader set of acquisitions. Rather, it seeks to obtain basic details about the acquisition – the price, how it was structured, and any valuation reports to determine the intellectual property component of the transaction.

### III. Alternative Relief – This Court Should Refuse to Allow Google to Make Arguments That Depend on This Withheld Material

In the alternative, should this Court deny this Motion – which it should not – Function Media seeks an order barring Google from (1) arguing that it would not have acquired the patents through an acquisition of the company; and (2) arguing that Google would not have paid a particular sum of money to a small company. Function Media has no way to assess the veracity of such arguments except by the information that Google has but will not produce. *See, e.g., Paltalk v. Microsoft*, Docket No. 2:06-cv-367, Docket No. 203, at 1-2 (attached as Exhibit 7) (decision from this Court refusing to allow Microsoft to introduce evidence of licenses that it claimed were irrelevant and did not produce).

### IV. Conclusion

For all the foregoing reasons, this Court should grant the motion.

Respectfully submitted,

/s/ Justin A. Nelson
Max L. Tribble, Jr.
State Bar No. 20213950
Email: mtribble@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, Texas, 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Lead Attorney for Plaintiffs

OF COUNSEL:
Justin A. Nelson, State Bar No. 24034766
**SUSMAN GODFREY L.L.P.**
1201Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
jnselson@susmangodfrey.com

Joseph S. Grinstein, State Bar No. 24002188
Aimée Robert, State Bar No. 24046729
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
Email: jgrinstein@susmangodfrey.com
Email: arobert@susmangodfrey.com

Jeremy Brandon, State Bar No. 24040563
SUSMAN GODFREY L.L.P.
Suite 5100
901 Main Street
Dallas, Texas 75202-3775
Telephone: (214) 754-1900
Fax: (214) 754-1933
Email:jbrandon@susmangodfrey.com

## CERTIFICATE OF CONFERENCE

Counsel for plaintiffs have conferred with counsel for defendants as described in the Motion. Defendants agree that a Motion is proper, and are opposed as to the disposition of the matters raised in this motion.

/s/ Justin A. Nelson
Justin A. Nelson

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing documents have been served on all counsel of record via ECF/PACER this 19th day of August, 2009.

/s/ Justin A. Nelson
Justin A. Nelson