## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

**FUNCTION MEDIA, L.L.C.,**

**v.**

**GOOGLE, INC. AND YAHOO!, INC.**

Civil Case No. 2:07-CV-279 (CE)

**JURY TRIAL DEMANDED**

### DECLARATION OF BILLIE D. SALINAS IN SUPPORT OF
### GOOGLE INC.'S OPPOSITION TO FUNCTION MEDIA'S
### SECOND EXPEDITED MOTION TO COMPEL

I, Billie D. Salinas, declare:

I am an associate at Quinn Emanuel Urquhart Oliver & Hedges LLP, counsel for

defendant Google, Inc. ("Google") in this litigation. The facts stated herein are true of my own

personal knowledge and, if called as a witness, I could and would testify competently thereto.

1.      Attached as Exhibit A is a true and correct copy of a June 11, 2009 E-mail from

Justin A. Nelson to Jeremy Brandon.

2.      Attached as Exhibit B is a true and correct copy of an August 3, 2009 E-mail from

Justin A. Nelson to Amy H. Candido.

3.      Attached as Exhibit C is a true and correct copy of an August 4, 2009 Letter from

Amy H. Candido to Justin A. Nelson.

4.      Attached as Exhibit D is a true and correct copy of an August 5, 2009 Letter from

Amy H. Candido to Justin A. Nelson.

5.      Attached as Exhibit E is a true and correct copy of an August 14, 2009 Letter

from Amy H. Candido to Justin A. Nelson.

Dockets.Justia.com

6. Attached as Exhibit F is a true and correct copy of an August 18, 2009 E-mail from Justin A. Nelson to Amy H. Candido.

Dated: August 21, 2009

By: /s/ _____  _____
Billie D. Salinas

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 21, 2009 to counsel of record in the manner agreed by the parties, via electronic mail.

_/s/ Billie D. Salinas_
Billie Salinas

# EXHIBIT A

**To:** Lorraine Morton[LMorton@fr.com];
**Subject:** FW: licensing and damages follow-up
**Sent:** Thur 6/11/2009 12:11:42 AM
**From:** Jason Wolff

_____

**From:** Justin A. Nelson [mailto:jnelson@SusmanGodfrey.com]
**Sent:** Wednesday, June 10, 2009 5:00 PM  ·  .
**To:** Jeremy Brandon; Jason Wolff; Chad Walker; Christina D. Jordan; Howard Pollack; Juanita Brooks
**Cc:** Joseph S. Grinstein; Max L. Tribble; Stacy Schulze
**Subject:** FM: licensing and damages follow-up

Jason, Howard or others --

I wanted to memorialize some of what we've generally discussed (but have not reached final agreement on) regarding further document searches and discovery on damages-related issues as well as discuss some other issues where I want to confirm that we are on the same page so that there is no doubt.  In no particular order, here they are:

1. License Agreements:  Can you please confirm that you have produced all Google's (and its officers and directors') license agreements regarding intellectual property (including any deals by which Google pays another provider for content or shared revenue related to content provided by a third party, copyright, trademark, and of course patent licenses).  We expect that this would include, for example, any licenses that Google and/or Larry Page or Sergey Brin has entered with the company or, for example, between Stanford and Google.  If we do not have this material (and it appears that we do not have some of this), we should discuss whether it makes sense to delay the licensing 30(b)(6) deposition by a few weeks until these are produced.  If Google objects, let's tee up a meet and confer soon.  I told you I'd send some authority on licenses.

2. Acquisitions:  As we discussed, we would like to obtain basic and confirmatory details regarding all the acquisitions Google has entered into.  For some of these, a confirmation of price, amount, technology, and whether any patents were purchased should be sufficient in chart form.  We'd also like, however, any FASB-141 report or document that similar document that discusses any valuation of the IP or patents at the deal's

conclusion. For others, including all those related to internet advertising, AdSense, or AdWords in any manner, we'd like to see these FASB-141 or equivalent docs plus any internal deal documents, including any presentations or analysis to or by the EMG or others within Google or any analysis performed by an investment bank or others about the purchase. We are limiting this to discussions of IP and the technology involved.We'd also like to see in more depth Google's or Google's advisers' analysis of deals from 2003 or before, even if not used in AdSense.

3. Other Litigation: I know you and Jeremy have discussed this to some degree involving Overture, but we'd like to see all depositions, expert reports on damages, admissions, responses to interrogatories, affidavits, and declarations in litigation involving the accused products. This would include Overture but also would encompass, for example, the Digital litigation.

4. As mentioned in other emails, we'd like to nail down scheduling for any remaining 30(b)(6) topics from the second notice.

5. We've also discussed trying to schedule a call with both damages experts and a Google employee regarding revenue that we would treat as confidential. Further to this, you stated that Google does not keep much of the data in the ordinary course of business, but that the underlying data is kept. We discussed ways to resolve this problem, and hopefully we'll be able to set up a call in a couple weeks.

Best,

Justin A. Nelson
Susman Godfrey
1201 Third Avenue
Suite 3800
Seattle, WA 98101
206-516-3867

This message is intended only for the people to whom it is addressed and is intended to be a confidential attorney-client communication. If this message is not addressed to you, please delete it and notify me.

# EXHIBIT B

| From: | Justin A. Nelson [jnelson@SusmanGodfrey.com] |
| Sent: | Monday, August 03, 2009 6:34 PM |
| To: | Amy Candido; Carl Anderson; Stan Karas; Jeremy Brandon; Max L. Tribble; Joseph S. Grinstein |
| Cc: | cmaloney@icklaw.com; Google-Function Media; ccapshaw@capshawlaw.com; jrambin@capshawlaw.com; nancy@icklaw.com; charley@pbatyler.com; wolff@fr.com; ederieux@capshawlaw.com; gil@gillamsmithlaw.com; otiscarroll@icklaw.com; brooks@fr.com; rcbunt@pbatyler.com; katherine@icklaw.com |
| Subject: | RE: Function Media v Google |

Amy --

Below are my notes about where we stand after our call this afternoon, along with some updates on our end.  As a preliminary matter, we discussed having another call at 3 PM on Wednesday.

1. a. EMG Presentations -- We discussed that much of these documents were the subject of the previously-filed motion to compel.  I stated that we'd like you to search more custodians -- specifically in corporate development and finance.  We are going to revisit on Wednesday.

  b. GPS Presentations -- There is a list of GPS presentations.  You are searching for and producing these presentations -- hopefully by the end of the week or early next week.  You also will look into providing us with the list so that we can determine relevancy too.  Again, you will update us on Wednesday.

2. Board of Directors minutes and notes -- You are in the process of searching for and producing these and will provide us an update by Wednesday.  I mentioned we wanted notes related to the accused products, financial issues, and the relevant acquisitions.  You are also looking into whether Board of Director presentations exist.  Again, you will provide an update on Wed.  I am to provide you with a representative presentation to the Board of Directors.  Since the call, I have looked for these.  I point you to G002-777485, G002-777487, G002-3995235, and G002-3995236.  The first and third are the cover emails, making clear that these come from the files of Jonathan Rosenberg -- strongly suggesting the necessity of searching his documents.  The second cover email is a forward from Eric Schmidt to the EMG email list -- again, strongly suggesting the necessity of searching this email list and document custodian group.

3. Acquisitions -- You are going to get back to us by Wednesday on providing the basic price information, but you thinks it is do-able.  You also are going to get back to us by Wednesday to search the corporate acquisition folks' files for relevant information.  I mentioned that there appeared to be an "OMG" group that deals with acquisitions and mergers.  I also mentioned that in the process of searching these files, you should search for our client too.  You will give us an update on where things stand on this issue on Wednesday, with documents coming shortly.  You agreed that you would search these

documents. We discussed -- but did not reach resolution on -- whether to search email and/or the scope of any email search for these custodians. Given your commitment to produce more documents on this subject shortly, we agreed to put off the deposition on Wednesday until later this month because these new documents will be right on point. We discussed Aug 28 or Sep 8 or 9 as dates. I will get back to you shortly.

4. Financial documents - You committed to produce these shortly (including the Earnings Call book and the pre-IPO financials), and will give us an update Wednesday. I asked her to search for presentations to the EMG or Board or similar groups as well as documents sufficient to show margin, revenue, and cost information.

5. Intellectual Ventures -- You will produce these documents too. You want us to confirm in writing that we don't have any responsive documents about IV. We will double-check on this.

6. Documents from 30(b)(6) witnesses -- You say that you never understood that the request was a custodial search of the 30(b)(6) witnesses. You asked us to consider whether we want a search. For the two upcoming depositions, we are agreed that as for Zoufonon, you do not have to produce custodial documents unless he has relevant knowledge under Point 3 above. The production in point 3 hopefully should result in a production of all relevant documents. For Curtiss, however, we have not received many documents about the national/international issue, and the production reveals very little about him. It was our understanding that the deposition was delayed by a month in order to search his files, and we request that you in fact search his files. Given that it does not appear possible to produce and review these before Friday's deposition, we should talk about rescheduling this deposition.

7. Documents from prior ads-related cases -- You stated that most of these will be produced in the next couple days, but expert reports may be a bit behind. You have to get them from all the law firms, and noted that you are trying to do so but that there may be some stragglers. You have not started to produce rogs because you did not realize the rogs were a part of our request. You asked us to consider whether we need these rogs. In the interests of comity, we agree that you do not have to produce interrogatory responses from the prior cases (except for Overture and Digital Envoy).

8. Prior Testimony -- You are producing forthwith any prior testimony, but there is not any for the upcoming witnesses. You state that we have not discussed whether to produce testimony and sworn statements from witnesses on your initial disclosure list. You noted that these depositions will appear in any event if they testified in an ads-related case. In the interests of comity, we agree that you do not have to separately pursue this for any persons who are on the initial disclosure list but who are not being deposed. We note, however, that many of these person are being or have been deposed here.

9. Patent Applications -- You are producing these, and we should expect to receive another huge batch in the next couple of days, which should be almost all of it. They have

to get these documents from the law firms, and there may be a couple stragglers, which you will produce in rolling fashion.

10. Overture litigation docs -- You state they were produced starting at G003-003678 -- which is the date of the July 8 letter. We will check this and get back to you.

11. You reiterated that you have produced all licenses, and will shortly produce a supplemental rog answer.

Let me know if you have anything to add or supplement to this. We look forward to speaking again on Wednesday.

Best,

Justin A. Nelson
Susman Godfrey
1201 Third Avenue
Suite 3800
Seattle, WA 98101
206-516-3867

This message is intended only for the people to whom it is addressed and is intended to be a confidential attorney-client communication. If this message is not addressed to you, please delete it and notify me.

# EXHIBIT C

**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111 | TEL: (415) 875-6600 FAX: (415) 875-6700

August 4, 2009

<u>VIA ELECTRONIC MAIL</u>

Justin A. Nelson
Susman Godfrey LLP
1201 Third Avenue
Suite 3800
Seattle, WA 98101

Re:     <u>Function Media, L.L.C. v. Google, Inc., Civ. A. No. 2007-CV-279</u>

Dear Justin:

I write to memorialize our meet and confer yesterday.

1) <u>Relevant EMG and GPS Notes and Presentations</u>:

We agreed that Google will review the recently identified list of GPS presentations and produce all relevant presentations, to the extent they exist. I stated that I thought we could complete this production by the end of the week or early next week. I also agreed to inquire whether I can provide you with a copy of that list so that you can identify the GPS presentations that Function Media believes should be produced.

With respect to relevant EMG notes and presentations, I reiterated that, as Leslie Altherr testified, there is no central repository of EMG notes and presentations to be searched. Instead, Google collected those materials from both the custodial and noncustodial sources about which Ms. Altherr testified, including Google Fellow Jeff Dean and VP of Engineering Sridhar Ramaswamy. I also explained that additional custodial searches of additional higher-level employees would at most be duplicative of what you already have. Moreover, we agreed that the

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-6301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

issue of whether the members of the EMG Group's files should be searched was the subject of Function Media's pending motion to compel.

You explained that you believe that there are EMG presentations about acquisitions and financial information that were not captured by Google's prior searches. I agreed to investigate whether we could identify such presentations from the files of individuals in groups such as corporate development and finance.

2) Relevant Board of Directors Notes and Minutes:

Google agreed to produce the official minutes of the Board of Directors' meetings that are relevant. You specified that Function Media would like the Board of Directors' meeting minutes regarding financials, patents, AdWords, AdSense and the sub-set of 17 acquisitions that Function Media has previously identified.

You asked me to look into whether Google can reasonably search for and produce presentations to the Board of Directors on the same subjects identified above. I agreed to look into that and get back to you.

3) Acquisitions Related Documents:

For all acquisitions, you asked if Google would produce the price information for each acquisition. While we believe that such information is irrelevant, I stated that I thought Google would be able to produce such information and I would get back to you on this issue.

With respect to the sub-set of 17 acquisitions that Function Media previously identified, we discussed searching for additional information -- in particular EMG and GPS presentations -- from individuals within the corporate development group. You told me that you thought this group might be called "OMG." You also asked that we search for documents regarding the patents-in-suit and your client within the corporate development group. I agreed that Google conduct a reasonable search for and produce additional documents regarding the identified sub-set of acquisitions, to the extent they exist.

We agreed that it made the most sense to postpone the deposition of Google's 30(b)(6) designee on acquisitions, Amin Zoufonoun, until after this additional acquisition information is produced. I agreed to look into additional dates when Mr. Zoufonoun is available. We discussed August 28 or September 8 or 9 as potential dates.

4) Financial Documents:

Google agreed to search for and produce Earnings Books, like the Earnings Book marked as an exhibit at Ms. Altherr's deposition, to the extent they exist. Google also agreed to search for and produce pre-IPO financials, to the extent they exist.

You explained what you meant by "Everest information" and I agreed to look into whether that information exists and, if so, whether and in what form it can be produced. You explained that you are primarily looking for documents sufficient to show Google's revenues, costs, and

margins. I explained that I thought reports containing that information were in the production queue and would be produced later this week.

You reiterated your request for presentations about financials, such as a presentation called "Where a Dollar Goes at Google." I agreed to look into that and get back to you.

5) <u>Intellectual Ventures</u>:

We agreed that Google will search for and produce all pre- and post-Complaint communications between itself (or its counsel) and Intellectual Ventures regarding this lawsuit, the patents-in-suit and/or the inventors, and Function Media will produce all pre- and post-Complaint communications between (i) Function Media (or its counsel) and Intellectual Ventures, or (ii) the inventors (or their counsel) and Intellectual Ventures, regarding this lawsuit, the patents-in-suit and/or the inventors.

You told me that you think all communications between Function Media (or its counsel) and Intellectual Ventures and all communications between the inventors (or their counsel) and Intellectual Ventures have been oral, but you agreed to double-check and get back to me.

6) <u>Documents From 30(b)(6) Deponents</u>:

We discussed that the parties may have misunderstood each other previously regarding this issue. To the extent that Function Media was asking for a custodial search for each 30(b)(6) designee, I explained that such a search would be unduly burdensome to complete at this time and highly unlikely to yield any relevant, non-duplicative documents. I explained that we believe that what is important is that the documents relevant to the 30(b)(6) topic at issue be produced before the 30(b)(6) designee is deposed. For example, I explained that, because Mr. Zoufonoun is an attorney, a custodial search of his files is unlikely to yield many non-privileged documents. Similarly, a custodial search of the email for Google's 30(b)(6) witness on financial information would likely yield results that would be far less relevant than the production of Google's financial information and the burden of conducting such a search at this late date is significant. You agreed to consider whether Function Media thought it needed a custodial search for the upcoming 30(b)(6) deponents.

7) <u>Prior Ads-Related Litigation Documents</u>:

I explained the difficulty of collecting these litigation materials from Google's various law firms. I stated that the production of all deposition testimony and declarations would be completed this week and that expert reports would not be far behind. I noted, however, that there may be some stragglers.

I explained that Google did not collect interrogatory responses for these cases because it did not realize that Function Media wanted them. We discussed the difficulty of going back to Google's various law firms a second time for these materials. You agreed to discuss whether Function Media would drop its request for interrogatory responses.

8) Prior Testimony:

I explained that there was no prior testimony or declarations for Mr. Zoufonoun or Mr. Curtiss. I stated that Google was unaware of any prior testimony or declarations for Mr. Ranganath, but would need to confirm that fact with Mr. Ranganath. Further, I stated that Google would endeavor to obtain any prior testimony or declarations from future deposition witnesses and produce any such testimony or declarations as soon as possible.

We discussed whether it was necessary for Google to search for and produce any prior testimony or declarations from witnesses on Google's initial disclosures if those witnesses were not going to be deposed. I noted that to the extent that any such deposition testimony was ads-related, it would be captured by the production of deposition transcripts from ads-related cases. You agreed to look into this issue and get back to me.

9) Patent Applications:

I explained that, like ads-related litigation documents, Google has to obtain these patent applications from various law firms. I stated that I believe that a large batch of these are in the production queue for production later this week. I explained that we would produce these as quickly as possible on a rolling basis. I will update you on status when we talk again on Wednesday.

10) Overture Litigation Documents:

I told you that I thought the Overture litigation documents had been produced on July 8, and that I believed the starting production number was G003-003678. You said you would look into that production and get back to me.

11) License Agreements:

I stated that our production of license agreements was complete and agreed to supplement our interrogatory response regarding license agreements shortly.

Overall, you expressed your past frustration about not knowing when to expect various production documents from Google and your desire that Google identify dates by which various items would be produced. I explained that because events outside our control often impact the timing of production, we were reluctant to promise production by specific dates. Ultimately, we agreed that the parties will provide each other with realistic, expected production dates and that the parties would be understanding if, from time to time, those dates were not met.

4

Please let me know if you have anything to add or if you think I have misrepresented our discussion in any way. Otherwise, we will speak again on Wednesday afternoon, if not sooner, regarding the status of these various issues.

Very truly yours,

/s/

Amy H. Candido

# EXHIBIT D

August 5, 2009

**VIA ELECTRONIC MAIL**

Justin A. Nelson
Susman Godfrey LLP
1201 Third Avenue
Suite 3800
Seattle, WA 98101

Re:    Function Media, L.L.C. v. Google, Inc., Civ. A. No. 2007-CV-279

Dear Justin:

I write to follow-up on various issues from our meet and confer on Monday.

1) Relevant EMG and GPS Notes and Presentations:

We have reviewed the list of GPS presentations and identified all relevant presentations. Apparently, while there is a list of GPS presentations, there is no central repository of the presentations themselves. Accordingly, Google is in the process of collecting the identified, relevant presentations and we will produce them to you on a rolling basis, as available, beginning the end of this week or early next week.

I cannot agree to provide you with a copy of the list of GPS presentations because of the highly sensitive nature of the list and the privileged nature of some of the entries. However, having reviewed the list myself, I can assure you that we have identified for collection any presentations that are remotely relevant to the accused products and other issues in this case. For example, there was only one entry that, from its short description, had any conceivable relevance to acquisitions and I identified that item for collection. Similarly, if there were entries that from

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-5301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

their short description could possibly be relevant, I identified those entries for collection and review.

We are still working on potential ways to identify additional sources of EMG presentations, particularly EMG presentations about acquisitions or financial information, to the extent that these have not already been produced.

2) Relevant Board of Directors Meeting Minutes:

You asked me to look into whether Google can reasonably search for and produce relevant presentations to the Board of Directors. I am informed that, unlike the minutes, there is no central repository of such presentations. However, we believe that any such presentations will be noted in the meeting minutes. Accordingly, we propose that our discussion regarding presentations should be put on hold until we are able to review the meeting minutes.

3) Acquisitions Related Documents:

While we believe that such information is irrelevant, Google will produce the price information for each acquisition. We should be able to produce that information to you by the end of this week or early next week.

We will send you a separate letter regarding narrowing down the sub-set of 17 acquisitions for purposes of additional document collection regarding that sub-set of acquisitions. When we talk later today, we can discuss some specific issues regarding collection of documents related to the sub-set of acquisitions.

We have not heard back yet regarding the proposed dates for Mr. Zoufonoun's deposition.

4) Financial Documents:

With respect to "Everest information," would you please identify the deposition testimony you referenced regarding this information?

We are continuing to look into your other requests.

5) Prior Ads-Related Litigation Documents:

I have been informed that all prior ads-related litigation deposition transcripts, declarations and expert reports to date have now been provided to our document vendor for processing. You have agreed that Google does not need to collect additional ads-related litigation documents.

6) Ads-Related Patent Applications:

I have been informed that all ads-related patent applications to date have now been provided to our document vendor for processing. I will let you know when I have a better sense of what that means in terms of when you can expect production to be complete.

As discussed, I will give you a call at 3 pm today.

Very truly yours,

/s/

Amy H. Candido

# EXHIBIT E

August 14, 2009

<u>VIA ELECTRONIC MAIL</u>

Justin A. Nelson
Susman Godfrey LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101

Re:   <u>Function Media, L.L.C. v. Google, Inc., Civ. A. No. 2007-CV-279</u>

Dear Justin:

I write to update you on the production of various documents.

1)  <u>Relevant EMG and GPS Notes and Presentations:</u>

Pursuant to our agreement, we have been producing relevant GPS presentations and are in the process of collecting and producing the remaining relevant GPS presentations. In addition, pursuant to our agreement, we have been searching for, collecting and producing additional relevant EMG presentations on a rolling basis. (*See* GGL-FM0000001-0000739 & GGL-FM0000740-0002182.)

2)  <u>Relevant Board of Directors Meeting Minutes:</u>

We are in the process of reviewing the meeting minutes and will let you know as soon as possible when you can expect production. However, we are aiming to have the relevant meeting minutes produced next week.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-6301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052. Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

3) Information Regarding All Acquisitions:

As we have repeatedly stated, price information for all of Google's acquisitions – irrespective of what assets were acquired (personnel, office space and equipment, etc.) or the similarity of any technology acquired to the technology at issue in this case – is not relevant to any issues in this case. Nevertheless, in an effort to compromise, we agreed to provide you with a list of price information for all of Google's acquisitions because we thought that such information had already been compiled. However, as I told you during our phone call on Tuesday, we subsequently learned that the information we thought we had is not accurate and compiling such information would be unduly burdensome. Given that this information is irrelevant, unduly burdensome to compile and extraordinarily competitively sensitive, we can no longer agree to provide price information for all of Google's acquisitions.

Rather, Google proposes the following compromise: Google will provide more detail regarding the substance of each of the acquisitions, such as more detail regarding the nature of any technology acquired. In light of that additional detail, if Function Media identifies a limited number of additional acquisitions that it believes should be included in the sub-set of acquisitions about which Google has agreed to produce additional information, Google will produce the following documents regarding those acquisitions and the price of those acquisitions: white paper, valuation report, and the final deal documents, to the extent that such documents continue to exist and can be located after a reasonable search. Please let me know if this compromise is acceptable to Function Media.

I note that your e-mail today requests that we produce FASB-141 information or FASB-141 evaluations. To my understanding, Google has explained to Function Media numerous times that there is no such thing as a FASB-141 form, evaluation or other compilation of information. What exists, if anything, regarding the price of an acquisition is what I referenced in my proposal above – white papers, valuation reports, and deal documents.

4) Documents Regarding the Sub-Set of Acquisitions:

We continue to search for presentations and other documents regarding the previously identified sub-set of acquisitions and will produce such documents, to the extent that they exist, on a rolling basis. In particular, documents collected from the corporate development department are being produced on a rolling basis, including a CD of documents that will be produced either today or Monday.

5) Financial Documents:

We produced additional financial documents in our August 7 production (GGL-FM0000001-0000739), and another chunk is in the production queue and should be produced early next week.

6) Ads-Related Patent Applications:

I have been informed that all ads-related patent applications have now been produced. (*See* G003-0029833-0279659.)

7) Intellectual Ventures:

Pursuant to our agreement, Google has searched for and collected for production all pre- and post-Complaint communications between itself (or its counsel) and Intellectual Ventures (or its counsel) regarding this lawsuit, the patents-in-suit and/or the inventors. The majority of those documents should be produced either today or Monday.

8) Documents from 30(b)(6) Deponents:

Pursuant to our agreement, we will produce documents from Mr. Curtiss related to the 30(b)(6) topics on which he is designated early next week. As noted above, we have been and will continue to produce financial documents relevant to Ms. Bravomolo's 30(b)(6) deposition.

9) Prior Testimony:

We will produce prior testimony for Mr. Chen either today or Monday. We have confirmed that there is no prior testimony for Mr. Curtiss, Ms. Bravomolo, Ms. Lai, or Mr. Zoufonoun.

Very truly yours,

/s/


Amy H. Candido

# EXHIBIT F

| From: | Justin A. Nelson [jnelson@SusmanGodfrey.com] |
| Sent: | Tuesday, August 18, 2009 1:12 PM |
| To: | Amy Candido; Billie D. Salinas; Stacy Schulze; Jeremy Brandon; Max L. Tribble; Joseph S. Grinstein |
| Cc: | Google-Function Media; Google-FM-Exchange@fr.com; cmaloney@icklaw.com; ccapshaw@capshawlaw.com; jrambin@capshawlaw.com; nancy@icklaw.com; charley@pbatyler.com; ederieux@capshawlaw.com; gil@gillamsmithlaw.com; otiscarroll@icklaw.com; rcbunt@pbatyler.com; katherine@icklaw.com |
| Subject: | RE: Summary of yesterday's evening call |

Amy --

Sorry for any misunderstanding.  We are amenable to this expedited schedule.

Best,

Justin

---

From: Amy Candido [mailto:amycandido@quinnemanuel.com]
Sent: Tue 8/18/2009 2:56 PM
To: Justin A. Nelson; Billie D. Salinas; Stacy Schulze; Jeremy Brandon; Max L. Tribble;
Joseph S. Grinstein
Cc: Google-Function Media; 'Google-FM-Exchange@fr.com'; 'cmaloney@icklaw.com';
'ccapshaw@capshawlaw.com'; 'jrambin@capshawlaw.com'; 'nancy@icklaw.com';
'charley@pbatyler.com'; 'ederieux@capshawlaw.com'; 'gil@gillamsmithlaw.com';
'otiscarroll@icklaw.com'; 'rcbunt@pbatyler.com'; 'katherine@icklaw.com'
Subject: RE: Summary of yesterday's evening call

Justin,

Your email is inaccurate in a few respects.

First, I did not state that I understood how you and a Court could consider the price
information for all of Google's acquisitions to be relevant.  Rather, I said that I
understand how broadly the Court may construe what is relevant.  As you know, it is our
belief that price information for all of Google's acquisitions, irrespective of what was
acquired and when, is irrelevant.  The only acquisitions that have any conceivable relevance
-- and even then, we do not think they are relevant under Georgia Pacific -- are acquisitions
of ads-related technologies and we have produced that information to you.

Second, you state:  "I agreed to refrain from filing a Motion tomorrow on this while you
checked again with the client on producing this in exchange for your agreement on an
expedited schedule to hear this at Markman."  This is inaccurate.  You agreed to refrain from
filing a Motion today while I checked again with the client in the hopes that we might be
able to avoid unnecessary motion practice.  I was very clear that I could not agree on the
phone last night to an expedited schedule.  You proposed what you had in mind for an
expedited schedule -- for example, the parties each submitting simultaneous papers on Monday.
I told you that if we were able to agree to an expedited schedule, it would have to involve
FM filing something first and Google having an opportunity to respond.  The example that we
discussed was FM filing an Opening Brief on Friday and Google filing a response on Monday.

1

But, I did not agree to any such schedule. I explicitly said I would discuss it with my client -- along with the substantive issue -- and get back to you tonight.

Indeed, I am now in a position to confirm that Google will not agree to produce the price information for all acquisitions (or to produce the valuation reports for all acquisitions), for the reasons stated previously. We will agree to the following expedited schedule for your motion to compel: by end of day tomorrow, FM files its motion to compel limited to 5 pages; and by end of day Friday, Google files its opposition to the motion to compel limited to 5 pages. There will not be any reply or sur-reply briefs. This schedule is necessary given travel to the Markman hearing next week. Please confirm this schedule is acceptable to FM.

Thanks,
Amy

-----Original Message-----
From: Justin A. Nelson [mailto:jnelson@SusmanGodfrey.com]
Sent: Tuesday, August 18, 2009 9:20 AM
To: Billie D. Salinas; Stacy Schulze; Jeremy Brandon; Max L. Tribble; Joseph S. Grinstein
Cc: Google-Function Media; Google-FM-Exchange@fr.com; cmaloney@icklaw.com;
ccapshaw@capshawlaw.com; jrambin@capshawlaw.com; nancy@icklaw.com; charley@pbatyler.com;
ederieux@capshawlaw.com; gil@gillamsmithlaw.com; otiscarroll@icklaw.com; rcbunt@pbatyler.com;
katherine@icklaw.com
Subject: FM: Summary of yesterday's evening call

Billie/Amy --

On yesterday evening's call, we discussed the following:

1. Interrogatory 11 -- I told you that we wanted to be able to track the value of a pre-IPO share, including any splits, dividends, etc. You told me that you would try to obtain this information, and that no motions practice was necessary. You told me this information might take a bit to produce. We tentatively agreed that you would have this information by Friday, August 28.

2. Acquisitions price list/valuation reports -- I told you that we needed either the price list (including whether the transaction was in stock) or the valuation reports for the list of transactions, and that this fell squarely within the Georgia-Pacific factors. I also stated that we have been asking for the valuation reports for the beginning, that we were willing to accept a price list to ease Google's alleged burden, but that it now seemed easier to simply produce the valuation reports given that Google would have to recreate a price list I said that I intended to file a motion tomorrow on this given the prior meets and confers. You stated that you were still trying to obtain client approval for this, that you did not think that the documents were relevant under Georgia and, but understood how we and a court could think they were relevant. I agreed to refrain from filing a Motion tomorrow on this while you checked again with the client on producing this in exchange for your agreement on an expedited schedule to hear this at Markman. I suggested having simulataneous briefs of a paragraph or page long or so due in a joint filing to tee this up for hearing on Markman day. You stated that 1 page was too short. I suggested 5 pages. You suggested that the Opening Brief be due on Friday and the Responsive Brief due on Monday. I agreed to that schedule.

3. Depositions -- We offered September 21 for Hasan and either Sep 28 or 29 for Burke. You are checking on other dates, and stated that you will give them to us on a rolling basis. I emphasized the urgency of getting us dates and nailing down a schedule.