# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **FUNCTION MEDIA, L.L.C.,** | Civil Case No. 2:07-CV-279 (CE) |
| v. | |
| **GOOGLE, INC. AND YAHOO!, INC.** | |

## GOOGLE'S MOTION TO SEAL DOCUMENTS AND CLOSE THE COURTROOM DURING PRESENTATION OF CONFIDENTIAL MATERIAL AT TRIAL

**Introduction**

By the very nature of this patent infringement suit, Plaintiff has access to some of Google's most sensitive confidential information. Due to the strong protective order entered by this Court, Google has produced millions of pages of materials that include some of the company's most highly sensitive engineering and finance records without troubling the Court with the concerns the company would otherwise have. While Google respects the right of public access to judicial proceedings, public dissemination of this information would cause considerable harm to Google's competitive standing; allowing companies to compete against Google without the years of refinement and significant financial outlay Google has invested in these trade secrets and other sensitive information. The strong public interest in protecting this kind of sensitive commercial information from disclosure outweighs the common law presumption of public access to judicial proceedings. Thus, testimony related to the confidential operations of Google's products, and any testimony regarding Google's nonpublic financial data, should be shielded from public disclosure. Accordingly, Google asks the Court to close the courtroom whenever testimony regarding Google's sensitive commercial information is offered at trial, and to seal all documents and portions of transcripts discussing Google's sensitive commercial information. Once the parties exchange their exhibit lists and deposition designations, Google will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request.

**Argument**

I. **COURTS DENY PUBLIC ACCESS TO JUDICIAL PROCEEDINGS WHEN DISCLOSURE OF CONFIDENTIAL COMMERCIAL INFORMATION COULD HARM A PARTY'S COMPETITIVE STANDING.**

While there is a common law right of public access to judicial proceedings, that right is not a constitutional right and it is "not absolute." *See Nixon v. Warner Communications, Inc.*,

435 U.S. 589, 598 (1978); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 432 (5th Cir. 1981)("The common law right of access certainly antedates the Constitution's free press guarantee, but it does not rise to that level of importance or merit the same degree of protection.").

The decision to close the courtroom is vested in the discretion of the trial court, with the Firth Circuit directing that the "court must balance the public's common law right of access against the interests favoring non-disclosure." *SEC v. Van Waeyenberghe*, 900 F.2d 845, 848 (5th Cir. 1993). *See also Motorola, Inc. v. Analog Devices, Inc.*, 2003 WL 25778434 (E.D. Tex. 2003).[1] The common law provides only a presumption of public access, which is just *one* of the interests to be weighed in favor of disclosure. *See Belo*, 654 F. 2d at 434; *Van Waeyeberghe*, 900 F.2d at 848 n4 ("we have refused to assign a particular weight to the right."). Where, as here, only private commercial interests—as opposed to questions of public policy—are involved, the interest in public access is diminished. *See In re Iowa Freedom of Information Council*, 724 F.2d 658, 664 (8th Cir. 1984) ("Where only private commercial interests or damage are involved, we think the law justifies the steps taken by the District Court to [prevent public disclosure]"). The Fifth Circuit has also explicitly rejected other circuits' holdings that "only the most compelling circumstances" can rebut that presumption. *See Belo*, 654 F.2d at 434 ("With all due respect, we find such standards to be misreadings of the Supreme Court's directives, and we decline to apply them here"); *Van Waeyenberghe*, 900 F.2d at 848 n4 ("While other circuits have held that there

---

[1] Though *Motorola* and other cases cited in this brief discuss the common law right to inspect and copy judicial records, courts have concluded that "identical interests" support both the public's right to inspect and copy and the public's right of access to trials, and look to both lines of cases as authority for each. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 895 (E.D. Pa. 1981)

is a strong presumption in favor of the public's common law right of access to judicial records, we have refused to assign a particular weight to the right.").

In stark contrast to the diminished interests in public access to these proceedings, there are strong interests in favor of protecting Google's confidential commercial information from disclosure. "[T]here can be no doubt that society in general is interested in the protection of trade secrets and other valuable commercial information. That interest is recognized, for example, in Rule 26(c)(7), in our copyright, trademark, and patent statues, and in the common law of business torts." *Zenith Radio*, 529 F. Supp. at 905. Protecting confidential information such as trade secrets is important since "[t]heir only value consists in their being kept private. If they are disclosed or revealed, they are destroyed." *In re Iowa Freedom of Information Council*, 724 F.2d at 662.

Accordingly, courts frequently deny public access when disclosure of confidential commercial information could "harm a litigant's competitive standing." *See Nixon*, 435 U.S. at 598. *See also New York v. Microsoft Corp.*, 2002 WL 1315804 (D.D.C. 2002); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982)("the right to attend judicial proceedings should, in appropriate circumstances, give way to the right to protect one's trade secrets"); *Zenith Radio Corp.*, 529 F. Supp. at 901 (E.D. Pa. 1981) ("Judicial proceedings and records may be closed in part or in full to the public in order to protect private interests, including proprietary interest in trade secrets and other commercial information"). The Court should do the same here.

## II. THE DISCLOSURE OF GOOGLE'S CONFIDENTIAL COMMERCIAL INFORMATION AT ISSUE IN THIS CASE COULD HARM GOOGLE'S COMPETITIVE STANDING.

Since this motion was due before the parties exchanged exhibit lists, Google does not know what the full scope of evidence will be at trial, and in particular what Plaintiff intends to

introduce.  Given that, Google cannot specify at this time the evidence that should be shielded from disclosure in open court, or the evidence or testimony that would fall within those categories.  Once the parties exchange their exhibit lists and deposition designations, Google will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request.  In light of the above legal principles, Google does not intend to cast a wide net across everything that it has produced.

Based on the discovery to date, however, Google believes Plaintiff will introduce evidence regarding the design and technology underlying Google's products, as well as nonpublic highly sensitive financial information.  The Court should close the courtroom when this evidence is heard because its public dissemination could harm Google's competitive standing.

> A. **Google's Technology and Product Design and Operations Are Highly Confidential.**

There can be no dispute that evidence related to the design and technology underlying Google's search and advertising products are trade secrets that must be protected.  In *Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), the court found that the source code underlying Google's search technology is "the product of over a thousand person-years of work" and that "[t]here is no dispute that its secrecy is of enormous commercial value.  Someone with access to it could readily perceive its basic design principles, and cause catastrophic competitive harm to Google by sharing them with others who might create their programs without making the same investment." *Id.* at 259.  With respect to Google's AdWords program—one of the accused products in this case—the court found that the schema for the AdWords database "constitutes commercially sensitive information regarding Google's advertising business, the

disclosure of which would permit others to profit without equivalent investment from the years of refinement and thousands of person hours of work Google spent." *Id.* at 263.

Of particular concern in this litigation is disclosure of Google's technology and methods for delivering ads to end users. Google's superior ability to deliver relevant ads faster and more accurately than its competitors derives, in large part, from its highly confidential process of directing calls for ads to the one (of its many) data centers best positioned to respond, and the technology used to process and reply to those calls. Google has invested significant resources in building, maintaining, and improving this technology, and its public disclosure would allow competitors to adopt Google's trade secrets without making the same investment Google did.

In *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273 (S.D.N.Y. 1982), the court closed the courtroom to hear testimony about S&P's confidential business procedures relating to the development and composition of the S&P 500 Index. A news service sought access to the transcripts from the hearing but the court denied the request, reasoning that the sealed testimony "constitute[d] trade secret information not available to the general public and that this information if released would reveal how S&P maintains its position as the most reliable and accurate of the stock market indexers to the irreparable detriment of S&P." *Id.* at 1277. Similarly, releasing Google's technology to the general public would reveal how Google's contextual targeting operates and how Google routes search requests to the appropriate data centers and processes those requests—the very key to Google's competitive advantage in being the quickest and most accurate of the search engines in the industry. Indeed, many of the key engineering documents Google produced in response to Plaintiff's requests are potentially more valuable to competitors than the source code, as they explain in plain English the various steps involved in the delivery of Google's AdWords and AdSense products.

Assuming Plaintiff intends to use those documents—which are presumably more accessible to a jury—and elicit testimony regarding their content, Google will face considerable harm if the record and courtroom remains completely open to the public.

Testimony may also reveal the way in which data flow is managed among all of Google's data centers—how each of the data centers are programmed, updated, backed up, and synchronized with each other to provide a seamless experience to the user. Public access to this information would not only allow competitors to copy Google's processes, but it would empower hackers' and other malevolent actors' ability to sabotage Google's products. By understanding Google's system of interconnected data centers, and how information flows among them, a saboteur could attempt to disable Google's ad service—a harm affecting not only Google's business, but also impacting Google's advertising clients and partners.

Accordingly, the Court should close the courtroom when information about this process is offered at trial, and seal all documents and portions of transcripts related to this testimony.

### B. The Disclosure of Google's Nonpublic Financial Data Could Harm Google's Competitive Standing.

Google also asks the Court to seal the courtroom for any testimony related to its nonpublic financial data. Courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible Benefits Council v. Feldman*, 2008 WL 4924711 (E.D. Va. 2008) (holding that Plaintiff's interest in preserving the confidentiality of financial data normally unavailable to the public outweighs public's interest to access).

Here, Google has produced substantial financial information data to Plaintiff that is not disclosed to the public, including detailed revenue data broken down by geographic locale, product type, features, and the format of the ads. Such information would be a gold mine to

Google's competitors, enabling them to evaluate which of Google's products and strategies are the most profitable, which features attract the most users and customers, and how much Google has paid for certain confidential strategic acquisitions. Google produced all of this information in good faith pursuant to the Court's protective order; it should not now face damaging public access to such materials in order to exercise its right to a trial. Due to the obviously sensitive nature of this information, the Court should close the courtroom when any evidence of Google's nonpublic financial information is offered at trial, and seal all documents and portions of transcripts related to this evidence.

### III. PLAINTIFF OFFERED NO REASONABLE BASIS TO OPPOSE THIS REQUEST TO CLOSE THE COURTROOM.

Google reached out to Plaintiff to ask whether it would agree to join this motion, and close the courtroom when confidential commercial information is offered at trial. Plaintiff refused to consent to this motion, yet did not articulate a single reason why it would refrain from doing so. Thus, there appears to be no legitimate, non-tactical reason why Plaintiff would oppose this request.

### CONCLUSION

For the foregoing reasons, the Court should close the courtroom during the presentation of confidential commercial information at trial.

Dated: October 2, 2009

Respectfully submitted,
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: */s/ Amy H. Candido*

Charles K. Verhoeven (admitted *pro hac*)
 *Lead Attorney*
 charlesverhoeven@quinnemanuel.com
Amy H. Candido (admitted *pro hac*)
 amycandido@quinnemanuel.com
Billie D. Salinas (admitted *pro hac*)

billiesalinas@quinnemanuel.com
Carl G. Anderson (admitted *pro hac*)
 carlanderson@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Stan Karas (admitted *pro hac*)
 stankaras@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Edward J. DeFranco (admitted *pro hac*)
 eddefranco@quinnemanuel.com
James M. Glass (admitted *pro hac*)
 jimglass@quinnemanuel.com
Patrick Curran (admitted *pro hac*)
 patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Harry L. Gillam, Jr., Bar No. 07921800
 gil@gillamsmithlaw.com
Melissa R. Smith, Bar No. 24001351
 melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Counsel for Defendant and Counter-Claimant
GOOGLE INC.

# CERTIFICATE OF CONFERENCE

I certify that counsel for Google Inc. have satisfied the meet and confer requirements of Local Rule CV-7(h). The personal conference requirement of Local Rule CV-7(h) has been met. Edward DeFranco of Quinn Emanuel Urquhart Oliver and Hedges, LLP, counsel for Google met and conferred with Joseph Grinstein of Susman Godfrey LLP, Counsel for Function Media LLC and others. In those conferences, Messrs. DeFranco and Grinstein discussed their clients' positions. These discussions conclusively ended in an impasse regarding the discovery dispute at issue in the motion.

Dated: October 2, 2009

*/s/ Carl G. Anderson*
Carl G. Anderson

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 2, 2009 to counsel of record via ECF/PACER.

*/s/ Carl G. Anderson*
Carl G. Anderson