# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA LLC | § | Civil Action No. 2007-CV-279 |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GOOGLE INC. AND YAHOO!, INC. | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## FUNCTION MEDIA LLC'S RESPONSES AND OBJECTIONS TO GOOGLE INC. AND YAHOO!, INC.'S FIRST SET OF JOINT INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Function Media LLC responds and objects as follows to Defendant Google Inc. ("Google") and Yahoo!, Inc.'s ("Yahoo!'s") First Set of Joint Interrogatories:

### General Responses and Objections

1. Function Media objects to each interrogatory to the extent it seeks information protected from discovery by the attorney/client privilege, work-product doctrine, or any other applicable privilege, law or rule ("privileged information"). Function Media will not disclose privileged information in response to any interrogatory, including by production of documents. Any answer or production of documents should be understood to exclude privileged information.

2. Function Media objects to each interrogatory to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. Function Media objects to each interrogatory to the extent it seeks to impose an obligation different from or greater than that required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Texas, the Court's Patent Rules, or the Docket Control Order entered in this case.

4. Function Media objects to each interrogatory to the extent it calls for information not readily available to Function Media or information that would be just as easy for Defendants to determine from documentary evidence. Function Media will respond to such interrogatories to the extent and in the manner required by Rule 33(d) of the Federal Rules of Civil Procedure.

5. Function Media objects to each interrogatory to the extent it purports to require the disclosure of information that is not within the possession, custody, or control of Function Media. Function Media cannot reasonably respond to such interrogatories, and therefore objects to them as unreasonable and unduly burdensome. Function Media further objects to the extent the interrogatories would require it to produce or disclose information that is publicly available or that is as readily identifiable and accessible to Defendants as it is to Function Media.

6. Function Media objects to each interrogatory to the extent it is compound and/or contains multiple sub-parts within the meaning of Rule 33(a) of the Federal Rules of Civil Procedure.

7. Function Media objects to each interrogatory to the extent it calls for purely legal conclusions.

8. Function Media objects to each interrogatory to the extent it calls for an identification in advance of the completion of discovery of all facts supporting Function Media's contentions. Function Media will respond to premature contention interrogatories on the basis of Function Media's current knowledge.

9. Function Media objects to the definition of the terms "You", "Your" and "Function Media" to the extent that the definition of such terms includes entities other than Function Media LLC and that are predecessors, successors, past and present parents,

943124v1/010020

subsidiaries, divisions, departments and other organizational and operating units of Function Media LLC.

10. Function Media objects to the definition of the term "Patents-in-Suit" to the extent that such definition includes U.S. Patent No. 6,829,587, which is no longer asserted in this action. Function Media further objects to this definition to the extent it purports to encompass any future patents.

11. By objecting and responding to the interrogatories as set forth herein, Function Media is not in any way waiving or intending to waive, but rather is expressly preserving, (a) all objections as to competency, relevancy, materiality, and admissibility of any information or documents that may be provided in response to any interrogatory; and (b) all rights to object on any ground, and at any time, to the use of any of the information or documents that may be provided in response to any interrogatory.

12. No incidental or implied admissions are intended by the responses herein. The fact that Function Media has answered or objected to any interrogatory should not be taken as an admission that Function Media accepts the existence of any facts or assumptions set forth or assumed by said interrogatory.

13. Function Media is willing and prepared to discuss definitions of vague, ambiguous, or otherwise objectionable terms, as well as the appropriate discoverable scope of each interrogatory in light of the objections contained herein.

## Specific Responses and Objections

**INTERROGATORY NO. 1:**

If you contend that there are secondary or objective indicia of non-obviousness, separately for each of the Claims-in-Suit, specifically list all the indicia for which you contend

evidence exists and identify all facts and evidence supporting or contradicting that contention, and identify all documents and things supporting, contradicting, or otherwise concerning this contention.

**RESPONSE:**

Function Media incorporates herein the General Responses and Objections set forth above. Function Media further objects to this interrogatory as vague, premature, and unduly burdensome at this stage of the litigation. Function Media further objects to the extent that this interrogatory calls for the provision of expert testimony in advance of the deadline for expert reports (including in particular the deadline for Defendants' expert reports, which presumably will better explain their obviousness contentions). Discovery is ongoing, and Function Media will seasonably supplement its response to this interrogatory once discovery is complete and/or as required by the Court's Scheduling Order. Function Media also objects to this interrogatory to the extent it improperly requires Function Media to marshal all of its evidence for the benefit of Defendants.

Subject to and without waiving the foregoing objections, Function Media responds as follows: The following responses apply with equal force to all claims being currently asserted against Defendants:

1. <u>Long Felt Need</u>: Beginning in the 1990s, commercial Internet users were seeking an efficient system to monetize their internet properties and/or products. Advertisers needed an efficient way to advertise on multiple websites and/or other publications, and publishers needed an efficient way to receive advertisements that complied with the publisher's parameters. As of the critical date of the '045 patent, none of the identified Prior Art systems or publications provided what the '045 patent provided: for example,

-4-
943124v1/010020

the automatic creation and publication of customized advertisements to multiple websites in accordance with the design and style standards of the respective publisher. No prior system provided the efficiency that the 045 system provided. The widespread commercial acceptance of this type of patented approach is perhaps best evidenced by Google and Yahoo!'s successful and lucrative adoption of it.

2. <u>Laudatory Statements</u> - That the advertising system disclosed in the '045 patent represented a novel and useful approach is reflected, for example, in laudatory statements of Google and Yahoo!. These statements tout—well after the critical date of the '045 patent—the purported innovative capabilities and functionalities of the Google and Yahoo! systems. Those systems are, in fact, the system that is disclosed in the '045 patent. Such laudatory statements include (but are not limited to):

   <u>a.</u> That the user can "access thousands of advertisers with minimal effort"

   <u>b.</u> "Signing up and maintaining relationships with advertisers is a full-time job. Luckily Google Adsense does it for you" and that "[b]est of all, once you get started, the Adsense program requires virtually no maintenance."

   <u>c.</u> "Rev up your site's revenue potential"

   <u>d.</u> "When you display Google ads on your website, you'll be maximizing your revenue potential."

   <u>e.</u> "…Adsense will automatically display the text or image ad(s) that will generate the maximum revenue for a page – and the maximum revenue for you."

   <u>f.</u> "When your content changes, so do your ads."

   <u>g.</u> "We work hard to understand your content and deliver ads that are relevant to specific pages, automatically, no matter how many thousands of pages your site

-5-

may have, or how specialized or broad your content. As your content changes, Google's ads change to match. And since our ads are also targeted by country, global businesses can display local advertising with no additional effort."

h. "We're committed to maintaining our customers' business standards. That's why Google AdSense features these safeguards:

"Competitive ad filters. You can block competitive ads, or other ads you want to keep off your site, simply by telling us which URLs to block."

i. "Customize ads to complement your site.

You spend lots of time perfecting your website's look and feel, and we want AdSense to fit in. So we let you customize the appearance of your ads to fully complement your site by choosing from over 200 colors and 24 pre-set color palettes (you can create and save your own custom palettes using a simple point-and-click color selection tool)."

j. "Getting started is fast and easy.

Getting started as a Google AdSense publisher is easy. It only takes a few moments to apply online for both content and search ads. Once you're approved, simply log in to your account, copy a block of HTML code and paste it into your existing ad server or any of your web pages. And that's it—you're done. Relevant ads start to appear on your web pages, and your earnings start to add up."

https://www.google.com/adsense/static/en_US/AfcOverview.html

3. Copying - Google and Yahoo! have patents related to their online advertising systems. The applications for these systems were filed both before and after the critical date of the '045 patent. But none of these patents or patent applications disclosed the approach

943124v1/010020

set forth in the '045 patent until well <u>after</u> the '045 patent was published. (*See, e.g.,* 2004/0167928 A1). Nor did Google or Yahoo! actually implement and market the accused systems until well after the '045 patent was published. These facts suggest non-obviousness.

4. <u>Commercial Success</u> – The validity of the inventions disclosed in the patents-in-suits is further confirmed by the tremendous success of the accused systems. The revenue numbers produced to date by Defendants evidence the commercial success of the very advertising system that was disclosed and claimed in the patents-in-suit. Through the use of the inventions disclosed in the patents-in-suit, for example, Internet advertising has become a multi-billion-dollar industry with revenues far exceeding projections.

5. <u>Prior Art Teaching Away from Invention</u> - Notwithstanding the long-felt need for an efficient approach to Internet advertising, the Prior Art taught away from the approach disclosed and claimed in the patents-in-suit. For example, the Prior Art systems required advertisers to shoulder the burden of learning and applying publisher standards in creating their own conforming ads and/or required publishers to review advertisements for conformance with their standards. Each of these tasks involved inefficiencies and non-automated processes. The patents-in-suit removed such inefficiencies.

Function Media may rely on publicly available documents describing the accused systems and Prior Art, the testimony of Function Media's testifying technical expert(s), documents produced by Defendants in this action (which are equally available to Defendants as they are to Function Media), and the testimony of witnesses with knowledge of the accused systems and Prior Art.

## INTERROGATORY NO. 2:

Identify all efforts by or on behalf of Function Media to mark any product with the patent number of the Patents-in-Suit including, without limitation, efforts Function Media made to comply with the marking requirements of 35 U.S.C. § 287.

## RESPONSE:

Function Media incorporates herein the General Responses and Objections set forth above.

Subject to and without waiving the foregoing objections, Function Media responds that it has not implemented a system that incorporates all of the elements of any claim within the patents-in-suit. It therefore has never marked any product with the patent numbers of any patent-in-suit.

Dated: April 3, 2009

Respectfully submitted,

/s/ Max L. Tribble Jr.

Max L. Tribble, Jr.
State Bar No. 20213950
Email: mtribble@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, Texas, 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Lead Attorney for Plaintiff

OF COUNSEL:
Joseph S. Grinstein
State Bar No. 24002188
Email: jgrinstein@susmangodfrey.com

943124v1/010020

SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

## CERTIFICATE OF SERVICE

This is to certify that, on April 3, 2009, a true and correct copy of the foregoing was served via email on defense counsel of record.

/s/ Jeremy J. Brandon
_____
Jeremy J. Brandon

943124v1/010020