# EXHIBIT B

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | Stone et al |
| Serial No: | 09/480,303 |
| Filed: | Jan 10, 2000 |
| Entitled: | A METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLUARLITY OF FUNCTIONS. |
| Group Art Unit: | 2167 |
| Examiners: | B. Jaketic |
| | R. P. Olszewski |

Assistant Commissioner of Patents
Washington, D. C. 20231

## Amendment

Gentlemen:

This amendment is being filed in response to the office action, mailed on Nov. 8, 2001 wherein all claims of record, claims 1 through 23 were rejected. Of the original claims 1 through 31, claims 24 through 31 had been withdrawn from consideration under verbal restriction requirement. Applicants' attorney verbally elected claims 1 through 23 with the traverse. Applicants hereby affirms said election.

1

This amendment is further in response to the courteous interview extended to the inventors on Dec. 13, 2001. Please amend the above-identified application as set forth below.

## In The Specification

Responding to the examiner's objection to the disclosure, on page 10 line 6 the "4g" should be …4h…. This amended shall be made by substituting the following paragraph on page 10 lines 6 and 7;

"Fig. 4a through 4h is a block diagram showing the Seller's use of the invention. This Example Embodiment is configured for delivery of tickets or reservation confirmation."

This amended line 6 and 7 is in replacement of the erroneous lines 6 and 7, page 10.

## In The Claims

In response to the restriction requirement, applicants formally cancel claims 24 through 31 without prejudice.

Please substitute the following amended claims for the pending claims with the same numbers.

1  (Amended) A method of using a network of computers to contract for, facilitate and control the creating and publishing of presentations, by a seller, to a plurality of media venues owned or controlled by other than the seller, comprising:

   a) providing a media database having a list of available media venues;

   b) providing means for applying corresponding guidelines of the media venues;

2

c) providing means for transmitting said presentations to a selected media venue of the media venues;

d) providing means for a seller to select the media venues; and

e) providing means for the seller to input information;

whereby the seller may select one or more of the media venues, create a presentation that complies with said guidelines of the media venues selected, and transmit the presentation to the selected media venues for publication.

2) (Amended) The method of claim 1 further providing a seller database having a list of sellers.

3) (Amended) The method of claim 1 further providing a means for creating structured presentations from the sellers information.

4) (Amended) The method of claim 3 further providing a means for transferring said created presentations to the media venues for publishing.



5) (Amended) The method of claim 1 further providing a means for said media venues to input said guidelines and information.

6) (Amended) The method of claim 1 further providing means for said media venues to receive the sellers presentations.

7) (Amended) The method of claim 1 further providing a media buyers database having a list of media buyers.

8) (Amended) The method of claim 1 further providing a media transactions database having a list of media transactions.

9) (Amended) The method of claim 1 further providing a media inventory database having a list of media inventory.

3

10) (Amended) The method of claim 1 further providing a presentations database containing created presentations.

11) (Amended) The method of claim 1 further providing an inventory database containing available inventory.

12) (Amended) The method of claim 1 further providing a transaction database containing transactions made.

13) (Amended) The method of claim 1 further providing means with instructions for a buyer to select and purchase offers of sellers.

14) (Amended) The method of claim 13 further providing a transaction database for recording the purchases of the buyers.

15) (Amended) The method of claim 13 further providing a means for the buyers to purchase goods or services offered by the seller.



16) (Amended) The method of claim 1 wherein the media database includes a list of available media and corresponding editorial, design and publication standards.

17) (Amended) The method of claim 1 wherein the media database includes a list of available media and corresponding pricing and media inventory availability.

18) (Amended) The method of claim 1 further providing means for transferring said presentations to said selected media venues.

19) (Amended) The method of claim 1 further providing a computer to control and facilitate the network of computers.

20) (Amended) The method of claim 1 further providing a computer to control and facilitate creation and distribution of all presentations to said selected media venues.

4



21) (Amended) The method of claim 1 further providing a means for automatically creating open-access electronic presentations.

22) (Amended) The method of claim 1 further providing a means for publishing open-access presentations electronically.

23) (Amended) The method of claim 1 further providing a computer to present dynamic presentations electronically.

## Remarks

Reconsideration of this application, in view of the forgoing amendments and the following remarks, is respectfully requested. Support for the amended claims is found throughout the originally filled specification including the drawings and claims. For example, the term "contract for" as found on claim 1 line 1 of the amended claims is also found in 4a and the past tense "contracted for" is found page 17 line 2 of the definition of "Non Resident Media". The term "seller" as used throughout the amended claims is found throughout the specification and is defined on page 19 of the glossary under the heading "Seller".

Applicants again note with appreciation the courteous interview extended by the examiners on Dec. 13, 2001. Examiners Robert Olszewski and Bryan Jaketic were most helpful in reaching the conclusion that the application has inventive merit.

Be advised that the remaining claims of the application as amended are deemed to have been jointly invented by the named inventors.

Turning now to the rejection and objections to the claims of record, claims 1 through 23, claims 3 and 4 were objected to because of the following informalities: "in line 1 of each claim,

"wherein" should presumably be –comprising–." Applicants have amended claims 3 and 4 to read "further providing" in place of "wherein" and in place of "comprising" as suggested by the examiner. The reason for not using "comprising" as suggested by the examiner is that the claims as amended use the term "further providing".

Claim 5 was objected to because of the following informality: "in line 1 of the claim, "inputs" should presumably be –input–." Applicants have amended claim 5 as suggested by the examiner.

### Claims Rejections – 35 USC Section 112

Claim 15 stands rejected for insufficient antecedent basis for phrase "the goods or services" in line 1. Applicants' amended claims now presents the amended claim 15 as dependent on claim 13.

### Claims Rejection 35 USC Section 102

The examiners office action of November 8, 2001 made the following claim rejections under 35 USC Section 102 which are respectfully traversed for reasons subsequently set forth herein;

"Claims 1-6, 10, 13, 15, 16, 18-20 rejected under 35 U.S.C. 102(e) as being anticipated by Mandeberg et al." The examiner maintains that Mandeberg disclosed a method of "…control the creating and publishing of presentations to a plurality of media venues …". This is incorrect. For example, Mandeberg et al do not contain a method for the creating and publishing of presentations to a plurality of media venues. Mandeberg et al present only an <u>Internal Management Model</u> while the present invention teaches a <u>Business to Business Model</u>, which teach in different directions. Mandeberg et al in col. 5 lines 48-53 teach:

6



"As shown in Fig. 1, system 100 includes an apparatus and/or a step for assembling at a central location, digital multimedia presentations for the plurality of stores. This apparatus or step is indicated in Fig. 1 as "content development" 102. Digital multimedia presentations which are developed are stored in a presentation database 104 at the central location..."

Mandeberg et al discuss venues i.e. as "wholesale or retail stores'. The Mandeberg et al reference does not use the term "Media Venues" as taught by the present invention.

In the SUMMARY OF THE INVENTION of Mandeberg et al, in col. 1 lines 47-52 states:

"The present invention includes methods, systems and computer program products for generating store displays for a plurality of stores. Digital multimedia presentations are assembled at a central location for the plurality of stores. Start and end times are assigned to the digital multimedia presentations for the stores."

Further the Mandeberg et al reference continues in the SUMMARY OF THE INVENTION, in col. 2 lines 57-60:

"The present invention is particularly applicable for generating menu boards for an enterprise such as a restaurant chain, which includes a plurality of sites such as restaurant sites."

The incorrect equating by the examiner of media venues (sites) is well established by the reference itself. Please note the definition of "Media Venues" as found on page 16 of the glossary of the present invention.

7

Turning now to the examiners' reference to Mandeberg et al. (col. 6 lines 4-16), the "presentation database 104" contains completed presentations, this content is not the equivalent of the "presentation rules database" of the present invention.

The term "Sellers" is not taught directly or indirectly by the Mandeberg et al reference. <u>An Internal Management Model does not include a second party seller or sellers as does the Business To Business model presented by the present invention.</u> In the claims as amended the term seller is properly used as supported by the specification. In addition the term "contract for" that is now found in the amended claim 1 preamble clearly supports a Business to Business model i.e., by definition, <u>contract for</u>, is between two or more parties. Such a concept is not contemplated by the Mandeberg et al reference. As defined by Webester's Third New International Dictionary, copyright 1971 by G. & C. Merriam Co. the term contract means:

> "an agreement between two or more persons or parties to do or not to do something"

In addition the examiner states "...create a presentation that apply with the guidelines...". Mandeberg et al does not contain a method to create the presentations. Note Mandeberg et al first sentence of the ABSTRACT and col. 7 lines 44-46, which states:

> "These digital multimedia presentations are generally developed by creative professionals at advertising agencies or clients."

The examiner's attention is also directed to col. 10 lines 21-26 of Mandeberg et al which states:

> "Accordingly, in order to assemble a package of digital multimedia presentations for the plurality of stores, an operator at the control and monitoring station 108 selects one or more programs from the presentation

8

database 104, specifies destination sites from the client and site database 110 and schedules the package start and expiration dates."

On page 5 of the rejection, lines 1 and 2, the examiner has again incorrectly identified elements of Mandeberg et al for example the client and site database 110. The examiners' misstatement of "a seller database (110) with a list of sellers (clients)"; the Mandeberg et al client and site database (110) violates the meaning of seller. The examiner has equated seller with store, site, or client.

Regarding claims 13 and 15, Mandeberg et al teach a method of displaying fast food menus, the purchase of the items on those menus is still done as it was prior to Mandeberg et al. As stated in col. 15 lines 11-13, managers of fast food restaurants no longer need to depend on employees to install and maintain signage. Again the examiner has misused the concept of signage, he equates such concept with a means of purchasing.

**Claims Rejections – 35 USC Section 103**

The application currently names joint inventors, and the examiners' presumption that the subject matter of the various claims were commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. The currently named joint inventors remain the correct inventors in view of the claims as amended.

Claims 7-9, 11, 12, 14, 17, and 21-23 are rejected under 35 U.S.C. 103(a) as being unpatenable over Mandeberg et al. The examiner has erroneously concluded that Mandeberg et al disclosed all of the limitations of the original claims. The examiner has excepted terms like buyers' database, transaction database and an inventory database. In view of the examiner's

9



further conclusion that such databases are common in the art, the elements of any technology can be known; however the contents, structure (relationship of entries and relationship to other elements), and functional use support the present invention. Buyers database or inventory database or any database can have multiple and differing relationships, contents, and functions which are not obvious.

A Mandeberg et al presentation is "A method for generating digital multimedia presentations for a plurality of remote locations." Digital Multimedia cannot be open-access presentations because the core code is not revealed to browsers or search agents and therefore cannot be view except to their viewers or within their player programs. It should be noted that within Mandeberg et al there are no connections to open networks, only WANs for the delivery of "packages" to the remote "stores" or "sites", and LANs within the remote "stores" or "sites" to distribute the "digital multimedia presentations" to the "players" within the remote "stores" or "sites". (note Mandeberg et al Fig 6A, 6B)

Open-access presentations and dynamic presentations are both common in the art. What is not common in the art are open-access presentations that are created and published from data input into a remote program at a Sellers location that results in the updating of a database that then results in the changing of multiple open-access presentations. The creation of multiple open-access presentations being done without the Seller making the changes within a code editor is new to the art, and being practiced only within our invention and its commercial application.

Applicants respectfully traverse the examiner's conclusions that their invention would have been obvious to one of ordinary skill in the art at the time the invention was made. The

examiner has misconstrued the relevance of Mandeberg et al and has made unsupported conclusions regarding both the reference and the invention.

Under the examiner's Conclusion section, other prior art made of record and not relied upon are listed for Applicants review. Applicants have reviewed the prior art of record and find same to be not relevant; however the Speicher reference appeared to be of interest. Upon detailed review it was found the reference teaches a method that can only be applied to a single organization which is different than the present invention. In addition the Speicher client has no selection of publishing destination, nor control of the presentation.

In view of the foregoing amendment and remarks, all the amended claims, currently pending in this application are now seen to be in condition for allowance. A Notice of Allowance of Claims 1-23 is therefore earnestly solicited.

### VERSION WITH MARKINGS TO SHOW CHANGES MADE

Set forth below are Claims 1 through 23 which have been appropriately marked to show the changes made therein in the foregoing amendment.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1) (Amended) A method of using a network of computers to <u>contract for,</u> facilitate and control the creating and publishing of presentations<u>, by a seller,</u> to a plurality of media <u>venues owned or controlled by other than the seller,</u> [while minimizing required input,] comprising:

   a) <u>providing</u> a media database having a list of available media venues;

   b) <u>providing means for applying</u> [a presentation rules database having] corresponding [creative] guidelines of the media venues;

11



c) providing means for transmitting said presentations to [the] a selected media venue [venues] of the media venues;

d) providing means for a seller [the sellers] to select [selection of] the media venues; and

e) providing means for seller [sellers] to input [inputting] information; [and]

whereby a person may choose one or more media venues, create a presentation [or presentations] that comply with said [media venues] guidelines of the media venues selected, and transmit the presentation [or presentations] to the selected media venues for publication.

2) (Amended) The method of claim 1 further providing [wherein] a seller database having [has] a list of sellers.

3) (Amended) The method of claim 1 further providing [wherein] a means for creating structured presentations from sellers information [for the media venues].

4) (Amended) The method of claim 3 further providing [wherein] a means for [sellers] transferring said created presentations to the media venues for publishing.

5) (Amended) The method of claim 1 further providing [wherein] a means for said media venues to input [inputs] said [creative] guidelines and information.

6) (Amended) The method of claim 1 further providing [wherein] means for [of] said media venues to receive [receives] the sellers presentations.

7) (Amended) The method of claim 1 further providing [wherein] a media buyers database having [has] a list of media buyers.

Received from < 9727209298 > at 1/22/02 12:29:15 PM [Eastern Standard Time]



8) (Amended) The method of claim 1 <u>further providing</u> [wherein] a media transactions database <u>having</u> [has] a list of [all] media transactions.

9) (Amended) The method of claim 1 <u>further providing</u> [wherein] a media inventory database <u>having</u> [has] a list of [all] media inventory.

10) (Amended) The method of claim 1 <u>further providing</u> [wherein] a presentations database <u>containing</u> [contains] created presentations.

11) (Amended) The method of claim 1 <u>further providing</u> [wherein] an <u>inventory</u> [inventories] database <u>containing</u> [contains] available inventory.

12) (Amended) The method of claim 1 <u>further providing</u> [wherein] a transaction database <u>containing</u> [contains] transactions made.

13) (Amended) The method of claim 1 <u>further providing</u> [wherein] <u>means with instructions for a buyer to select</u> [a method of buyers' selection] and purchase <u>offers</u> of [goods and services is offered by] sellers.

14) (Amended) The method of claim 13 <u>further providing</u> [wherein] a transaction database <u>for recording</u> [contains records of] the purchases of <u>the buyers</u> [goods and services made].

15) (Amended) The method of claim <u>13</u> [1] <u>further providing</u> [wherein] a means <u>for the buyer to purchase</u> [of purchasing the] goods or services offered <u>by the seller</u> [is provided].

16) (Amended) The method of claim 1 wherein the media database <u>includes</u> [having] a list of available media <u>and</u> [includes] corresponding editorial, design and publication standards.

13

17) (Amended) The method of claim 1 wherein the media database <u>includes</u> [having] a list of available media <u>and</u> [includes] corresponding pricing and media inventory availability.

18) (Amended) The method of claim 1 <u>further providing means for transferring</u> [wherein] said presentations [to be featured through selected media venues are transferred] to <u>said media venues</u> [them].

19) (Amended) The method of claim 1 <u>further providing</u> [wherein] a computer [is used] to control and facilitate the network of computers.

20) (Amended) The method of claim 1 <u>further providing</u> [wherein] a computer [is used] to control and facilitate creation and distribution of all presentations to <u>said selected</u> media venues.

21) (Amended) The method of claim 1 further <u>providing</u> [comprising] a means <u>for</u> [of] automatically creating open-access electronic presentations.

22) (Amended) The method of claim 1 further <u>providing</u> [comprising] a means <u>for</u> [of] publishing open-access presentations electronically.

23) (Amended) The method of claim 1 <u>further providing</u> [wherein] a computer [is used] to present dynamic presentations electronically.

14



The examiner is hereby requested to telephone the undersigned attorney of record at 972-233-7773 if such would further or expedite the prosecution of the instant application.

Respectfully submitted,

Henry Croskell

*Henry Croskell*

Attorney for applicants
Registration No. 25847

Dated Jan 22, 2002
6817 Cliffbrook
Dallas TX. 75254
Phone 972-233-7773

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to:
Commissioner for Patents,
Washington, D.C. 20231
On_____

To: Examiner Bryan Jaketic
Fax Number: 703-746-7239

From:  Henry Croskell
       Attorney for applicants

Date: 22 January, 2002

**16 Total Pages Including This Cover Sheet**

If there is a failure to receive the total number of pages, please call 800-809-7111 to have document resent.

Hard copy of Amendment is being sent by U.S. Mail