# EXHIBIT D

Dockets.Justia.com



12-14-06     ⟨FW⟩ 3627

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Appl. No. | : | 10/193,465 |
| Applicant | : | Michael A. Dean et al. |
| Filed | : | July 11, 2002 |
| Title | : | A METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLUARLITY OF FUNCTIONS. |
| TC/A.U. | : | 3627 |
| Examiner | : | Ade, Oger Garcia |
| Docket No. | : | Stone CIP |

Honorable Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

# Supplemental Amendment

Gentlemen:

This Amendment is a Supplemental Amendment to that prior Amendment and Response filed April 5, 2006.

This Supplemental Amendment is filed to amend the Title and Abstract of the specifications.

Amendments to the Title and Abstract are reflected on page two of this Amendment.

## In the Specifications

Please cancel the Title and Abstract of the Invention and enter the following new Title and Abstract of the Invention as follows:

New Title:

"An Internet Advertising System and Method."

New Abstract of the Invention:

"An internet advertising system and method that enables a third party professional to manage the creation, publication, and display of advertisements on internet media venues owned or controlled by entities other than the seller and other than the third party professional in a form automatically modified to comply with the media venues' presentation rules, which may include design or style standards for "look and feel," editorial standards, and distribution factors. Self-serve, menu driven interfaces are provided for third party professionals to target internet media venues, and for internet media venues to enter their presentation rules. An ad modification engine processes or customizes the advertisement for publication and display on each internet media venue in compliance with the media venue's presentation rules.

Appl. No. 10/193,465
Amdt. Dated December 13, 2006
Supplemental Amendment to that Amendment filed April 5, 2006

# **Remarks**

This Supplemental Amendment is being submitted to amend the Specifications with a new Title and a new Abstract for the purpose of more clearly describing the invention and are supported within the specification.

A Notice of Allowance is hereby earnestly solicited.

The examiner is hereby requested to telephone the undersigned attorney of record at 972-233-7773 or applicants at 903-561-9300, if such would further or expedite the prosecution of the instant application.

Respectfully submitted,

Henry Croskell

Attorney for applicants
Registration No. 25847

Dated December 13, 2006
6817 Cliffbrook
Dallas TX. 75254
Phone 972-233-7773

I hereby certify that this correspondence is being deposited with the United States Postal Service as Express Mail (EQ 453030075 US) in an envelope addressed to:
Mail Stop Amendment
Commissioner for Patents,
P.O. Box 1450, Alexandria VA. 22313-1450,
On /2/13/06    By _____

3

PTO/SB/06 (12-04)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number: 10/193,465

### APPLICATION AS FILED – PART I

9·05·06

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE ($) | FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | | | | | | | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | | | | | | | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | | | | | | | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 52 minus 20 = | 0 | X = | | OR | X = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | 0 | X = | | | X = | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

### APPLICATION AS AMENDED – PART II

#### AMENDMENT A

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | | Minus | ** | = | X = | | OR | X = | |
| Independent (37 CFR 1.16(h)) | * | | Minus | *** | = | X = | | OR | X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

#### AMENDMENT B

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDI-TIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | | Minus | ** | = | X = | | OR | X = | |
| Independent (37 CFR 1.16(h)) | * | | Minus | *** | = | X = | | OR | X = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



09-06-06

AF 1/1W

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006 in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Appl. No. | : | 10/193,465 |
| Applicant | : | Michael A. Dean et al. |
| Filed | : | July 11, 2002 |
| Title | : | METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLURALITY OF FUNCTIONS |
| TC/A.U. | : | 3627 |
| Examiner | : | Ade, Oger Garcia |
| Docket No. | : | Stone CIP |

Honorable Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## Request For Reconsideration

Gentlemen:

This Request for Reconsideration is filed in response to the Final Office Action mailed on July 7, 2006 and requiring a response by September 7, 2006, in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

Applicants wish to acknowledge and thank Alexander Kalinowski, Supervisory Patent Examiner, and Garcia Ade, Examiner, for the courteous interview extended to Applicants and their undersigned counsel on August 16, 2006. A copy of the Interview Summary is attached.

**Claims:**

A listing of the claims begins on page 3 of this Request.

**Remarks** begin on page 13 of this Request.

**Attachments**

Interview Summary, dated March 22, 2006, 1 page.

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006
in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

# Claims

This listing of claims will replace all prior versions, and listings, of claims in the
application.

## Claims Amendments

This listing of claims will replace all prior versions, and listings, of claims in the
application:

## Listing of Claims:

1-20) (canceled)

21) (Previously Presented)  A computer system allowing a third party professional to manage,

create and publish customized electronic advertisements, for a seller, to internet

media venues owned or controlled by other than the seller and other than the third

party professional, comprising:

a first interface to the computer system through which each of the internet

media venues is prompted to input presentation rules for the internet media

venue for displaying electronic advertisements on the internet media venue;

a first database storing the presentation rules input by the internet media

venues through the first interface;

3

a second interface to the computer system through which a seller is prompted to input information identifying the seller; and

a second database storing the identifying information input by the seller through the second interface;

a third interface to the computer system through which the third party professional is prompted to input information to select one or more of the internet media venues and prompted to input information to create an electronic advertisement for the seller for publication to the selected internet media venues;

a third database storing the information input by the third party professional through the third interface; and

a computer controller of the computer system processing and publishing the electronic advertisement to one or more of the selected internet media venues whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

22) (Previously Presented) The computer system of claim 21, further comprising an advertisement generation program for displaying the advertisement published by the computer controller on the one or more of the selected internet media venues in compliance with the internet media venue presentation rules.

23) (Previously Presented) The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

24) (Previously Presented) The computer system of claim 21, wherein the second interface prompts the seller to input information to select a third party professional.

25) (Previously Presented) The computer system of claim 24, wherein the second interface presents a list of available third party professionals.

26) (Previously Presented) The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional for information identifying the third party professional.

27) (Previously Presented) The computer system of claim 26, further comprising a fourth database storing the information identifying the third party professional.

28) (Previously Presented) The computer system of claim 24, wherein the second interface prompts the seller for information to review the actions of the selected third party professional.

29) (Previously Presented) The computer system of claim 21, wherein the second interface prompts the seller with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

30) (Previously Presented) The computer system of claim 21, wherein the computer system and the computer controller each comprise a network of computers.

31) (Previously Presented)   The computer system of claim 21, wherein the electronic advertisement comprises the advertisement or components of the advertisement.

32) (Previously Presented)   The computer system of claim 21, wherein the internet media venue is a website comprising one or more web pages.

33) (Previously Presented)  The computer system of claim 21, wherein the internet media venue comprises one or more virtual locations.

34) (Previously Presented)   The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional with a choice of advertisement types.

35) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes a text advertisement.

36) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes an image advertisement.

37) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes an interactive advertisement.

38) (Previously Presented)  The computer system of claim 21, wherein the third interface for the third party professional prompts the third party professional for advertising content or other components of the advertisement.

39) (Previously Presented)  The computer system of claim 21, wherein the selection information input by the third party professional targets one or more internet media venues.

40) (Previously Presented)  The computer system of claim 21, further comprising a general management program of the computer controller for generating online reports.

41) (Previously Presented)  The computer system of claim 40, wherein the online reports include accounting reports.

42) (Previously Presented)  The computer system of claim 40, wherein the online reports include trend analysis reports.

43) (Previously Presented)  The computer system of claim 40, wherein the online reports include billing and collection reports.

44) (Previously Presented) )  The computer system of claim 40, wherein the online reports include transaction reports.

45) (Previously Presented)  The computer system of claim 21, wherein the first, second and third interfaces are self-serve interfaces that prompt the internet media venue, seller and third party professional to input information using a menu-driven format.

46) (Previously Presented)  The computer system of claim 45, wherein the menu-driven format includes one or more forms with text entry areas and menu-driven choices.

47) (Previously Presented) A method of using a computer system allowing a third party professional to manage, create and publish customized electronic advertisements, for a

seller, to internet media venues owned or controlled by other than the seller and other than the third party professional, comprising:

prompting each of the internet media venues through a first interface to the computer system to input presentation rules for the internet media venue for displaying electronic advertisements on the internet media venue;

storing the presentation rules for the internet media venues in a first database;

prompting the seller through a second interface to the computer system to input information identifying the seller;

storing the identifying information input by the seller through the second interface in a second database;

prompting the third party professional through a third interface to the computer system to input information to select one or more of the internet media venues and to create an electronic advertisement for the seller for publication to the selected internet media venues;

storing the information input by the third party professional through the third interface in a third database; and

processing and publishing the electronic advertisement to one or more of the selected internet media venues, whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

48) (Previously Presented)  The method of claim 47, further comprising the step of displaying the advertisement published by the computer controller on the one or more of the selected internet media venues in compliance with the internet media venue presentation rules.

49) (Previously Presented)  The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

50) (Previously Presented)  The method of claim 47, further comprising the step of prompting the seller through the second interface for information to select a third party professional.

51) (Previously Presented)  The method of claim 50, further comprising the step of presenting a list of available third party professionals through the second interface.

52) (Previously Presented)  The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for information identifying the third party professional.

53) (Previously Presented)  The method of claim 52, further comprising the step of storing the information identifying the third party professional in a fourth database.

54) (Previously Presented)  The method of claim 50, further comprising the step of prompting the seller through the second interface for information to review the actions of the selected third party professional.

55) (Previously Presented) The method of claim 47, further comprising the step of prompting the seller through the second interface with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

56) (Previously Presented) The method of claim 47, wherein the computer system and the computer controller each comprise a network of computers.

57) (Previously Presented) The method of claim 47, wherein the electronic advertisement comprises the advertisement or components of the advertisement.

58) (Previously Presented) The method of claim 47, wherein the internet media venue is a website comprising one or more web pages.

59) (Previously Presented) The method of claim 47, wherein the internet media venue comprises one or more virtual locations.

60) (Previously Presented) The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional with a choice of advertisement types.

61) (Previously Presented) The method of claim 60, wherein the choice of advertisement types includes a text advertisement.

62) (Previously Presented) The method of claim 60, wherein the choice of advertisement types includes an image advertisement.

63) (Previously Presented) The method of claim 60, wherein the choice of advertisement types includes an interactive advertisement.

64) (Previously Presented) The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for advertising content or other components of the advertisement.

65) (Previously Presented) The method of claim 47, wherein the selection information input by the third party professional targets one or more internet media venues.

66) (Previously Presented) The method of claim 47, further comprising the step of generating online reports.

67) (Previously Presented) The method of claim 66, wherein the online reports include accounting reports.

68) (Previously Presented) The method of claim 66, wherein the online reports include trend analysis reports

69) (Previously Presented) The method of claim 66, wherein the online reports include billing and collection reports.

70) (Previously Presented) The method of claim 66, wherein the online reports include transaction reports.

71) (Previously Presented) The method of claim 47, wherein the steps of prompting an internet media venue, a seller and a third party professional through the first, second and third

interfaces to input information includes prompting the internet media venue, seller and third party professional to input information through a self-serve interface using a menu-driven format.

72) (Previously Presented) The method of claim 71, wherein the step of prompting the internet media venue, seller and third party professional to input information through self-serve interfaces using a menu-driven format includes providing one or more forms including text entry areas and menu-driven choices.

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006
in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

# Remarks

In the Final Office Action, the examiner withdrew the 35 USC 101 and double patenting claim rejections, rejected claim 21 under 35 USC 112, and rejected claims 21-72 under 35 USC 102. In view of the arguments present below, Applicants respectfully request reconsideration and withdrawal of the examiner's rejections and allowance of the application.

## Interview Summary

On August 16, 2006, Applicant Dean and Applicant's undersigned representative conducted an interview with the examiner and the supervisory examiner in which Applicant Dean discussed claims 21 and 47 and pointed out the differences between these claims and the Sparks et al. [Sparks] reference relied on by the examiner to reject the claims. The examiner suggested that Applicants file this Request for Reconsideration.

Although there are numerous differences between the Sparks reference and the claimed invention, Applicant Dean focused on the following two key points during the interview presentation to distinguish the invention as claimed in independent claims 21 and 47 over the Sparks reference:

Although the Sparks reference discloses a "second interface" for a seller (the "client" or, more specifically, a McDonald's store) to create an advertisement for production and distribution to, for example, its store or to selected newspapers (see

13

Sparks' Fig. 1,the "client" personal computer 12, and the menu-driven interface detailed in the subsequent figures for the store to create the advertisement), Sparks does not disclose the claimed "first interface" through which one or more internet media venues "owned or controlled by other than the seller and the third party professional" (the claimed "internet media venues") are prompted to enter their presentation rules so that a seller's advertisement can be automatically modified by the claimed internet advertising system for publication/display at each such internet media venue in compliance with the presentation rules for that internet media venue. Sparks does not disclose any such "internet media venues" and the print media venues that are disclosed (see Sparks' Fig. 1, commercial production facility or vendor 44 for publication of ads as inserts in "newspapers") have no interface prompting them to enter their presentation rules. Thus, the "newspapers" disclosed in Sparks for publishing the client-created advertisements exercise no control over the advertisement's "look and feel" or other aspects of the advertisement. The communication path from the advertising system's ad server (image server 28 in Fig. 1) for serving a client-created advertisement to production facility or vendor 44 for inclusion in "newspapers" points only in one direction, that is, towards the production facility for printing the ads for insertion in those "newspapers" (and there is no disclosure otherwise). In addition, Sparks does not disclose the claimed "third interface" that allows a third party professional (such as an advertising agency) to create an advertisement on behalf of one or more sellers (the client/McDonald's store owner) and select one or more "internet media venues" for publication of that advertisement.

14

## Claim Rejections – 35 USC 112

The examiner rejected claim 21 under 35 U.S.C. § 112, second paragraph, "as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. a) In claim 21, it is unclear if the term "a seller" in line 10, is the same or different than the seller in lines 11 and 12." Applicants respectfully traverse this rejection and submit that claim 21 is not indefinite or unclear. The term "a seller" in line 10 provides proper antecedent basis for the term "the seller" in lines 11 and 12. Accordingly, claim 21 meets the requirements for patentability under 35 USC 112.

## Claim Rejections – 35 USC 102(e)

The examiner stated that "Claims 21 – 72 are rejected under 35 U.S.C. 102(e) as being anticipated by Sparks [6,167,382]." The following are the applicants' remarks in which each argument made by the examiner is analyzed and respectfully traversed.

In rejecting **claims 21-25, 27, 29-31, 47-50, 52, 53, 55-57, 60, 64, 65, 71 and 72** (of which claims 21 and 47 are the independent claims), the Examiner stated that "as best understood" the Sparks computer system comprises "a first interface to the computer system through which each of the internet media venues is prompted to input presentations rules for the internet media venue for displaying electronic advertisements on the internet media venue [see figure 3, and column 3, lines 14-19 (e.g. representation transmitted from the image manager server directly to the client's computer by electronic mail or electronic file transfer)]". The examiner is incorrect in his identification of a comparable "first interface" within Sparks. The claimed capability and functionality of the "first interface" is neither described or suggested by

the Sparks specification. As a preliminary matter, the preamble to claims 21 and 47 states – "A computer system" or "A method of using a computer system" -- "allowing a third party professional to manage, create and publish customized electronic advertisements, for a seller, to internet media venues *owned or controlled by other than the seller and the third party professional.* Thus, the claimed "first interface" is necessarily an interface for an internet media venue owned or controlled by other than the seller or the third party professional" to enter its presentation rules to control the "look and feel" and other aspects of the presentations destined to be published at that internet media venue. Sparks discloses no such internet media venue interface. The only interface disclosed in Sparks is for "clients" of the advertising system. The clients disclosed in Spark's are the McDonald's store owners (i.e., seller's) that use the system to create advertisements for publication and distribution to their stores or selected print media venues ("newspapers") through a client interface presented at personal computer 12 in Fig. 1 (as detailed in the subsequent figures). This is demonstrated, for example, at lines Col. 1 line 66 – Col. 2 line 4 of Sparks where the "Client" is referred to as placing a "comprehensive order" for "images and templates used for the design assembly, production, and distribution of print advertising and/or commercial display materials". It is also demonstrated at Col. 2, lines 12-16 where it is stated that the "Advantages [of the disclosed system] to the client include greatly reduced time to develop print advertising and/or commercial display materials since choosing from an existing menu of formats and images eliminates many time-consuming tasks (creation of original art and copy and setting type, for example ...." It should also be noted that there are no methods or systems for "displaying electronic advertisements on the internet media venue" because there are no such claimed "internet media venues" associated with Sparks. The "lower-resolution representation transmitted from the image manager server [28] directly to the client's

computer" referred to by the Examiner (Col. 3, lines 14-19 Sparks) is received by the client (in

Sparks) (see Fig. 1 and Col. 3, lines 34-54) not a the claimed "internet media venue" for

publication or display to the public, and is not in response to the presentation rules of any such

internet media venue.

The examiner further states that the Sparks system includes "a first database storing the

presentation rules input by the internet media venues through the first interface [via

image **assembler 20**, which is linked to a high-resolution **image database**), column 4

lines 53-67, and column 5, lines 1-4];" This reading of Sparks is not correct. Due to the

fact that there is no first interface or its equivalent (as stated above) for the claimed

"internet media venues" to input their presentation rules, there can be no "first database

storing the presentation rules input by the internet media venues" within Sparks.

The examiner further states that the Sparks system includes "a second interface to the

computer system through which a seller is prompted to input information identifying the seller

[see figure 3 (e.g. blocks 70, 72, and 74), and figure 4 (e.g. **user registration form**)]...."

Applicant agrees with the Examiner that the "client" interface presented in these figures discloses

the claimed "second interface" for a seller.

The examiner further states that the Sparks system includes "a second database storing

the identifying information input by the seller through the second interface [via image assembler

20 database, column 11, lines 1-14 (e.g. all orders have associated with them the **client name,**

**and the name, address, city state, zip, phone, fax and email of the contact**)]...." Applicant

also agrees with the Examiner that Fig. 3 and Fig. 4 of Sparks appear to represent a method of

inputting the "client" or seller information into a database of the Sparks system.

The examiner further states that the Sparks system includes "a third interface to the computer system through which the third party professional is prompted to input information to select one or more of the internet media venues and prompted to input information to create an electronic advertisement for the seller for publication to the selected internet media venues [see flowchart of figure 2, (e.g. selection search criteria block 54), column 5 lines 16-35]". This is incorrect. Fig. 2 (flowchart) of Sparks represents the use of the system by the "client" to create an advertisement for publication at its store or to print media venues such as newspapers. As stated at Col. 5, lines 16-35, "FIG. 2 is an overview of the procedure used by client in designing and ordering an advertising or marketing piece.... An order is placed through email to the system proprietor [44] and, responsive to receiving the order, is produced and fulfilled by the system proprietor or its agent." Thus, this flow chart is part of the "client" interface and corresponds to the "second interface" for a seller as discussed above, not the third interface for third party professionals or, as also discussed above, the first interface for internet media venues.

The examiner further states that the Sparks system includes "a third database storing the information input by the third party professional through the third interface [via high-resolution database, column 8, lines 9-21]." Applicants respectfully disagree. As provided above there is no "third interface" for a "third party professional" therefore there can be no "third database storing the information input by the third party professional through the third interface".

The examiner further states that the Sparks system includes "a computer controller of the computer system processing and publishing the electronic advertisement to one or more of the selected internet media venues whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue [column 2, lines 21-27 (e.g. **all steps in the process under the immediate**

18

control of a single computer operator), column 10, lines 8-16 (e.g. appropriate **edit control** for each of the selected slots), and lines 37-52), and via the web site 14 (e.g. a processor and a stored **computer program having executable instructions** for the processor)]." This is again incorrect. Within Sparks there is no system or method for a "client" to select a internet media venue. Within Sparks there is no system or method for such claimed internet media venues to input their "presentation rules" (there is no "first interface" see above) therefore any advertisement cannot be "designed" or "created" or "published" in "compliance with the presentation rules of the internet media venue". The **"edit control"** cited by the examiner is given to the "client" (Sparks Col. 10 line 14) not to any claimed "internet media venues" nor is it guided by "presentation rules" that were input by the internet media venues. Also the point made (and emphasized in bold) by the examiner within this item that; **"all steps in the process under the immediate control of a single computer operator"** is a direct contradiction to the concept of a "third party professional" having input into the design and creation of the "advertisement". The cited **"computer program having executable instructions for the processor"** needs to be reviewed in its total context. Sparks (Col. 4 lines 31-38 which is the only use of the phrase "computer program having executable instructions for the processor" within Sparks) states as follows:

> "The web site 14 has associated with it all of the customer order logic (a processor and a stored computer program having executable instructions for the processor) necessary for a client to order a series of images for assembly into a marketing piece, and also has a design logic application which permits the client to assemble these images into such marketing piece and then to order its production by the system proprietor."

19

There is no description or suggestion within Sparks for displaying electronic advertisements "on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue". This concept is not described, taught or suggested by Sparks. Accordingly, for the foregoing reasons claims 21 and 47, and claims 22-25, 27, 29-31, 48-50, 52, 53, 55-57, 60, 64, 65, 71 and 72 by virtue of their dependence on claims 21 and 47, meet the requirements for patentability under 35 USC 102(e). Although by virtue of their dependence on claim 21 and 47, claims 26, 28, 32-46, 51, 54, 58-59, 61-63 and 66-70 are patentable over Sparks and, thus, meet the requirements for patentability under 35 USC 102, Applicants address the examiner's rejections of these claims below.

The examiner states "As per claims 26 and 51, Sparks discloses the second interface presents a list of available third party professionals [see flowchart of figures 12a and 12b 9e.g. display list of slots block 200)]" This is incorrect. Sparks employs a system of presenting preformatted "shells" (templates) that may be reviewed and selected by the client. Within the "shells" are designated areas that can be customized by the client and are called "slots" by Sparks (Col. 5 lines 18-29) The "DISPLAYED LIST OF SLOTS" block 200 (Fig. 12a) cited by the examiner is actually a list of "locations" (slots) within the standardized "shell" (template) that may be customized by the client. Slots are not "third party professionals". Slots are objects (or areas) within the content structure of the intended marketing piece that may be customized by the client. (Sparks Col. 7 lines 45-50)

The examiner further states that "**As per claims 28 and 54**, Sparks discloses the second interface prompts the seller for information to review the actions of the selected third party professionals [via step 54, column 5 lines 16-23 (e.g. the client selects the search criteria for retrieving low-resolution images, executes the search, **reviews** the low-resolution images and

their high-resolution hardcopies, and selects from a number of different marketing piece shells)]." This statement is also not correct. There are standardized "shells" (templates) within Sparks that are put there and offered by the "proprietor" of the Sparks system. The act of "the client selects the search criteria for retrieving low-resolution images, executes the search, reviews the low-resolution images and their high-resolution hardcopies, and selects from a number of different marketing piece shells" as cited by the examiner is the act of the client searching the standardized templates (shells) held within the system for a base (template) on which to create their desired marketing piece.

The examiner further states that "**As per claims 32 and 58**, Sparks discloses wherein the internet media venue is a website comprising one or more web pages [e.g. web site 14]." This is incorrect. The Sparks "web site 14" (Fig. 1 Sparks) is part of the Sparks system in which it is an interface for the clients to interact with the Sparks system. "Web site 14" is owned and controlled by the operators of the Sparks system, does not receive or display any client presentations, and is not viewed by potential buyers. Web site 14 is not a "internet media venue" as defined and claimed. There are no such "internet media venues" shown, displayed, or referred to within Sparks.

The examiner further states that "**As per claims 33 and 59**, Sparks discloses wherein internet media venue comprises one or more virtual locations [column 3, lines 48-37 (e.g. **virtual private network**)]." Applicants respectfully disagree. Webster's New World Computer Dictionary Ninth Edition defines "virtual private network' as:

> (VPN) A highly secure network for transmitting sensitive data (including electronic commerce transactions) that uses the public Internet as its transmission

medium. To ensure data confidentiality and integrity, VPNs use encryption and protocol tunneling.

In other words the VPN referred to within Sparks is the Internet protocol that controls their most secure network. It has nothing to do with the internet media venue as claimed.

The examiner further states that "**As per claims 35, 36, 61, and 62**, Sparks discloses wherein the choice of advertisement types includes a text and image advertisement [see abstract]. The "images" and "text" referred to in Sparks are "components" which are "selected" and then "assembled" into the "final product" or "marketing piece". Within Sparks there is no "choice of advertisement types" such as "images" and "text".

The examiner further states that "**As per claims 37 and 63**, Sparks discloses wherein the choices of advertisement types includes an interactive [via the website 14 has **associated with it all of the customers**]." This statement is incorrect. It is believed that the quotation "the website 14 has **associated with it all of the customers**" is from Sparks Col. 4 lines 31-38. The examiner is incorrect in the fact that although the "web site 14" (Sparks) is an interactive web site it is not a product of any clients creation. It is the interactive presentation from the Sparks system that allows the "clients" of Sparks system to create static non interactive presentations that are "printed" and then "distributed". There is no "interactive" capability for the advertisements created within Sparks. Although the claims are not limited thereto, it is instructive to examine the example implementation described within the application where there exists what is referred to as a "Central Presentation and Selection Server 2000". In this example preferred embodiment all of the functionality necessary to perform the claim is displayed. There is no comparable component or system within Sparks that can be accessed by a "buyer" as defined and claimed to utilize an "interactive advertisement". The term "customer" within Sparks is used

interchangeably with "client" of the Sparks system. (see Sparks Col. 4 lines 31-38). The "customers" that use the interactive capabilities of "web site 14" are not the "end users" that are intended to view and receive the information created by the "clients" or "customers" of Sparks. Nor can any of the "advertisement types" within Sparks be interactive because there are no interactive advertising modes disclosed within Sparks, only static advertising presentations such as inserts, and marketing pieces. (Sparks Col. 1 Lines 43-51)

The examiner further states that "**As per claims 40-44, and 66-70**, Sparks discloses a general management program of the computer controller for generating online reports [via manager software application, such as Open Progress Interface], including accounting reports, trend analysis reports, billing and collection reports, and transaction reports [column 2, lines 36-49 (e.g. system can transmits, either electronically, for distribution and **billing purposes** to an order-entry system that is integrated with the **entire accounting system**), and column 2, lines 50-67 (e.g. the client can also create custom text specific to the client's needs, such as site-specific information)]." Applicants believe "e.g. the client can also create custom text specific to the client's needs, such as site-specific information." to be a misquote from Col. 2 lines 59-67. Within Sparks the terms "report" or "reports" or "online report" are never used. The only reference to a "management program" or system is the "order-entry system that is integrated with the entire accounting system of the system provider" (Sparks Col. 2 line 49) This produces no "reports" of any kind for the "clients" of Sparks, only for the "system provider" of Sparks (Col. 2 line 36-49). The "Open Progress Interface" cited by the examiner is not a "report" generating system of any kind. It is a system that resides "on an image manager server, for the management of low- and high-resolution images". It serves to manage the images that are part of the "ad creation process" and has nothing to do with "generating online reports" or any type of report.

(Sparks Col. 2, line 50-53) Applicants believe that the examiner may have also misquoted Sparks in regard to "the client can also create custom text specific to the client's needs, such as site-specific information." Applicants believe that this came from (Sparks Col. 59-67). This section of Sparks has nothing to do with any sort of management reporting. It is referring to the creation and assembly of ads or marketing pieces (the finished product in Sparks). The reference to "site-specific information" refers to the ability of the client to insert information such as the store address, prices, or promotions into the pre made advertisement templates. Sparks has no references to any "trend analysis reports", "billing reports", or "transaction reports" as claimed nor does Sparks make any reference to the programs necessary to generate reports.

The examiner further states that "**As per claims 45 and 46**, Sparks discloses wherein the first, second and third interface are self–serve interface that prompt the internet media venue, seller and third party professional to input information using a menu-driven format [see column 2, lines 12-20 (e.g. choosing from an existing **menu of formats**), via search screen 92], and wherein the menu-driven format includes one or more forms with text entry areas and menu-driven choices [column 9, lines 60-63 (e.g. two types of text may be inserted into a text slot, other slots will define **user-entered text**)]." This is incorrect. As argued above there are no self-serve interfaces within Sparks for "Internet Media Venues" or a "Third Party Professionals," as claimed. Accordingly, in view of the foregoing additional reasons, claims **26, 28, 32-46, 51, 54, 58-59, 61-63 and 66-70** meet the requirements for patentability under 35 USC 102.

## Conclusion

In view of the applicants' traverse of the examiners' rejections, applicants' now believe that the application is in condition for allowance. A Notice of Allowance is hereby earnestly solicited.

The examiner is hereby requested to telephone the undersigned attorney of record at 972-233-7773 or applicants at 903-561-9300, if such would further facilitate or expedite the prosecution of the instant application.

Respectfully submitted,

Henry Croskell
Attorney for applicants
Registration No. 25847

Dated September 5, 2006
6817 Cliffbrook
Dallas TX. 75254
Phone 972-233-7773

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as Express Mail
(EQ 453030067 US) in an envelope addressed to:

Mail Stop Amendment
Commissioner for Patents,
P.O. Box 1450, Alexandria VA. 22323-1450
On _09/05/06_ By _Michael Filler_

25