# EXHIBIT A
# PART 2

Dockets.Justia.com

desirability of realizing various advantages and/or functionality" described by a particular reference. *See* Request at 50, 56, 64. However, such generalized rationales do not rise to the level of an "apparent reason" to combine. Furthermore, Requester repeatedly states that such combinations "would involve merely combining and/or substituting known prior art elements to yield predictable results." *Id.* However, this glib statement overlooks the fact that the prior art references generally disclose disparate software models with different structures and purposes, and therefore are not readily interchangeable (not to mention the fact that the pieces of prior art cited—even when taken together as a whole—wholly fail to disclose entire elements of claims 1 and 27 of the `059 patent). Meanwhile, the PTO either wholly fails to provide any reason to combine the references, or simply makes the blanket statement that "it would have been obvious to one of ordinary skill in the art at the time of the invention to modify the computer system of [Reference 1] by adding [an element disclosed in Reference 2]" to make the system of Reference 1 more flexible or efficient, or so as to allow for the capability to perform a certain function. *See, e.g.,* OA at 111, 114, 120, 122, 123, *etc.* The idea that a seller and a third party professional can both access a system for the creation and publication of advertisements for the seller, without either party knowing anything about the rules of the media venues to which that content may be published, and allow the system to create and publish the customized ad on behalf of the seller and third party professional, is simply not taught anywhere in the prior art. At least part of the novelty of the `059 patent is that it provides a system which enables sellers, third party professionals, and media venues, who may be completely unknown to each other, to access and use a system (through separate interfaces) and set the parameters that will be used to create multiple customized advertisements to be published in specific media venues.

In contrast, the above statements from Requester and the PTO disclose no facts and fail to provide a "clear articulation of the reason(s) why the claimed invention would have been obvious" as required by MPEP §2143. While the Supreme Court explained that the apparent reason for a combination could come from a variety of sources, it also stated that the "analysis should be made explicit" and "rejections on obviousness cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of the obviousness." *KSR*, 127 S. Ct. at 1741 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)); *see also* MPEP §§ 2141, 2143. As neither the PTO nor Requester have identified any reason for the combinations they cited, Patent Owner respectfully requests that the obviousness rejections be withdrawn.

     ii.    **All Prior Art Lacks a Means or Apparatus to Allow Access By and Collaboration Between both a Seller and a Third Party Professional**

None of the art cited by the PTO discloses three separate interfaces/databases for use by three separate entities to enter/store media venue presentation rules, identifying information about a seller, and media venue selection information and information to create an electronic advertisement for the seller (respectively).  As discussed at length in the preceding sections related to the anticipation rejections, none of the art of record discloses anything equivalent to the structures or methods disclosed in the `059 patent.  Because none of the art cited by Requester or the PTO discloses or teaches an apparatus or method that allows for both a seller and a third party professional to use a single system—separately or collaboratively—to create and publish advertisements for the seller, it necessarily follows that any proposed combination of those references also fails to meet this limitation of both claims 1 and 27.  For that reason alone, the `059 claims are allowable over the art of record.

With these general concepts in mind, Patent Owner will now address the specific obviousness rejections adopted by the PTO in the Office Action.

### 2. Aaddzz Brochure[28] in view of the Mason `075 Patent

Independent claims 1 and 27, as well as dependant claims 2-3, 9-23, 28-29, and 35-49, were rejected under § 103(a) as obvious under the Aaddzz Brochure document in view of the Mason `075 patent. OA at 108, 164.   The Mason `075 patent was discussed extensively in Section III(B)(1), above. However, both of these references fail to disclose critical limitations of both claims 1 and 27, most notably including separate interface/database combinations for use by a seller and third party professional. Furthermore, there is no apparent reason to combine these references. Accordingly, their combination cannot render these claims obvious.

#### i.    The Aaddzz/Mason Combination Fails to Meet the Claim 1/27 Limitations

The PTO contends that the Aaddzz Brochure discloses all of the limitations of the preamble of claims 1 and 27, as well as an apparatus or method that "processes" the information entered by third party professional with presentation rules entered by selected media venues to create and publish an "electronic advertisement" to those entities that is "in compliance with the presentation rules" of those selected venues. The PTO acknowledges, however, that the Aaddzz Brochure fails to disclose three separate interfaces/databases for use by three separate entities to enter/store media venue presentation rules, identifying information about a seller, and media venue selection information and information to create an electronic advertisement for the seller (respectively).  OA

---

[28] To facilitate discussion, Patent Owner assumes sequential numbering of all pages in the Aaddzz Brochure, and therefore the Brochure will be referred to as having pages 1-6.

at 108-109. However, the PTO contends that Mason discloses these missing limitations, and that it would be "obvious" to combine these references in a way that meets all of the limitations of claims 1 and 27. *Id.*

Contrary to the PTO's assertions, the Aaddzz Brochure fails to disclose a means or apparatus that "creates" rule-complaint electronic advertisements as required by claims 1 and 27, and it is only designed for use by two entities—(1) media venues and (2) a seller OR a third party professional. Accordingly, the Aaddzz Brochure does not disclose two separate interface/database combinations for use by a seller and a third party professional. Furthermore, the single interface provided the advertiser (third party professional or seller) does not prompt—or even allow—them to enter information to select media venues. The Aaddzz Brochure also fails to "prompt"—or even allow for—input of identifying information about a seller.

As noted above, the Mason `075 patent fails to disclose separate interface/database combinations for use by a seller and a third party professional, and the one interface for use by a third party professional (or a seller) does not "prompt" them for information to select a media venue. Furthermore, the Mason patent also fails to disclose an interface for individual media venues to enter presentation rules, and fails to "prompt"—or even allow for—input of identifying information about the seller, and does not disclose automatically publishing advertisements to media venues. Accordingly, the combination of these references fails to teach or disclose every limitation of claims 1 and/or 27, and therefore would not render either claim 1 or 27 obvious.

Patent Owner also notes that Mason is not an appropriate reference for a §103(a) rejection on the grounds cited by the PTO. As discussed above, the Mason `075 patent fails to disclose separate interface/database combinations for use by a seller and a third party professional, and the one interface for use by a third party professional (or a seller) does not "prompt" them for information to select a media venue. Furthermore, the Mason patent also fails to disclose an interface for individual media venues to enter presentation rules, and fails to "prompt"—or even allow for—input of identifying information about the seller, and does not disclose automatically publishing advertisements to media venues. In sum, Mason only discloses the use of a SINGLE interface for use by an advertising agency or advertiser—and therefore it does not disclose anything more—with respect to these interface and databases—than what was disclosed in Patent Owner's `045 patent (of which the `059 patent is a continuation in part). In fact, it actually discloses less than the `045 patent, with respect to the three interface/ database limitations. Since the `045 patent has an effective filing date of January 10, 2000—more than a month before the effective filing date of Mason (February 14, 2000), Patent Owner clearly invented the relevant subject matter disclosed by Mason prior to Mason,

44

and Mason therefore cannot be used as a §103(a) reference. Accordingly, Patent Owner reserves the right to file a 1.131 Affidavit to establish that Mason cannot be used as a 103(a) reference if the PTO persists in making this rejection. *See* 37 C.F.R. 1.131; MPEP §715.02; *In re Stempel,* 241 F.2d 755 (C.C.P.A. 1957); *In re Stryker,* 435 F.2d 1340 (C.C.P.A. 1971).

The Aaddzz system was designed to "[act] as a broker between Web advertisers and publishers." Aaddzz at 2. Accordingly, the system was designed for use by only two entities—an "advertiser" (*i.e.,* a third party professional acting on behalf of a seller OR a seller) and "publishers" (*i.e.,* media venues). Aaddzz Brochure at 1-2. As with the other prior art systems cited by the PTO, including the Mason patent, Aaddzz assumes that either a seller itself (presumably with an internal advertising department) or a third party professional already hired by the seller—with authority to act for that seller—will be using the system to place advertisements for the seller. In other words, the system only allows for use by EITHER a seller OR a third party professional on behalf of the seller—it does not allow for two such entities to collaborate or jointly use the system in any way. The PTO cites pages 1 and 3 of Aaddzz as disclosing the use of the Aaddzz system by both sellers and third party professionals. However, these pages clearly disclose the use of the system by ONLY "advertisers" and "publishers."

The Aaddzz system requires an advertiser using the service to understand media guidelines, and to manually create and upload presentations on its own that conform to these guidelines, in order to use the ad placement system. On pages 5, under the section entitled "Ads, Spaces, & Places," the Aaddzz Brochure gives advertisers tips on creating presentations:

> **Ad Sizes**
> ... advertisers should provide ad images in as many sizes as possible to have the maximum possible exposure for their ads. To aid Aaddzz in targeting, the images for the various sizes should contain substantially similar images and wording.
>
> **File Format**
> Ads can be in either GIF or JPEG format.
>
> **Animation**
> ...some sites may not allow animated ads. Therefore, we recommend advertisers make both animated and non-animated versions of their ads. Aaddzz Brochure at 5 (emphasis added).

The PTO cites pages 1 and 5 of the Aaddzz Brochure as disclosing the creation of a customized advertisement. However, page 5 actually teaches away from this limitation by instructing the advertisers that they must create their own presentations, and page 1 says nothing about "creating" presentations or "processing" input information with media venues' presentation rules.

45

The Aaddzz Brochure also fails to disclose an interface that prompts an advertiser (third party professional OR seller) to enter information to select media venues. In fact, the Aaddzz system does not provide *any* mechanism for an advertiser to select the particular individual media venues in which it would like to display a presentation. The Aaddzz system, not the advertiser, decides where to display ads via "automatic ad targeting"—*i.e.*, the system itself dynamically decides on which media venues a presentation should be displayed. *Id.* at 4, under "Click Through Advertising." In fact, the question "Which sites will my ads appear on?" is answered by the Aaddzz Brochure as follows: "Aaddzz cannot guarantee on which sites ads will appear, as new publishers can join and leave the Aaddzz network at any time." *Id.* Accordingly, advertisers using the Aaddzz system have no ability to directly select the media venues where their ads are to be published, as required by claims 1 and 27.

Mason does not solve the deficiencies of the Aaddzz system. As noted above, the Mason patent discloses a system that—like the Aaddzz system—may only be used by two entities: (1) an ad agency OR an advertiser (*i.e.,* a third party professional OR a seller) and (2) websites. Furthermore, the Mason patent also fails to disclose an interface for individual media venues to enter presentation rules, requires pre-prepared advertisements to be "uploaded" to the system for use, and does not disclose automatic publishing of advertisements.

Because <u>both</u> the Aaddzz Brochure reference and the Mason patent fail to disclose a system that allows third party professionals to create and manage advertisements for sellers via "[an] interface that prompts a seller to input information identifying itself" and a separate "interface that prompts a third party professional to input information to select media venue(s) and input information to create an electronic advertisement for the seller," as well as separate databases that store the information entered by these parties (respectively), combining these two references together would not render claims 1 or 27 obvious. In fact, the combination of these references would actually teach away from the creation element of claims 1 and 27, as both references require that pre-created presentations be <u>uploaded</u> into the system for use. For at least these reasons, the obviousness rejection based on Aaddzz and Mason should be withdrawn.

### ii.    No Apparent Reason to Combine Aaddzz/ Mason

In addition to the failure to meet all of the limitations of claim 1, the proposed combination also fails because there is no "apparent reason" to combine these references. As noted above, neither the PTO nor Requester has cited any concrete reason to combine these particular references. Furthermore, a person of ordinary skill in the art would not combine these systems, as there are a number of fundamental differences between the systems. For example, the Aaddzz system teaches

away from allowing a third party professional to select media venues—it uses its own internal algorithms to determine the "best placement" for a particular ad, whereas the Mason system allows for "geographic targeting" of websites by a seller or ad agency third party professional. Given that these two systems have a fundamental conflict regarding the manner in which media venues are selected there is no basis to state that one skilled in the art would seek to mesh together these disparate teachings and fill in the missing pieces to create the novel overarching system of claim 1. In fact, it appears that the only reason to combine these conflicting approaches is based on the use of hindsight. For at least these reasons, this obviousness rejection should be withdrawn.

### iii. Aaddzz/ Mason Combination Fails to Meet Limitations of Dependent Claims

The PTO contends that the combination of the Aaddzz Brochure with the Mason patent discloses all of the additional limitations of claims 2-3, 9-23, 28-29, and 35-49, and therefore renders each of these dependent claims obvious. However, even if the combination of the Aaddzz Brochure and the AdForce reference rendered claim 1 obvious—which Patent Owner disputes—this combination would still fail to render a number of the dependent claims obvious. For example, as discussed above at Section III(B)(1)(ii)(a), the Mason reference fails to disclose the limitations found in claims 9/35. Yet the PTO cites Mason—*not* Aaddzz—as disclosing the limitations of these claims. Accordingly, the combination of the Mason patent with the Aaddzz Brochure reference cannot render these claims obvious.

### iv. Conclusion

Given that the Aaddzz Brochure reference and Mason patent both fail to teach key aspects of claims 1 and 27, and because there is no apparent reason to combine together these disparate teachings, Patent Owner respectfully requests the PTO to withdraw the obviousness rejections based on the combination of these two references.

### 3. Aaddzz Brochure in view of the AdForce Reference

Independent claims 1 and 27, as well as dependant claims 2-23, 25-26, 28-49, and 51-52, were rejected under § 103(a) as obvious under the Aaddzz Brochure document in view of the AdForce document. Aaddzz and AdForce were discussed above at Sections III(D)(2) and III(B)(2), respectively. Both of these references fail to disclose critical limitations of both claims 1 and 27, most notably including separate interface/database combinations for use by a seller and third party professional, respectively, as well as the creation of media venue rule-compliant advertisements by processing the input of the third party professional with the presentation rules of specific media venues. Furthermore, there is no "apparent reason" to combine these references. Neither the PTO nor Requester has cited any reason to do so. A person of ordinary skill in the art would not combine

these systems, as there are a number of fundamental differences between the systems. For example, the Aaddzz system teaches away from allowing a seller to select media venues—it uses its own internal algorithms to determine the "best placement" for a particular ad, while the AdForce system requires a third party professional to the select the websites to which an ad will be "targeted" or "published." *See* AdForce at 6-37. Given these conflicting teachings, one skilled in the art would not combine together these references, unless influenced to do so by hindsight. Accordingly, the combination of these references cannot render these claims obvious, and Patent Owner therefore respectfully requests the PTO to withdraw the obviousness rejections based on this combination.

### 4.     Obviousness Rejections of Claims 24/ 50

Claims 24/50 were rejected as obvious under a variety of different combinations. These claims were rejected under § 103(a) as obvious under the Mason '075 patent in view of the Wojcik '493 patent, the Aaddzz Brochure document in view of the Mason '075 patent in view of the Wojcik '493 patent, the AdForce document in view of the Wojcik '493 patent, the Aaddzz Brochure document in view of the AdForce document in view of the Wojcik '493 patent, and the Brown '368 patent in view of the Wojcik '493 patent. The Mason '075 patent was discussed above at Sections III(B)(1) and III(D)(2), the AdForce document was discussed above at Sections III(B)(2) and III(D)(3), the Brown '368 patent was discussed above at Sections III(B)(3), and the Aaddzz Brochure document was discussed above at III(D)(2) and III(D)(3).

The only reference cited that has not been discussed previously is the Wojcik '493 patent. The Wojcik '493 patent is directed to a system for helping a food distributor receive, manage, and implement (on a physical warehouse level) customer orders in the most cost-effective way. This is achieved by providing an interface for sales representatives to enter customer orders into the system in real time, logistics software for processing orders and consolidating them into appropriate loads for delivery, and inventory management via the use of software that can track the location and amount of inventory in the warehouse through the use of handheld scanners and barcodes attached to pallets. Wojcik '493 patent at 1:7-21, 65-67; 5:9-20; 8:15-67; 16:27-37. These sub-systems are horizontally integrated (via the use of a network server) and can therefore communicate with one another quickly and easily, and therefore the overall system minimizes the amount of time and paperwork needed to keep a food distribution point functioning at optimal capacity with reduced costs. *Id.* at 1:55-60.

### i.     Combinations Fail to Meet Limitations of Claims 1/27

The Wojcik '493 patent has absolutely nothing to do with electronic presentations or advertising. It does not accept presentations, create presentations, or transmit them. The Wojcik

reference describes a number of integrated hardware and software components that can be used by a single entity (*i.e.*, a food distributor) to take food orders, process and fill them, as well as manage its warehouse inventory in the most cost-effective way (*i.e.*, by packing a single truck to send to multiple locations, by making sure older produce leaves the warehouse before fresher produce, etc.). Accordingly, the system described in Wojcik does not relate to `059 patent claims 1 or 27 in any way. As noted in the aforementioned sections, all of the prior art references cited by the PTO fail to disclose critical limitations of both claims 1 and 27, most notably including separate interface/database combinations for use by a seller and third party professional, respectively. Because neither the Mason, AdForce, Brown, nor Aaddzz Brochure references, nor the Wojcik `493 patent disclose these limitations, it necessarily follows that the combination of these references also does not disclose such limitations, and therefore does not disclose all of the claim 1 and/or claim 27 limitations. Accordingly, the proposed combinations cannot render any `059 claims obvious.

### ii.    No Apparent Reason to Combine References

There is also no "apparent reason" to combine these references. Neither the PTO nor Requester has cited any reason to combine these particular references. Furthermore, a person of ordinary skill in the art would not combine these systems, as they are completely unrelated, and directed to achieving entirely different goals—one seeks to optimize food order processing and the physical distribution of those orders for a single food distributor, while the others seek to optimize the process for placing advertisements in a multiplicity of media venues. With regards to overall structure, the Wojcik `493 patent describes a wheel-and-spoke system where there is one distributor and multiple customers all ordering from that one distributor. Thus, not only does this system not anticipate—or even relate to—the system of the `059 patent, its underlying design is fundamentally incompatible with the system described in the `059 patent.

### iii.    Conclusion

The combination of these references fails to disclose every limitation of claims 1 and/or 27, and therefore would not render claims 1 and/or 27 obvious. Accordingly, the combination of these references would not render any `059 claim obvious. Furthermore, there is no apparent reason to combine these references. Accordingly, Patent Owner respectfully requests the PTO to withdraw the obviousness rejections based on these combinations.

## CONCLUSION

For the reasons set forth above, Patent Owner Function Media respectfully requests the PTO to withdraw its rejections to claims 1-52 of the '059 patent and to confirm the patentability of all claims.

Respectfully submitted,

Heim, Payne & Chorush, LLP

Michael F. Heim
Reg. No. 32,702

600 Travis, Suite 6710
Houston, Texas 77002
Phone: (713) 221-2000
Facsimile: (713) 221-2021
Date: January 21, 2009

50

## LISTING OF CLAIMS

1. A computer system allowing a third party professional to manage, create and publish customized electronic advertisements, for a seller, to internet media venues owned or controlled by other than the seller and other than the third party professional, comprising:

a first interface to the computer system through which each of the internet media venues is prompted to input presentation rules for the internet media venue for displaying electronic advertisements on the internet media venue;

a first database storing the presentation rules input by the internet media venues through the first interface;

a second interface to the computer system through which a seller is prompted to input information identifying the seller; and

a second database storing the identifying information input by the seller through the second interface;

a third interface to the computer system through which the third party professional is prompted to input information to select one or more of the internet media venues and prompted to input information to create an electronic advertisement for the seller for publication to the selected internet media venues;

a third database storing the information input by the third party professional through the third interface; and

a computer controller of the computer system processing and publishing the electronic advertisement to one or more of the selected internet media venues whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

2. The computer system of claim 1, further comprising an advertisement generation program for displaying the advertisement published by the computer controller on the one or more of the selected internet media venues in compliance with the internet media venue presentation rules.

3. The computer system of claim 1, wherein the interface for the third party professional prompts the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

4. The computer system of claim 1, wherein the second interface prompts the seller to input information to select a third party professional.

5. The computer system of claim 4, wherein the second interface presents a list of available third party professionals.

6. The computer system of claim 1, wherein the interface for the third party professional prompts the third party professional for information identifying the third party professional.

7. The computer system of claim 6, further comprising a fourth database storing the information identifying the third party professional.

8. The computer system of claim 4, wherein the second interface prompts the seller for information to review the actions of the selected third party professional.

9. The computer system of claim 1, wherein the second interface prompts the seller with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

10. The computer system of claim 1, wherein the computer system and the computer controller each comprise a network of computers.

11. The computer system of claim 1, wherein the electronic advertisement comprises the advertisement or components of the advertisement. [example, if advertisement = web page, then advertisement = images, text, and captions]. normal ad = text or image ad to be placed on web page. – see 18 – things needed to make ad work, but not things that consumer may "see"]

12. The computer system of claim 1, wherein the internet media venue is a website comprising one or more web pages.

13. The computer system of claim 1, wherein the internet media venue comprises one or more virtual locations.

14. The computer system of claim 1, wherein the interface for the third party professional prompts the third party professional with a choice of advertisement types.

15. The computer system of claim 14, wherein the choice of advertisement types includes a text advertisement.

16. The computer system of claim 14, wherein the choice of advertisement types includes an image advertisement.

17. The computer system of claim 14, wherein the choice of advertisement types includes an interactive advertisement.

18. The computer system of claim 1, wherein the third interface for the third party professional prompts the third party professional for advertising content or other components of the advertisement. [ claim 1 = single ad. Claim 18 = multiple component ad, links to claim – or supporting information – subdirectories for files – supporting structure of presentation, if supported by a database; or JAVA scripts] Content vs. non-content.

19. The computer system of claim 1, wherein the selection information input by the third party professional targets one or more internet media venues.

20. The computer system of claim 1, further comprising a general management program of the computer controller for generating online reports.

21. The computer system of claim 20, wherein the online reports include accounting reports.

22. The computer system of claim 20, wherein the online reports include trend analysis reports.

23. The computer system of claim 20, wherein the online reports include billing and collection reports.

24. The computer system of claim 20, wherein the online reports include transaction reports.

25. The computer system of claim 1, wherein the first, second and third interfaces are self-serve interfaces that prompt the internet media venue, seller and third party professional to input information using a menu-driven format.

26. The computer system of claim 25, wherein the menu-driven format includes one or more forms with text entry areas and menu-driven choices.

27. A method of using a computer system allowing a third party professional to manage, create and publish customized electronic advertisements, for a seller, to internet media venues owned or controlled by other than the seller and other than the third party professional, comprising:

   prompting each of the internet media venues through a first interface to the computer system to input presentation rules for the internet media venue for displaying electronic advertisements on the internet media venue;

   storing the presentation rules for the internet media venues in a first database;

   prompting the seller through a second interface to the computer system to input information identifying the seller;

   storing the identifying information input by the seller through the second interface in a second database;

   prompting the third party professional through a third interface to the computer system to input information to select one or more of the internet media venues and to create an electronic advertisement for the seller for publication to the selected internet media venues;

   storing the information input by the third party professional through the third interface in a third database; and

processing and publishing the electronic advertisement to one or more of the selected internet media venues, whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

28. The method of claim 27, further comprising the step of displaying the advertisement published by the computer controller on the one or more of the selected internet media venues in compliance with the internet media venue presentation rules.

29. The method of claim 27, further comprising the step of prompting the third party professional through the interface for the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

30. The method of claim 27, further comprising the step of prompting the seller through the second interface for information to select a third party professional.

31. The method of claim 30, further comprising the step of presenting a list of available third party professionals through the second interface.

32. The method of claim 27, further comprising the step of prompting the third party professional through the interface for the third party professional for information identifying the third party professional.

33. The method of claim 32, further comprising the step of storing the information identifying the third party professional in a fourth database.

34. The method of claim 30, further comprising the step of prompting the seller through the second interface for information to review the actions of the selected third party professional.

35. The method of claim 27, further comprising the step of prompting the seller through the second interface with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

36. The method of claim 27, wherein the computer system and the computer controller each comprise a network of computers.

37. The method of claim 27, wherein the electronic advertisement comprises the advertisement or components of the advertisement.

38. The method of claim 27, wherein the internet media venue is a website comprising one or more web pages.

39. The method of claim 27, wherein the internet media venue comprises one or more virtual locations.

40. The method of claim 27, further comprising the step of prompting the third party professional through the interface for the third party professional with a choice of advertisement types.

41. The method of claim 40, wherein the choice of advertisement types includes a text advertisement.

42. The method of claim 40, wherein the choice of advertisement types includes an image advertisement.

43. The method of claim 40, wherein the choice of advertisement types includes an interactive advertisement.

44. The method of claim 27, further comprising the step of prompting the third party professional through the interface for the third party professional for advertising content or other components of the advertisement.

45. The method of claim 27, wherein the selection information input by the third party professional targets one or more internet media venues.

46. The method of claim 27, further comprising the step of generating online reports.

47. The method of claim 46, wherein the online reports include accounting reports.

48. The method of claim 46, wherein the online reports include trend analysis reports.

49. The method of claim 46, wherein the online reports include billing and collection reports.

50. The method of claim 46, wherein the online reports include transaction reports.

51. The method of claim 27, wherein the steps of prompting an internet media venue, a seller and a third party professional through the first, second and third interfaces to input information includes prompting the internet media venue, seller and third party professional to input information through a self-serve interface using a menu-driven format.

52. The method of claim 51, wherein the step of prompting the internet media venue, seller and third party professional to input information through self-serve interfaces using a menu-driven format includes providing one or more forms including text entry areas and menu-driven choices.

**APPENDIX**

Claim 27 recites:

27. A method of using a computer system allowing a third party professional to <u>manage, create and publish</u> customized electronic advertisements, for a seller, to internet media venues owned or controlled by other than the seller and other than the third party professional, comprising:

prompting each of the internet media venues through a first interface to the computer system to input presentation rules for the internet media venue for displaying electronic advertisements on the internet media venue;

storing the presentation rules for the internet media venues in a first database;

prompting the seller through a second interface to the computer system to input information identifying the seller;

storing the identifying information input by the seller through the second interface in a second database;

prompting the third party professional through a third interface to the computer system to input information to select one or more of the internet media venues and to create an electronic advertisement for the seller for publication to the selected internet media venues;

storing the information input by the third party professional through the third interface in a third database; and

processing and publishing the electronic advertisement to one or more of the selected internet media venues, whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

The plain language of claim 27 recites a method for allowing a third party professional to manage, create and publish customized electronic advertisements to internet media venues for an individual by seller to internet media venues. The claimed method requires the computer system to:

(1) prompt each of the internet media venues to input presentation rules through a first interface, and store these rules in a first database;

(2) prompt a seller to input information identifying itself through a second interface, and store this information in a second database;

(3) prompt a third party professional to

(a) input information to select media venue(s) and

(b) input information to create an electronic advertisement for the seller

through a third interface, and store this information in a third database; and

(4) process the input information—thereby creating an electronic advertisement from the input information that complies with the presentation rules of one or more selected internet media venues, and publish this advertisement to one or more selected internet media venues for display. This "processing" step requires the execution of software algorithms that perform mathematical and/or logic operations upon the information input by the seller and the third party professional in order to create an electronic advertisement customized for display on the selected media venue(s)—*i.e.,* an advertisement that conforms to the presentation rules entered by the media venue(s).

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: Stone, et al | Examiner:    Jeffrey L. Gellner |
| Reexamination Control No.: 95/001,069 | Technology Center/Art Unit: 3993 |
| U.S. Patent No.: 7,249,059 | |
| Reexamination Request Filed: July 21, 2008 | |
| For:    INERNET ADVERTISING SYSTEM<br>          AND METHOD | |

Attn: Mail Stop "Inter Partes Reexam"
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### CERTIFICATE OF SERVICE

I, Amber L. Branum, hereby certify that the Response to Office Action was filed on January 21, 2009 for the above-referenced reexamination proceeding in the U.S. Patent and Trademark Office was served by this day 21ˢᵗ of January 2009 by Federal Express and electronic mail:

> John C. Phillips
> Fish & Richardson
> 12390 El Camino Real
> San Diego, CA 92130

the third party requester acting on behalf of the real party in interest, Google, Inc.

Respectfully submitted,

_Amber L. Branum_
Amber L. Branum

Heim, Payne & Chorush, LLP
600 Travis, Suite 6710
Houston, Texas 77002
Phone: (713) 221-2000
Facsimile: (713) 221-2021
Date: January 21, 2009

8619-v1/1039.0010

*09-06-06*

*AF 11W*



SEP 0 5 2006

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006
in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Appl. No. | : | 10/193,465 |
| Applicant | : | Michael A. Dean et al. |
| Filed | : | July 11, 2002 |
| Title | : | |
| | | METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLURALITY OF FUNCTIONS |
| TC/A.U. | : | 3627 |
| Examiner | : | Ade, Oger Garcia |
| Docket No. | : | Stone CIP |

Honorable Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## <u>Request For Reconsideration</u>

Gentlemen:

This Request for Reconsideration is filed in response to the Final Office Action mailed on

July 7, 2006 and requiring a response by September 7, 2006, in order to comply with the "TWO

MONTHS from mailing date" of the Final Office Action.

Applicants wish to acknowledge and thank Alexander Kalinowski, Supervisory Patent

Examiner, and Garcia Ade, Examiner, for the courteous interview extended to Applicants and

their undersigned counsel on August 16, 2006. A copy of the Interview Summary is attached.

1

**Claims:**

A listing of the claims begins on page 3 of this Request.

**Remarks** begin on page 13 of this Request.

**Attachments**

Interview Summary, dated March 22, 2006, 1 page.

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006
in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

# Claims

This listing of claims will replace all prior versions, and listings, of claims in the
application.

## Claims Amendments

This listing of claims will replace all prior versions, and listings, of claims in the
application:

## Listing of Claims:

1-20) (canceled)

21) (Previously Presented)  A computer system allowing a third party professional to manage,

create and publish customized electronic advertisements, for a seller, to internet

media venues owned or controlled by other than the seller and other than the third

party professional, comprising:

a first interface to the computer system through which each of the internet

media venues is prompted to input presentation rules for the internet media

venue for displaying electronic advertisements on the internet media venue;

a first database storing the presentation rules input by the internet media

venues through the first interface;

3

a second interface to the computer system through which a seller is
prompted to input information identifying the seller; and

a second database storing the identifying information input by the seller
through the second interface;

a third interface to the computer system through which the third party
professional is prompted to input information to select one or more of the
internet media venues and prompted to input information to create an
electronic advertisement for the seller for publication to the selected internet
media venues;

a third database storing the information input by the third party professional
through the third interface; and

a computer controller of the computer system processing and publishing the
electronic advertisement to one or more of the selected internet media
venues whereby the electronic advertisement is displayed on the one or
more of the selected internet media venues in compliance with the
presentation rules of the internet media venue.

22) (Previously Presented) The computer system of claim 21, further comprising an
advertisement generation program for displaying the advertisement published by the
computer controller on the one or more of the selected internet media venues in compliance
with the internet media venue presentation rules.

4

23) (Previously Presented)  The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

24) (Previously Presented)  The computer system of claim 21, wherein the second interface prompts the seller to input information to select a third party professional.

25) (Previously Presented)  The computer system of claim 24, wherein the second interface presents a list of available third party professionals.

26) (Previously Presented)  The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional for information identifying the third party professional.

27) (Previously Presented)  The computer system of claim 26, further comprising a fourth database storing the information identifying the third party professional.

28) (Previously Presented)  The computer system of claim 24, wherein the second interface prompts the seller for information to review the actions of the selected third party professional.

29) (Previously Presented)  The computer system of claim 21, wherein the second interface prompts the seller with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

30) (Previously Presented)  The computer system of claim 21, wherein the computer system and the computer controller each comprise a network of computers.

31) (Previously Presented)   The computer system of claim 21, wherein the electronic advertisement comprises the advertisement or components of the advertisement.

32) (Previously Presented)   The computer system of claim 21, wherein the internet media venue is a website comprising one or more web pages.

33) (Previously Presented)  The computer system of claim 21, wherein the internet media venue comprises one or more virtual locations.

34) (Previously Presented)   The computer system of claim 21, wherein the interface for the third party professional prompts the third party professional with a choice of advertisement types.

35) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes a text advertisement.

36) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes an image advertisement.

37) (Previously Presented)  The computer system of claim 34, wherein the choice of advertisement types includes an interactive advertisement.

38) (Previously Presented)  The computer system of claim 21, wherein the third interface for the third party professional prompts the third party professional for advertising content or other components of the advertisement.

39) (Previously Presented) The computer system of claim 21, wherein the selection information input by the third party professional targets one or more internet media venues.

40) (Previously Presented) The computer system of claim 21, further comprising a general management program of the computer controller for generating online reports.

41) (Previously Presented) The computer system of claim 40, wherein the online reports include accounting reports.

42) (Previously Presented) The computer system of claim 40, wherein the online reports include trend analysis reports.

43) (Previously Presented) The computer system of claim 40, wherein the online reports include billing and collection reports.

44) (Previously Presented) ) The computer system of claim 40, wherein the online reports include transaction reports.

45) (Previously Presented) The computer system of claim 21, wherein the first, second and third interfaces are self-serve interfaces that prompt the internet media venue, seller and third party professional to input information using a menu-driven format.

46) (Previously Presented) The computer system of claim 45, wherein the menu-driven format includes one or more forms with text entry areas and menu-driven choices.

47) (Previously Presented) A method of using a computer system allowing a third party professional to manage, create and publish customized electronic advertisements, for a

seller, to internet media venues owned or controlled by other than the seller and other than the third party professional, comprising:

prompting each of the internet media venues through a first interface to the computer system to input presentation rules for the internet media venue for displaying electronic advertisements on the internet media venue;

storing the presentation rules for the internet media venues in a first database;

prompting the seller through a second interface to the computer system to input information identifying the seller;

storing the identifying information input by the seller through the second interface in a second database;

prompting the third party professional through a third interface to the computer system to input information to select one or more of the internet media venues and to create an electronic advertisement for the seller for publication to the selected internet media venues;

storing the information input by the third party professional through the third interface in a third database; and

processing and publishing the electronic advertisement to one or more of the selected internet media venues, whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue.

8

48) (Previously Presented)  The method of claim 47, further comprising the step of displaying the advertisement published by the computer controller on the one or more of the selected internet media venues in compliance with the internet media venue presentation rules.

49) (Previously Presented)  The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for information to create and manage customized electronic advertisements for one or more sellers.

50) (Previously Presented)  The method of claim 47, further comprising the step of prompting the seller through the second interface for information to select a third party professional.

51) (Previously Presented)  The method of claim 50, further comprising the step of presenting a list of available third party professionals through the second interface.

52) (Previously Presented)  The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for information identifying the third party professional.

53) (Previously Presented)  The method of claim 52, further comprising the step of storing the information identifying the third party professional in a fourth database.

54) (Previously Presented)  The method of claim 50, further comprising the step of prompting the seller through the second interface for information to review the actions of the selected third party professional.

9

55) (Previously Presented) The method of claim 47, further comprising the step of prompting the seller through the second interface with a choice of appointing a third party professional to act as the agent of the seller to create or manage customized electronic advertisements.

56) (Previously Presented) The method of claim 47, wherein the computer system and the computer controller each comprise a network of computers.

57) (Previously Presented) The method of claim 47, wherein the electronic advertisement comprises the advertisement or components of the advertisement.

58) (Previously Presented) The method of claim 47, wherein the internet media venue is a website comprising one or more web pages.

59) (Previously Presented) The method of claim 47, wherein the internet media venue comprises one or more virtual locations.

60) (Previously Presented) The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional with a choice of advertisement types.

61) (Previously Presented) The method of claim 60, wherein the choice of advertisement types includes a text advertisement.

62) (Previously Presented) The method of claim 60, wherein the choice of advertisement types includes an image advertisement.

63) (Previously Presented)  The method of claim 60, wherein the choice of advertisement types includes an interactive advertisement.

64) (Previously Presented)  The method of claim 47, further comprising the step of prompting the third party professional through the interface for the third party professional for advertising content or other components of the advertisement.

65) (Previously Presented)  The method of claim 47, wherein the selection information input by the third party professional targets one or more internet media venues.

66) (Previously Presented)  The method of claim 47, further comprising the step of generating online reports.

67) (Previously Presented)  The method of claim 66, wherein the online reports include accounting reports.

68) (Previously Presented)  The method of claim 66, wherein the online reports include trend analysis reports

69) (Previously Presented)  The method of claim 66, wherein the online reports include billing and collection reports.

70) (Previously Presented)  The method of claim 66, wherein the online reports include transaction reports.

71) (Previously Presented)  The method of claim 47, wherein the steps of prompting an internet media venue, a seller and a third party professional through the first, second and third

11

interfaces to input information includes prompting the internet media venue, seller and third party professional to input information through a self-serve interface using a menu-driven format.

72) (Previously Presented)  The method of claim 71, wherein the step of prompting the internet media venue, seller and third party professional to input information through self-serve interfaces using a menu-driven format includes providing one or more forms including text entry areas and menu-driven choices.

12

Appl. No. 10/193,465
Amdt. Dated September 5, 2006
Response to Final Office Action mailed July 7, 2006 requiring a response by September 7, 2006
in order to comply with the "TWO MONTHS from mailing date" of the Final Office Action.

# **Remarks**

In the Final Office Action, the examiner withdrew the 35 USC 101 and double patenting
claim rejections, rejected claim 21 under 35 USC 112, and rejected claims 21-72 under 35 USC
102. In view of the arguments present below, Applicants respectfully request reconsideration
and withdrawal of the examiner's rejections and allowance of the application.

## **Interview Summary**

On August 16, 2006, Applicant Dean and Applicant's undersigned representative
conducted an interview with the examiner and the supervisory examiner in which Applicant
Dean discussed claims 21 and 47 and pointed out the differences between these claims and the
Sparks et al. [Sparks] reference relied on by the examiner to reject the claims. The examiner
suggested that Applicants file this Request for Reconsideration.

Although there are numerous differences between the Sparks reference and the claimed
invention, Applicant Dean focused on the following two key points during the interview
presentation to distinguish the invention as claimed in independent claims 21 and 47 over the
Sparks reference:

Although the Sparks reference discloses a "second interface" for a seller (the
"client" or, more specifically, a McDonald's store) to create an advertisement for
production and distribution to, for example, its store or to selected newspapers (see

13

Sparks' Fig. 1,the "client" personal computer 12, and the menu-driven interface detailed in the subsequent figures for the store to create the advertisement), Sparks does not disclose the claimed "first interface" through which one or more internet media venues "owned or controlled by other than the seller and the third party professional" (the claimed "internet media venues") are prompted to enter their presentation rules so that a seller's advertisement can be automatically modified by the claimed internet advertising system for publication/display at each such internet media venue in compliance with the presentation rules for that internet media venue. Sparks does not disclose any such "internet media venues" and the print media venues that are disclosed (see Sparks' Fig. 1, commercial production facility or vendor 44 for publication of ads as inserts in "newspapers") have no interface prompting them to enter their presentation rules. Thus, the "newspapers" disclosed in Sparks for publishing the client-created advertisements exercise no control over the advertisement's "look and feel" or other aspects of the advertisement. The communication path from the advertising system's ad server (image server 28 in Fig. 1) for serving a client-created advertisement to production facility or vendor 44 for inclusion in "newspapers" points only in one direction, that is, towards the production facility for printing the ads for insertion in those "newspapers" (and there is no disclosure otherwise). In addition, Sparks does not disclose the claimed "third interface" that allows a third party professional (such as an advertising agency) to create an advertisement on behalf of one or more sellers (the client/McDonald's store owner) and select one or more "internet media venues" for publication of that advertisement.

14

## Claim Rejections – 35 USC 112

The examiner rejected claim 21 under 35 U.S.C. § 112, second paragraph, "as being
indefinite for failing to particularly point out and distinctly claim the subject matter which
applicant regards as the invention. a) In claim 21, it is unclear if the term "a seller" in line 10, is
the same or different than the seller in lines 11 and 12." Applicants respectfully traverse this
rejection and submit that claim 21 is not indefinite or unclear. The term "a seller" in line 10
provides proper antecedent basis for the term "the seller" in lines 11 and 12. Accordingly, claim
21 meets the requirements for patentability under 35 USC 112.

## Claim Rejections – 35 USC 102(e)

The examiner stated that "Claims 21 – 72 are rejected under 35 U.S.C. 102(e) as being
anticipated by Sparks [6,167,382]." The following are the applicants' remarks in which each
argument made by the examiner is analyzed and respectfully traversed.

In rejecting **claims 21-25, 27, 29-31, 47-50, 52, 53, 55-57, 60, 64, 65, 71 and 72** (of
which claims 21 and 47 are the independent claims), the Examiner stated that "as best
understood" the Sparks computer system comprises "a first interface to the computer system
through which each of the internet media venues is prompted to input presentations rules for the
internet media venue for displaying electronic advertisements on the internet media venue [see
figure 3, and column 3, lines 14-19 (e.g. representation transmitted from the image manager
server directly to the client's computer by electronic mail or electronic file transfer)]". The
examiner is incorrect in his identification of a comparable "first interface" within Sparks. The
claimed capability and functionality of the "first interface" is neither described or suggested by

15

the Sparks specification. As a preliminary matter, the preamble to claims 21 and 47 states "A computer system" or "A method of using a computer system" -- "allowing a third party professional to manage, create and publish customized electronic advertisements, for a seller, to internet media venues *owned or controlled by other than the seller and the third party professional.* Thus, the claimed "first interface" is necessarily an interface for an internet media venue owned or controlled by other than the seller or the third party professional" to enter its presentation rules to control the "look and feel" and other aspects of the presentations destined to be published at that internet media venue. Sparks discloses no such internet media venue interface. The only interface disclosed in Sparks is for "clients" of the advertising system. The clients disclosed in Spark's are the McDonald's store owners (i.e., seller's) that use the system to create advertisements for publication and distribution to their stores or selected print media venues ("newspapers") through a client interface presented at personal computer 12 in Fig. 1 (as detailed in the subsequent figures). This is demonstrated, for example, at lines Col. 1 Col. 2 line 4 of Sparks where the "Client" is referred to as placing a "comprehensive order for "images and templates used for the design assembly, production, and distribution of print advertising and/or commercial display materials". It is also demonstrated at Col. 2, lines 12-17 where it is stated that the "Advantages [of the disclosed system] to the client include greatly reduced time to develop print advertising and/or commercial display materials since choosing from an existing menu of formats and images eliminates many time-consuming tasks (creation of original art and copy and setting type, for example ...." It should also be noted that there are no methods or systems for "displaying electronic advertisements on the internet media venue" because there are no such claimed "internet media venues" associated with Sparks. The "lower resolution representation transmitted from the image manager server [28] directly to the client's

16

computer" referred to by the Examiner (Col. 3, lines 14-19 Sparks) is received by the client (in Sparks) (see Fig, 1 and Col. 3, lines 34-54) not a the claimed "internet media venue" for publication or display to the public, and is not in response to the presentation rules of any such internet media venue.

The examiner further states that the Sparks system includes "a first database storing the presentation rules input by the internet media venues through the first interface [via image **assembler 20**, which is linked to a high-resolution **image database**), column 4 lines 53-67, and column 5, lines 1-4];" This reading of Sparks is not correct. Due to the fact that there is no first interface or its equivalent (as stated above) for the claimed "internet media venues" to input their presentation rules, there can be no "first database storing the presentation rules input by the internet media venues" within Sparks.

The examiner further states that the Sparks system includes "a second interface to the computer system through which a seller is prompted to input information identifying the seller [see figure 3 (e.g. blocks 70, 72, and 74), and figure 4 (e.g. **user registration form**)]...." Applicant agrees with the Examiner that the "client" interface presented in these figures discloses the claimed "second interface" for a seller.

The examiner further states that the Sparks system includes "a second database storing the identifying information input by the seller through the second interface [via image assembler 20 database, column 11, lines 1-14 (e.g. all orders have associated with them the **client name, and the name, address, city state, zip, phone, fax and email of the contact**)]...." Applicant also agrees with the Examiner that Fig. 3 and Fig. 4 of Sparks appear to represent a method of inputting the "client" or seller information into a database of the Sparks system.

17

The examiner further states that the Sparks system includes "a third interface to the computer system through which the third party professional is prompted to input information to select one or more of the internet media venues and prompted to input information to create an electronic advertisement for the seller for publication to the selected internet media venues [see flowchart of figure 2, (e.g. selection search criteria block 54), column 5 lines 16-35]". This is incorrect. Fig. 2 (flowchart) of Sparks represents the use of the system by the "client" to create an advertisement for publication at its store or to print media venues such as newspapers. As stated at Col. 5, lines 16-35, "FIG. 2 is an overview of the procedure used by client in designing and ordering an advertising or marketing piece.... An order is placed through email to the system proprietor [44] and, responsive to receiving the order, is produced and fulfilled by the system proprietor or its agent." Thus, this flow chart is part of the "client" interface and corresponds to the "second interface" for a seller as discussed above, not the third interface for third party professionals or, as also discussed above, the first interface for internet media venues.

The examiner further states that the Sparks system includes "a third database storing the information input by the third party professional through the third interface [via high-resolution database, column 8, lines 9-21]." Applicants respectfully disagree. As provided above there is no "third interface" for a "third party professional" therefore there can be no "third database storing the information input by the third party professional through the third interface".

The examiner further states that the Sparks system includes "a computer controller of the computer system processing and publishing the electronic advertisement to one or more of the selected internet media venues whereby the electronic advertisement is displayed on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue [column 2, lines 21-27 (e.g. **all steps in the process under the immediate**

18

control of a single computer operator), column 10, lines 8-16 (e.g. appropriate **edit control** for

each of the selected slots), and lines 37-52), and via the web site 14 (e.g. a processor and a stored

**computer program having executable instructions** for the processor)]." This is again

incorrect. Within Sparks there is no system or method for a "client" to select a internet media

venue. Within Sparks there is no system or method for such claimed internet media venues to

input their "presentation rules" (there is no "first interface" see above) therefore any

advertisement cannot be "designed" or "created" or "published" in "compliance with the

presentation rules of the internet media venue". The **"edit control"** cited by the examiner is

given to the "client" (Sparks Col. 10 line 14) not to any claimed "internet media venues" nor is it

guided by "presentation rules" that were input by the internet media venues. Also the point

made (and emphasized in bold) by the examiner within this item that; **"all steps in the process**

**under the immediate control of a single computer operator"** is a direct contradiction to the

concept of a "third party professional" having input into the design and creation of the

"advertisement". The cited **"computer program having executable instructions for the**

**processor"** needs to be reviewed in its total context. Sparks (Col. 4 lines 31-38 which is the

only use of the phrase "computer program having executable instructions for the processor"

within Sparks) states as follows:

> "The web site 14 has associated with it all of the customer order logic (a
>
> processor and a stored computer program having executable instructions for the
>
> processor) necessary for a client to order a series of images for assembly into a
>
> marketing piece, and also has a design logic application which permits the client
>
> to assemble these images into such marketing piece and then to order its
>
> production by the system proprietor."

19

There is no description or suggestion within Sparks for displaying electronic advertisements "on the one or more of the selected internet media venues in compliance with the presentation rules of the internet media venue". This concept is not described, taught or suggested by Sparks. Accordingly, for the foregoing reasons claims 21 and 47, and claims 22-25, 27, 29-31, 48-50, 52, 53, 55-57, 60, 64, 65, 71 and 72 by virtue of their dependence on claims 21 and 47, meet the requirements for patentability under 35 USC 102(e). Although by virtue of their dependence on claim 21 and 47, claims 26, 28, 32-46, 51, 54, 58-59, 61-63 and 66-70 are patentable over Sparks and, thus, meet the requirements for patentability under 35 USC 102, Applicants address the examiner's rejections of these claims below.

The examiner states "As per claims 26 and 51, Sparks discloses the second interface presents a list of available third party professionals [see flowchart of figures 12a and 12b 9e.g. display list of slots block 200)]" This is incorrect.   Sparks employs a system of presenting preformatted "shells" (templates) that may be reviewed and selected by the client. Within the "shells" are designated areas that can be customized by the client and are called "slots" by Sparks (Col. 5 lines 18-29) The "DISPLAYED LIST OF SLOTS" block 200 (Fig. 12a) cited by the examiner is actually a list of "locations" (slots) within the standardized "shell" (template) that may be customized by the client. Slots are not "third party professionals". Slots are objects (or areas) within the content structure of the intended marketing piece that may be customized by the client. (Sparks Col. 7 lines 45-50)

The examiner further states that "**As per claims 28 and 54**, Sparks discloses the second interface prompts the seller for information to review the actions of the selected third party professionals [via step 54, column 5 lines 16-23 (e.g. the client selects the search criteria for retrieving low-resolution images, executes the search, **reviews** the low-resolution images and

20

their high-resolution hardcopies, and selects from a number of different marketing piece shells)]." This statement is also not correct.    There are standardized "shells" (templates) within Sparks that are put there and offered by the "proprietor" of the Sparks system.  The act of "the client selects the search criteria for retrieving low-resolution images, executes the search, reviews the low-resolution images and their high-resolution hardcopies, and selects from a number of different marketing piece shells" as cited by the examiner is the act of the client searching the standardized templates (shells) held within the system for a base (template) on which to create their desired marketing piece.

The examiner further states that "**As per claims 32 and 58,** Sparks discloses wherein the internet media venue is a website comprising one or more web pages [e.g. web site 14]." This is incorrect.  The Sparks "web site 14" (Fig. 1 Sparks) is part of the Sparks system in which it is an interface for the clients to interact with the Sparks system.  "Web site 14" is owned and controlled by the operators of the Sparks system, does not receive or display any client presentations, and is not viewed by potential buyers.  Web site 14 is not a "internet media venue" as defined and claimed.  There are no such "internet media venues" shown, displayed, or referred to within Sparks.

The examiner further states that "**As per claims 33 and 59,** Sparks discloses wherein internet media venue comprises one or more virtual locations [column 3, lines 48-37 (e.g. **virtual private network**)]." Applicants respectfully disagree. Webster's New World Computer Dictionary Ninth Edition defines "virtual private network' as:

> (VPN) A highly secure network for transmitting sensitive data (including
> electronic commerce transactions) that uses the public Internet as its transmission

medium. To ensure data confidentiality and integrity, VPNs use encryption and

protocol tunneling.

In other words the VPN referred to within Sparks is the Internet protocol that controls

their most secure network. It has nothing to do with the internet media venue as claimed.

The examiner further states that "**As per claims 35, 36, 61, and 62,** Sparks discloses

wherein the choice of advertisement types includes a text and image advertisement [see abstract]

The "images" and "text" referred to in Sparks are "components" which are "selected" and the

"assembled" into the "final product" or "marketing piece". Within Sparks there is no "choice of

advertisement types" such as "images" and "text".

The examiner further states that "**As per claims 37 and 63,** Sparks discloses where the

choices of advertisement types includes an interactive [via the website 14 has **associated** with

**all of the customers**]." This statement is incorrect. It is believed that the quotation "the web

14 has **associated with it all of the customers**" is from Sparks Col. 4 lines 31-38. The

is incorrect in the fact that although the "web site 14" (Sparks) is an interactive web site it is

a product of any clients creation. It is the interactive presentation from the Sparks system that

allows the "clients" of Sparks system to create static non interactive presentations that are

"printed" and then "distributed". There is no "interactive" capability for the advertisements

created within Sparks. Although the claims are not limited thereto, it is instructive to examine

the example implementation described within the application where there exists what is referred

to as a "Central Presentation and Selection Server 2000". In this example preferred embodiment

all of the functionality necessary to perform the claim is displayed. There is no comparable

component or system within Sparks that can be accessed by a "buyer" as defined and claimed to

utilize an "interactive advertisement". The term "customer" within Sparks is used

22

interchangeably with "client" of the Sparks system. (see Sparks Col. 4 lines 31-38). The "customers" that use the interactive capabilities of "web site 14" are not the "end users" that are intended to view and receive the information created by the "clients" or "customers" of Sparks. Nor can any of the "advertisement types" within Sparks be interactive because there are no interactive advertising modes disclosed within Sparks, only static advertising presentations such as inserts, and marketing pieces. (Sparks Col. 1 Lines 43-51)

The examiner further states that "**As per claims 40-44, and 66-70,** Sparks discloses a general management program of the computer controller for generating online reports [via manager software application, such as Open Progress Interface], including accounting reports, trend analysis reports, billing and collection reports, and transaction reports [column 2, lines 36-49 (e.g. system can transmits, either electronically, for distribution and **billing purposes** to an order-entry system that is integrated with the **entire accounting system**), and column 2, lines 50-67 (e.g. the client can also create custom text specific to the client's needs, such as site-specific information)]." Applicants believe "e.g. the client can also create custom text specific to the client's needs, such as site-specific information." to be a misquote from Col. 2 lines 59-67. Within Sparks the terms "report" or "reports" or "online report" are never used. The only reference to a "management program" or system is the "order-entry system that is integrated with the entire accounting system of the system provider" (Sparks Col. 2 line 49) This produces no "reports" of any kind for the "clients" of Sparks, only for the "system provider" of Sparks (Col. 2 line 36-49). The "Open Progress Interface" cited by the examiner is not a "report" generating system of any kind. It is a system that resides "on an image manager server, for the management of low- and high-resolution images". It serves to manage the images that are part of the "ad creation process" and has nothing to do with "generating online reports" or any type of report.

23

(Sparks Col. 2, line 50-53)  Applicants believe that the examiner may have also misquoted

Sparks in regard to "the client can also create custom text specific to the client's needs, such as

site-specific information." Applicants believe that this came from (Sparks Col. 59-67).  This

section of Sparks has nothing to do with any sort of management reporting. It is referring to the

creation and assembly of ads or marketing pieces (the finished product in Sparks). The reference

to "site-specific information" refers to the ability of the client to insert information such as the

store address, prices, or promotions into the pre made advertisement templates.  Sparks has no

references to any "trend analysis reports", "billing reports", or "transaction reports" as claimed

nor does Sparks make any reference to the programs necessary to generate reports.

The examiner further states that "**As per claims 45 and 46**, Sparks discloses wherein the

first, second and third interface are self–serve interface that prompt the internet media venue,

seller and third party professional to input information using a menu-driven format [see column

2, lines 12-20 (e.g. choosing from an existing **menu of formats**), via search screen 92], and

wherein the menu-driven format includes one or more forms with text entry areas and menu-

driven choices [column 9, lines 60-63 (e.g. two types of text may be inserted into a text slot,

other slots will define **user-entered text**)]." This is incorrect.  As argued above there are no

self-serve interfaces  within Sparks for  "Internet Media Venues" or a "Third Party

Professionals," as claimed.  Accordingly, in view of the foregoing additional reasons, claims **26,

28, 32-46, 51, 54, 58-59, 61-63 and 66-70** meet the requirements for patentability under 35 USC

102.

24

**Conclusion**

In view of the applicants' traverse of the examiners' rejections, applicants' now believe

that the application is in condition for allowance. A Notice of Allowance is hereby earnestly

solicited.

The examiner is hereby requested to telephone the undersigned attorney of record at 972-

233-7773 or applicants at 903-561-9300, if such would further facilitate or expedite the

prosecution of the instant application.

Respectfully submitted,

Henry Croskell
Attorney for applicants
Registration No. 25847

Dated September 5, 2006
6817 Cliffbrook
Dallas TX. 75254
Phone 972-233-7773

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as Express Mail
(EQ 453030067 US) in an envelope addressed to:

Mail Stop Amendment
Commissioner for Patents,
P.O. Box 1450, Alexandria VA. 22323-1450
On 09/05/06    By _____

25

HD

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | 7590 | 04/13/2007 |
|---|---|---|

Henry Croskell, Esq.
6817 Cliffbrook
Dallas, TX 75240

| EXAMINER |
|---|
| ADE, OGER GARCIA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3627 | |

DATE MAILED: 04/13/2007

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/193,465 | 07/11/2002 | Michael A. Dean | STONE CIP | 9059 |

TITLE OF INVENTION: METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLURALITY OF FUNCTIONS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 07/13/2007 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. **PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 3

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590          04/13/2007

Henry C. Croskell, Esq.

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |  |
|---|---|
|  | (Depositor's name) |
|  | (Signature) |
|  | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
|  | 07/11/2002 | Michael A. Dean | STONE CIP | 9059 |

TITLE OF INVENTION: METHOD FOR USING COMPUTERS TO FACILITATE AND CONTROL THE CREATING OF A PLURALITY OF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
|  | YES | $700 | $300 | $0 | $1000 | 07/13/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GARCIA | 3627 | 705-026000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,     1 _____

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.     2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE          (B) RESIDENCE: (CITY and STATE or COUNTRY)



Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/194,969 | 07/11/2002 | Michael A. Dean | STONE CIP | 9059 |

| | EXAMINER |
|---|---|
| 7590    04/13/2007 | ADE, OGER GARCIA |

Henry C. Koskell, Esq.
68
Dall

| ART UNIT | PAPER NUMBER |
|---|---|
| 3627 | |

DATE MAILED: 04/13/2007

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 581 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 581 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200

Page 3 of 3

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 10/193,465 | DEAN ET AL. |
| | Examiner | Art Unit | |
| | Garcia Ade | 3627 | |

*The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

...owable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included ...ously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS** NOTICE OF ALLOWABILITY **IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative ...petition by the applicant. See 37 CFR 1.313 and MEP 1308.

...tion is responsive to *12/28/2006*.

...ms) is/are *21-72*.

...ment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a) ☐ Some* c) ☐ None of the:

...ertified copies of the priority documents have been received.

...rtified copies of the priority documents have been received in Application No. _____ .

...es of the certified copies of the priority documents have been received in this national stage application from the ...national Bureau (PCT Rule 17.2(a)).

...es not received: _____ .

...r MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements ...to timely comply will result in ABANDONMENT of this application. ...THREE-MONTH PERIOD IS NOT EXTENDABLE.

...OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF ...PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

...DRAWINGS ( as "replacement sheets") must be submitted.

...changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached ...hereto or 2) ☐ to Paper No./Mail Date _____ .

...changes required by the attached Examiner's Amendment / Comment or in the Office action of ...No./Mail Date _____ .

Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

...DEPOSIT and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the ...examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)

1 ☒ Notice of References Cited (PTO-892)

2 ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)

3 ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date *04/05/06, 7/31/02*

4 ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

Application/Control Number: 10/193,465                                        Page 2
Art Unit: 3627

## REASONS FOR ALLOWANCE

### *Acknowledgements*

### *Continued Examination Under 37 CFR 1.114*

1.    A request for continued examination under 37 CFR 1.114, including the fee

set forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since

this application is eligible for continued examination under 37 CFR 1.114, and the

fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous

Office action has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission

filed on December 28th, 2006 has been entered. This Office Action is given Paper

No. 20070315.

### *Examiner's Statement of reason for Allowance*

2.    The following is an examiner's statement of reasons for allowance: Claims 21

and 47 recite a system and method allowing a third party professional to mange

create and publish customized advertisements, for a seller, to internet media

venues owned or controlled by other than the seller and other than the third party

professional, comprising, *inter alia:* a third interface to the computer system

through which the third party professional is prompted to input information to

select one or more of the internet media venues and prompted to input information

to create an electronic advertisement for the seller for publication to the selected

internet media venues; a third database storing the information input by the third

Application/Control Number: 10/193,465                          Page 3
Art Unit: 3627

party professional through the third interface; and a computer controller of the
computer system processing and publishing the electronic advertisement to one or
more of the selected internet media venues whereby the electronic advertisement is
displayed on the one or more of the selected internet media venues in compliance
with the presentation rules of the internet media venue.

The most closely applicable prior art of record is referred to in the Office
Action mailed on July 3rd, 2006 as U.S. Patent No. 6,167,382 A to Sparks et al.
("Sparks"). Sparks discloses a first interface to the computer system through which
each of the internet media venues is prompted to input presentation rules for the
internet media venue for displaying electronic advertisements on the internet media
venue [see figure 3, and column 3, lines 14 – 19 (e.g. representation transmitted
from the image manager server directly to the client's computer by electronic mail
or electronic file transfer)]; a first database storing the presentation rules input by
the internet media venues through the first interface [via image *assembler 20*,
which is linked to a high-resolution *image database*), column 4, lines 53 – 67, and
column 5, lines 1 – 4] ; a second interface to the computer system through which a
seller is prompted to input information identifying the seller [see figure 3 (e.g.
blocks 70, 72, and 74), and figure 4 (e.g. *user registration form*)]; and a second
database storing the identifying information input by the seller though the second
interface [via image assembler 20 database, column 11, lines 1 – 14 (e.g. all orders
have associated with them the *client name, and the name, address, city, state, zip,
phone, fax and email of the contact*)].

However, Sparks neither anticipates or fairly and reasonable teaches as <u>a</u> <u>third interface to the computer system through which the third party professional is</u> <u>prompted to input information to select one or more of the internet media venues</u> <u>and prompted to input information to create an electronic advertisement for the</u> <u>seller for publication to the selected internet media venues; a third database storing</u> <u>the information input by the third party professional through the third interface;</u> <u>and a computer controller of the computer system processing and publishing the</u> <u>electronic advertisement to one or more of the selected internet media venues</u> <u>whereby the electronic advertisement is displayed on the one or more of the</u> <u>selected internet media venues in compliance with the presentation rules of the</u> <u>internet media venue.</u>

While Sparks relates to an integrated advertising piece design and production system that allows a user to place a comprehensive order, at a dedicated Internet site, for images and templates used for the design, assembly, production, and distribution of print advertising and/or commercial display materials; and create an assembled image of the final product on the computer screen using pre-designed formats and images stored on a server in the system. Thus, the combination of claimed features is not disclosed in a reasonable manner.

The cited but not applied art (U.S. Patent No. 5,933,811) to Angles discloses a system and method for delivering customized electronic advertisements in an interactive communication system based on consumer profiles and are then integrated with offerings maintained by different content providers. However, Angles fails to disclose: <u>a third interface to the computer system through which the</u>

third party professional is prompted to input information to select one or more of
the internet media venues and prompted to input information to create an
electronic advertisement for the seller for publication to the selected internet media
venues; a third database storing the information input by the third party
professional through the third interface; and a computer controller of the computer
system processing and publishing the electronic advertisement to one or more of
the selected internet media venues whereby the electronic advertisement is
displayed on the one or more of the selected internet media venues in compliance
with the presentation rules of the internet media venue. Therefore, the combination
of cited features is not disclosed in a reasonable manner.

The cited but not applied art (WO 0137119 A2) to Ferber teaches a method
and system for providing advertising content to Internet-enabled channels,
comprising: an ad server connected to the Internet, a media server with creative
for the channels connected to the Internet, an advertiser database connected to
said ad server, a publisher database connected to said ad server, and a database
connected to said media server for storing creative for a plurality of Internet-
enabled channels. However, Ferber fails to disclose: a third interface to the
computer system through which the third party professional is prompted to input
information to select one or more of the internet media venues and prompted to
input information to create an electronic advertisement for the seller for publication
to the selected internet media venues; a third database storing the information
input by the third party professional through the third interface; and a computer
controller of the computer system processing and publishing the electronic

Application/Control Number: 10/193,465                                    Pa(j.
Art Unit: 3627

advertisement to one or more of the selected internet media venues whereby the

electronic advertisement is displayed on the one or more of the selected internet

media venues in compliance with the presentation rules of the internet media

venue. Therefore, the combination of claimed features is not disclosed in a

reasonable manner.

    The cited but not applied NPL document (Global system used to guard ima..ji

standards) to Matt Hamblen teaches how seashell logo and other images we....

being used in different advertising promotions and web sites. However, Hamb...

fails to disclose: a third interface to the computer system through which the third

par.y professional is prompted to input information to select one or more of ...

internet media venues and prompted to input information to create an electr.....

advertisement for the seller for publication to the selected internet media ve....

third database storing the information input by the third party professional ....

the third interface; and a computer controller of the computer system proces.....

and publishing the electronic advertisement to one or more of the selected int... ...

media venues whereby the electronic advertisement is displayed on the one ....

more of the selected internet media venues in compliance with the presentation

rules of the internet media venue. Thus, the combination of claimed features ...

disclosed in a reasonable manner.

### Conclusion

3.    Any comments considered necessary by applicant must be submitted no la.....

than the payment of the issue fee and, to avoid processing delays, should

Application/Control Number: 10/193,465                                    Page 7
Art Unit: 3627

preferably accompany the issue fee. Such submissions should be clearly labeled
"Comments on Statement of Reasons for Allowance."

4.      Any inquiry concerning this communication or earlier communications from
the examiner should be directed to Garcia Ade whose telephone number is
571.272.5586. The examiner can normally be reached on M-F 8:30AM - 5PM.

        If attempts to reach the examiner by telephone are unsuccessful, the
examiner's supervisor, Florian Zeender can be reached on 571.272.6790. The fax
phone number for the organization where this application or proceeding is assigned
is 571-273-8300.

5.      Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system. Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR
only. For more information about the PAIR system, see http://pair-
direct.uspto.gov. Should you have questions on access to the Private PAIR system,
contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you
would like assistance from a USPTO Customer Service Representative or access to
the automated information system, call 800-786-9199 (IN USA OR CANADA) or
571-272-1000.

                                        Garcia   Ade
                                        Examiner
                                        Art Unit 3627

ga                                                              3/18/07

                                        F. RYAN ZEENDER
                                    SUPERVISORY PATENT EXAMINER

## Exhibit 3

| Data Type | Potential Source | Describes | Brown Patent Citation |
|---|---|---|---|
| Subscriber Data | CMC Network & Third Parties[1] | a subscriber using the system (*i.e.,* demographic information such as age/ race, personal interests, *etc*) to whom ads may be displayed | 10:40-46 |
| Content Segment Description | CMC Network & Advertiser | the content subject matter of an advertisement submitted to the network for display | 11:7-11 |
| Content Location | CMC Network | a particular location in which advertisement may be placed (size/shape/format) | 11:39-44 |

Chart summarizing the data types discussed in the Brown `368 patent

---

[1] In the Brown patent. "third parties" are not "third party professionals" as described in the `059 patent—they are information sources external to the host network that provide information (demographic information, buying patterns, ad "click-thru" information, *etc.*) about specific subscribers to the network host, *not* ad agencies or providers of advertising content or management services.