## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA, L.L.C. | § | |
| | § | |
| vs. | § | CASE NO. 2:07-CV-279-CE |
| | § | |
| GOOGLE, INC. and | § | |
| YAHOO!, INC. | § | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Before the court is the plaintiff Function Media, L.L.C.'s ("FM") motion for summary judgment of no inequitable conduct and declaration that this case is exceptional (Dkt. No. 195). FM contends that Google not only has not provided clear and convincing evidence that the patentees made a material misstatement with intent to deceive the PTO, but Google's inequitable conduct defense is baseless. Also, FM alleges that Google seriously mischaracterizes the evidence. For the reasons stated below, FM's motion for summary judgment of no inequitable conduct is GRANTED and the request for a declaration that this case is exceptional is CARRIED.

### II. Factual and Procedural Background

On July 3, 2007, FM filed suit against the defendant Google, Inc. ("Google") for patent infringement. FM alleges that Google infringes U.S. Patent Nos. 7,240,025 B2 ("the '025 patent") and 7,249,059 B2 ("the '059 patent"), which claim methods and systems that automate the process of formatting and delivering advertising to all types of media.

Google asserts that the '025 and '059 patents are unenforceable because the applicants engaged in inequitable conduct. First, the defendant argues that the '025 patent is unenforceable because the inventor, Michael Dean, intentionally withheld the DoubleClick reference from the

USPTO. Second, Google contends that the '059 patent is unenforceable because FM made a false priority assertion during prosecution.

## III. Analysis

### A. Applicable Law

#### 1. *Summary Judgment*

A grant of summary judgment is proper if the pleadings and evidence show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex*, 477 U.S. at 323-24. "Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc*., 911 F.2d 670, 672 (Fed. Cir. 1990). "Although the premises of inequitable conduct require findings based on all the evidence, a procedure that may preclude summary judgment determination, a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant can not prevail." *ATD Corp. Lyndall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).

#### 2. *Inequitable Conduct*

Patent applicants have a duty to prosecute patent applications before the USPTO with candor, good faith, and honesty, and a breach of this duty constitutes inequitable conduct. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007). To establish inequitable conduct, there must be "clear and convincing evidence that the applicant (1)

made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [USPTO]." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008) (quoting *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)). Once materiality and intent have been established by clear and convincing evidence, the trial court must apply a balancing test to determine if a holding of inequitable conduct is warranted. *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006). "[W]hen the misrepresentation or withheld information is highly material, a lesser quantum of proof is needed to establish the requisite intent. In contrast, the less material the information, the greater the proof must be." *Id.* at 1129 (citations omitted).

The court determines materiality "from the viewpoint of a reasonable patent examiner, and not the subjective beliefs of the patentee." *Cargill*, 476 F.3d at 1366. "Under the 'reasonable examiner' standard, a misstatement or omission may be material even if disclosure of that misstatement or omission would not have rendered the invention unpatentable." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1318 (Fed. Cir. 2006). To support an inference of intent from non-disclosure of information, there must be clear and convincing evidence that the applicant deliberately chose to withhold a known material reference. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).

> Evidence of mistake or negligence, even gross negligence, is not sufficient to support inequitable conduct in patent prosecution. To establish the requisite deceptive intent, the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.

*AstraZeneca Pharms. LP v. Teva Pharms. USA, Inc.*, 583 F.3d 766, 767 (Fed. Cir. 2009).

### 3. *Exceptional Cases*

In exceptional cases, the court may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. An award of attorneys' fees under § 285 requires a two step analysis: (1) the moving party must prove by clear and convincing evidence that the case is exceptional; and (2) the court must determine whether such an award is warranted. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). "[O]nly a limited universe of circumstances warrant a finding of exceptionality in a patent case: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (citations omitted).

### B. Failure to Disclose the DoubleClick Reference

Google argues that FM intended to deceive the USPTO when it chose not to disclose the DoubleClick reference, which the inventor Mr. Dean allegedly knew constituted material prior art. According to Google, the DoubleClick reference discloses each and every limitation of the '025 patent's asserted claims. FM asserts that Mr. Dean merely had general knowledge of DoubleClick, but he did not know its specific features and believed it operated in the same manner as the prior art. But the defendant contends, however, that Mr. Dean was aware that DoubleClick disclosed certain functions, and he knew that the patent office considered those functions material. According to Google's response brief, Mr. Dean "was aware of specific relevant functions performed by DoubleClick in the relevant period, including allowing advertisers to sign up and serve banner ads to multiple publisher sites *based on rules supplied by those publishers*." (emphasis added). In support of that argument, the defendant cites four lines of Mr. Dean's deposition transcript:

4

> Q: Is the same true for DoubleClick, that your understanding is that DoubleClick had presentation rules?
> A: I'm sure they did.

FM's reply brief notes, "It is somewhat ironic that, in a brief accusing [FM] of having deliberately misled the PTO, Google seriously mischaracterizes the deposition testimony of Michael Dean . . . ." FM argues that, during the deposition, Mr. Dean did not admit knowing that DoubleClick used presentation rules provided by publishers. In fact, Mr. Dean specifically stated he was *not* aware of this functionality. To provide context, the preceding lines of the deposition transcript are quoted below:

> Q: Did you know in 2001 that Yahoo's media venues . . . had different presentation rules?
> A: No.
> Q: Did you know that Yahoo *itself* had presentation rules?
> A: I'm assuming they did.
> Q: Why?
> A: Because all–all publishers wanted to standardize the look and feel of the–of the ads or presentations that they're displaying. . . .
> **Q: Is the same true for DoubleClick, that your understanding is that DoubleClick had presentation rules?**
> **A: I'm sure they did.**

(emphasis added). Essentially, Google asked Mr. Dean if Yahoo itself had presentation rules, in contrast to having presentation rules for each media venue or publisher. Google followed that question with "Is the same true for DoubleClick . . . ?"; in the context of the preceding question about Yahoo, it is clear that Mr. Dean is being asked whether DoubleClick itself had presentation rules. But, recognizing the potential ambiguity of its question, Google's counsel immediately asked a follow-up question:

> Q: Did you understand in 2001 that DoubleClick, when it published its banner ads to various media venues, that those media venues had different presentation rules?
> A: **No, I did not.**

5

(emphasis added). This question and Mr. Dean's answer unambiguously demonstrate that Mr. Dean testified he was not aware that DoubleClick "allowed advertisers to sign up and serve banner ads to multiple publisher sites based on rules supplied by those publishers." Google's argument to the contrary misrepresents the record, notwithstanding Google's subsequent attempt to correct its brief after FM pointed out Google's mischaracterization.

Google does not have evidence that Mr. Dean knew that Doubleclick had the presentation rules functionality of his invention. Thus, Google cannot demonstrate, by clear and convincing evidence, that the inventor intended to deceive the USPTO by deliberately withholding a known material reference. As such, the court grants summary judgment that the '025 patent is not unenforceable due to inequitable conduct on this ground.

### C. False Priority Assertion to the Patent Office

Google also contends that FM committed inequitable conduct by misrepresenting the priority date of the '059 patent to the USPTO. The defendant alleges that Henry Croskell, the prosecuting attorney for the '059 patent, falsely stated to the patent office that the '059 patent application had the same priority date as the application for U.S. Patent No. 6,446,045 ("the '045 patent").

The alleged false statement from the '059 patent prosecution history is quoted below:

> Also included in the IDS ["Information Disclosure Statement"] are references cited by the examiner in his first office action within the copending application 10/954,820. Included in the IDS is a Declaration . . . regarding . . . the '075 patent . . . . According to the Declaration, the conception of the subject matter claimed in the '075 patent took place in October or November of 1999. In view of the foregoing, Applicants submit that the '075 patent cannot be deemed prior art under 35 USC Sec. 102(e), 102(g), 102(e)/103 or 102(g)/103 because *the subject patent application*, which is a continuation of United States patent application 09/480,303, *has an effective filing date of January 10, 2000* and Applicants have a date of invention for the claimed subject matter that is prior to October 1999.

(emphasis added). Google contends that "the subject patent application," to which Mr. Croskell

6

refers, is the '059 patent. Although the '045 patent was filed on January 10, 2000, the '059 patent was actually filed as a continuation-in-part of the '045 patent, and thus is not entitled to the January 10, 2000 priority date. According to Google, Mr. Croskell incorrectly asserted that the '059 patent had an earlier priority date. The defendant urges that Mr. Croskell's misstatement is material because "a claim for priority is inherently material to patentability." *See Nilssen v. Ossram Sylvania Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007). Finally, Google argues that submission of a false statement to the patent office is circumstantial evidence of intent to deceive. *See Gen. Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1411 (Fed. Cir. 1994).

Despite Google's argument, it is not clear that the "the subject patent application" refers to the '059 patent's application. The prosecution history quoted above states that "the subject patent application" is a continuation of the '303 application. The '025 patent is a continuation of the '303 application, and the '059 patent is a continuation-in-part of the '303 application. Thus, "the subject patent application" may refer to the '025 patent's application, which does have a priority date of January 10, 2000. Additionally, a few sentences before "the subject patent application" statement, the prosecuting attorney explains that the '075 patent prior art reference was cited by the examiner during the prosecution of the 10/954,820 application, which issued at the '025 patent. Read in context, Mr. Croskell may be explaining that the '075 patent reference is not prior art to the *'025 patent application,* "the subject patent application." Finally, Mr. Croskell explained at this deposition that "the subject patent application" refers to the '025 patent's application, not the '059 patent's application.

Even assuming that Mr. Croskell stated an incorrect effective filing date for the '059 patent, Mr. Croskell's assertion is not automatically a material misstatement. The *Nilssen* case holds that

7

"[a] claim for priority is inherently material to patentability." *Nilssen*, 504 F.3d at 1233. But the alleged misstatement is not itself a claim for priority; it is not a declaration of priority pursuant to the MPEP. *See* 37 C.F.R. 1.131; *see also Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 2007 WL 1437834, at *21 n.14 (S.D.N.Y. May 14, 2007) ("[C]ourts appropriately take note of [the MPEP] as evidence of what a reasonable patent examiner would consider material."), *aff'd*, 533 F.3d 1353 (Fed. Cir. 2008). Finally, an alleged entitlement to a January 10, 2000 priority date is inherently contradicted by Mr. Croskell's filing the '059 patent application as a continuation-in-part. If Mr. Croskell intended to deceive the USPTO into granting the '059 patent the same priority as its parent, he would not have filed the '059 patent's application as a continuation-in-part. Based upon the evidence presented, Google cannot show by clear and convincing evidence that Mr. Croskell submitted false material information with intent to deceive the USPTO. Therefore, the court grants summary judgment that the '059 patent is not unenforceable due to inequitable conduct on this ground.

### C. Exceptional Case

FM requests that the court declare this case exceptional and award attorneys' fees to the plaintiff. FM argues that this case is exceptional because Google's inequitable conduct assertion is baseless, and Google miscited Mr. Dean's deposition. The plaintiff cites several examples of courts awarding attorneys' fees against parties who assert unfounded allegations of inequitable conduct. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000) (affirming an award of fees for an inequitable conduct defense "so lacking in substance as to constitute a waste of the time and resources of all the participants"); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 243 (S.D.N.Y. 2006) (awarding fees against the defendants in part because "[the

8

defendant]'s arguments that [the plaintiff] engaged in inequitable conduct were entirely frivolous"), *aff'd*, 548 F.3d 1381 (Fed. Cir. 2008). FM's motion to declare this case exceptional is carried with the case and will be considered after the trial.

**IV.    Conclusion**

For the reasons stated above, the court grants summary judgment of no inequitable conduct for both the '025 and '059 patents. The motion to declare this case exceptional and for an attorneys' fees award is carried with the case.

SIGNED this 15th day of January, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE