UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FUNCTION MEDIA, L.L.C. | § | |
| | § | |
| vs. | § | CASE NO. 2:07-CV-279-CE |
| | § | |
| GOOGLE, INC. and | § | |
| YAHOO!, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Pending before the court is the plaintiff Function Media, L.L.C.'s ("FM") motion to exclude certain expert opinions (Dkt. No. 331). FM argues that Google's experts should be precluded from giving testimony and opinions that are based on conversations with previously-undisclosed Google witnesses and contrary to Google's 30(b)(6) corporate deposition testimony; based on litigation settlement agreements; based on unreliable and untested methodology; or produced late with no explanation or rationale. For the reasons stated below, FM's motion to exclude is GRANTED in part and DENIED in part.

**II.   Legal Standards**

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf. *Id.* "The persons designated must testify about information *known or reasonably available to the organization.*" *Id.* (emphasis added). "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are

reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). In explaining the duties of a corporation responding to a Rule 30(b)(6) deposition notice, the Fifth Circuit has held that:

> [w]hen a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject. *See Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007) ("Federal courts have interpreted [Rule 30(b)(6)] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); *Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991) ("Under Rule 30(b)(6), [the organization] has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is to avoid trial by ambush."); *see also United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) (holding that the deponent must "review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition . . . to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous

one before the trial.").[1]

### III. Analysis

#### A. Opinions Related to Rule 30(b)(6) Deposition Testimony

Primarily, FM argues that Google failed to comply with the obligations of Rule 30(b)(6). In particular, the plaintiff argues that Google's 30(b)(6) witness on licensing, Johnny Chen, was unprepared and answered, "I don't know," to many questions concerning the circumstances surrounding the execution of license agreements and other topics contained in FM's Rule 30(b)(6) notice. Therefore, FM contends that Google should be precluded from offering expert opinions that rely on Google employees' unsworn statements, which provide the information that the plaintiff unsuccessfully sought in the 30(b)(6) deposition. In response, Google argues that it complied with Rule 30(b)(6), evidence beyond unsworn employee statements supports its expert's opinions, and FM should have requested additional discovery if it was unsatisfied with Mr. Chen's testimony.

The relevant portion of FM's 30(b)(6) notice requested testimony concerning "[l]icense agreements and royalty agreements."[2] Google argues that it complied with FM's notice by providing a witness to testify, literally, about "license agreements." Google contends that FM's notice on this issue was very limited. Google points to another portion of the notice, directed toward

---

[1] In *Brazos River Authority*, the Fifth Circuit explained that if it becomes obvious that the 30(b)(6) representative is deficient, the organization must provide a substitute witness. *Brazos River Auth.*, 469 F.3d at 433. Although Google was obligated to provide a substitute witness, these three cited cases clearly hold that providing a substitute witness is not the sole consequence of failure to comply with Rule 30(b)(6).

[2] The notice also called for "Google's evaluation of patents or other proprietary technology . . . and the methodologies used by Google for determining values or royalty rates for licensing of such technology" and "Google's policies and practices concerning licensing, including any standard or preferred terms for license agreements and the process by which Google determines the nature, scope and terms of license agreements."

acquisitions, in which FM specifically sought, among other things, testimony concerning "a description of the circumstances surrounding the acquisition." By contrast, FM's notice on license and royalty agreements did not specifically state that FM sought testimony concerning the circumstances surrounding the execution of the license and royalty agreements. Google argues that it did not prepare a witness to testify about the circumstances surrounding the license agreements because it did not anticipate that FM sought this testimony, given the language of the notice. Under Google's interpretation of the notice, FM simply sought testimony concerning the language of the written agreements produced in discovery and did not properly request testimony about the circumstances surrounding the licenses. Therefore, Google contends that it was obligated only to identify a witness who could read the written terms of the agreements into the record and explain any terms that were unclear.

Google's narrow view of the notice and its attendant obligations is rejected. It must be remembered that the court is considering a deposition notice, the purpose of which is to reasonably notify an adversary of a litigant's desire to obtain corporate testimony on a given subject matter. Rule 30(b)(6) requires only that the requesting party describe the matters for examination with "*reasonable* particularity." The notice at issue described, with reasonable particularity, that FM sought testimony on the subject of licenses. In a patent case, this description includes the circumstances surrounding the execution of license agreements. Google is represented by sophisticated counsel who must have understood the materiality of the topic. The circumstances surrounding the execution of license agreements are highly material to damages and arise in virtually every patent case. A reading of the notice to require the identification of a witness to testify only as to the literal terms of the agreements is simply unreasonable in the context of this case.

The 30(b)(6) deponent was unprepared. Google's representative could not testify as to the actual parties to the Intellectual Ventures license.[3] He also knew nothing about Carl Meyer[4] (one party to the Carl Meyer/Google license), the Invenda agreement,[5] the Alcatel/Lucent agreement,[6] and he could barely testify to the terms of the IBM/Google cross license.[7] Under these circumstances, Google failed to comply with its obligation to educate a witness on the noticed 30(b)(6) topic concerning license agreements.

Google suggests that its failure to comply with Rule 30(b)(6) should be excused because FM could have sought additional discovery from it on the subject of license agreements. The court rejects this argument. It is no answer that additional effort might have unearthed the facts surrounding the license agreements. FM properly invoked the discovery procedures of the court–rules that are designed to promote the "just, speedy, and *inexpensive* determination" of a civil case–by providing reasonable notice to Google of the subjects on which examination was sought.

---

[3] It bears mention that, with respect to Intellectual Ventures, the deponent failed to satisfy even Google's own low threshold for preparation: Q: "Who is Entity A in this agreement?" A: "I don't know." Q: "It's Intellectual Ventures, is it not?" A: "I don't know. . . ." Q: "You don't know whether Entity A is, in fact, owned by Intellectual Ventures?" A: "I do not know that for a fact."

[4] Q: "Besides what is on the face of the agreement, can you tell me anything else about Carl Meyer?" A: "No." Q: "Did Carl Meyer threaten to sue Google?" A: "I don't know."

[5] Q: "Are you aware of an agreement between Invenda and Google?" A: "I'm not sure if I've seen this before." Q: "So I take it, then, you can't tell me anything about the circumstances leading to this license agreement?" A: "No."

[6] Q: "Other than what's on the face of the document, can you tell me anything about the circumstances behind this agreement?" A: "No."

[7] Q: "How many patents were licensed in this deal?" A: "It doesn't say, but I can imagine it is a lot, given IBM's patent portfolio." Q: "And how many patents or patent applications did Google license as part of this to IBM?" A: " . . . . I don't know how many we have at this time."

Fed. R. Civ. P. 1 (emphasis added). It was Google that failed to comply with its obligations under Rule 30(b)(6). Requiring FM to take multiple depositions to learn the facts underlying the execution of the license agreements would unnecessarily increase the cost of litigation and reward Google for its failure to comply with the rules. Therefore, the court will narrowly circumscribe the extent to which Google may rely on prior licenses at trial. Google's experts may not offer (1) opinions concerning the Intellectual Ventures agreements, Invenda patent license, or IBM cross-license; (2) opinions that go beyond the terms of the Alcatel-Lucent cross-license; or (3) opinions concerning the Carl Meyer license that go beyond the terms of the agreement.

The same conclusion does not apply to the testimony of Mireya Bravomalo or Amin Zoufonon, however. The court has reviewed the pertinent portions of their depositions and cannot say that the witnesses' preparation was so deficient that Mr. Wagner should be precluded from relying upon unsworn statements from Google's employees or criticizing Mr. Bratic's opinions on the technology charges. FM is, of course, free to cross-examine Mr. Wagner with any relevant portions of Google's 30(b)(6) testimony.

**B.     Litigation Settlement Licenses**

FM also seeks to preclude expert testimony concerning two licenses that were allegedly granted during litigation or under the threat of litigation. "License fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978). According to FM, the Carl Meyer license and IBM cross-license arose through threats of litigation, because each contains a litigation release or a covenant not to sue. Furthermore, Mr. Wagner admitted that Google's reason for executing the IBM cross-license was that IBM notified Google

6

that its advertising offerings infringed IBM's patents.

The court need not address these arguments. The court has excluded any reference by Google to the IBM cross-license. Also, the court has restricted opinions on the Carl Meyer agreement to the terms of the agreement itself. FM stated at the hearing that it had no objection to this limitation.

### C. Opinions Based on Unreliable Methodology

FM argues next that the court should exclude an opinion from Mr. Wagner, the defendant's damages expert, that relies upon unreliable methodology. The allegedly unreliable opinion concerns the Stanford license; Mr. Wagner converts Google's grant of equity (2% of its stock) into a running royalty. In his deposition, Mr. Wagner admits that he is unaware of any expert who has converted an equity stake into an approximate running royalty.

In response, Google contends that the principles and methodology behind Mr. Wagner's calculations are reliable. Although Mr. Wagner admits that he had not seen anyone perform his exact calculation, Google asserts that the calculation is based upon widely accepted finance theory. *See Galloway v. Big G Express, Inc.*, 590 F. Supp. 2d 989, 996 (E.D. Tenn. 2008) (admitting expert testimony, even though expert's specific model had not been used previously, because it was based on accepted methodology). The court is not convinced that exclusion of Mr. Wagner's running royalty calculation is warranted. Through cross-examination of Mr. Wagner, FM may address the reliability of the expert's calculations.

### D. Late-Disclosed Opinions

Finally, FM asserts that Mr. Wagner's late-disclosed opinion should be excluded. According to FM, Mr. Wagner disclosed a new opinion on damages for the first time on December 22, 2009,

7

and this opinion was based on a spreadsheet provided to Mr. Wagner by Google only the day before. Mr. Wagner's new opinion estimated that 34% of the accused product's revenues were from direct advertisers, who do not infringe.

In response, Google argues that FM has suffered no prejudice, and thus Mr. Wagner's opinion should not be excluded. In his report, Mr. Wagner disclosed the methodology he used in the calculation and noted that he would supplement his opinion to include the actual calculation once the data became available. Also, FM questioned Mr. Wagner at length about his calculations.

FM has not demonstrated sufficient prejudice to justify the exclusion of Mr. Wagner's testimony in this area. But Mr. Wagner's testimony regarding the percentage of direct advertisers is limited to his opinions expressed at his deposition. Mr. Wagner may not further update his calculations on the eve of trial to offer a different opinion.

**IV.  Conclusion**

For the reasons expressed above, the court grants in part and denies in part FM's motion to exclude expert testimony.

SIGNED this 15th day of January, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE